IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

JUN 27 2017

ARTHUR JOHNSTON
BY_____ DEPUTY

ROBIN MAYFIELD,                    )
OWEN MAYFIELD,                     )
WILLIAM MAYFIELD, and              )
The ESTATE OF MARK STEVENS         )
MAYFIELD                           )     CAUSE NO.: 3:17cv514CWR-FKB
                                   )
              Plaintiffs,          )
                                   )
v.                                 )
                                   )
BUTLER SNOW LLP,                   )
DONALD CLARK, JR.,                 )
THE CITY OF MADISON,               )
MISSISSIPPI,                       )
MARY HAWKINS-BUTLER,               )
INDIVIDUALLY AND IN HER            )
OFFICIAL CAPACITY,                 )
POLICE CHIEF GENE WALDROP,         )
INDIVIDUALLY AND IN HIS            )
OFFICIAL CAPACITY,                 )
CHUCK HARRISON, INDIVIDUALLY       )
AND IN HIS OFFICIAL CAPACITY,      )
VICKIE CURRIE, INDIVIDUALLY        )
AND IN HER OFFICIAL CAPACITY,      )
RICHARD WILBOURN, III, and         )
JOHN AND JANE DOES 1-10,           )
                                   )
              Defendants.          )

## COMPLAINT

### JURY TRIAL DEMANDED

COME NOW Robin Mayfield, Owen Mayfield, William Mayfield, and the Estate of

Mark Stevens Mayfield (the "Mayfield Estate"), and file this, their Complaint against Butler

Snow LLP; Donald Clark, Jr.; the City of Madison, Mississippi; Mary Hawkins-Butler,

individually and in her official capacity as Mayor of the City of Madison; Gene Waldrop,

individually and in his official capacity as City of Madison Police Chief; Chuck Harrison,

individually and in his official capacity; Vickie Currie, individually and in her official capacity; Richard Wilbourn, III; and John and Jane Does 1-10.

1.      This is an action under 42 U.S.C. § 1983 and § 1988 for deprivation of civil rights, false arrest, false imprisonment, kidnapping, failing to intervene, violation of the equal protection and substantive due process clauses of Fourteenth Amendment to the U.S. Constitution, and for violation of free speech and associational rights guaranteed by the First Amendment to the U.S. Constitution; violation of rights under color of federal law ("*Bivens* action") arising under the First, Fourth and Fifth Amendments to the U.S. Constitution; abuse of process; negligent infliction of emotional distress; wrongful death; and civil conspiracy.

2.      The Defendants engaged in unconstitutional, negligent and/or tortious actions that harmed Mark Mayfield, Robin Mayfield, Owen Mayfield, William Mayfield; and deprived Plaintiffs of their constitutional rights; effectively shut down Mark Mayfield's law practice; embarrassed and humiliated the Plaintiffs; and caused severe emotional distress to Mark Mayfield and his family, all of which directly led to Mark Mayfield's untimely death.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4.      This Court is the proper venue for the instant dispute pursuant to 28 U.S.C. § 1391(b), as the actions alleged herein occurred in the Southern District of Mississippi.

## PARTIES

5.      Plaintiff Robin Mayfield is an adult resident of Madison County, Mississippi.

6.      Plaintiff Owen Mayfield is an adult resident of Hinds County, Mississippi.

7.      Plaintiff William Mayfield is an adult resident of Hinds County, Mississippi.

8.      At the time of his death, Mark Stevens Mayfield was a citizen of the United States of America and the State of Mississippi wherein he resided in Madison County, Mississippi. On behalf of Plaintiff Estate of Mark Stevens Mayfield, Deceased (the "Mayfield Estate"), the suit is brought by Owen Mayfield and William Mayfield, the sons of Mark Mayfield and the duly appointed Co-Executors of the Mayfield Estate.

9.      Defendant Butler Snow LLP is a Delaware limited liability partnership headquartered in Ridgeland, Madison County, Mississippi. Butler Snow LLP may be served through its Registered Agent, Thomas E. Williams, Butler Snow LLP, 1020 Highland Colony Parkway, Suite 1400, Ridgeland, Mississippi 39157-2139.

10.     Defendant Donald Clark, Jr. is an adult resident of Hinds County, Mississippi. Mr. Clark may be served with process at 2046 Brecon Drive, Jackson, Mississippi 39211.

11.     Defendant City of Madison (hereafter "City") is a municipal corporation organized and existing under the laws of the State of Mississippi having authority, duties and powers as provided under the laws of the State of Mississippi, and existing and operating within the judicial district of the Southern District of Mississippi.

12.     Defendant Mary Grace Hawkins-Butler is an individual resident of Madison County, Mississippi who may be served at City Hall, 1004 Madison Avenue, Madison, MS 39110, or at her residence at 238 N. Castle Drive, Madison, MS 39110. Defendant Mary Grace Hawkins-Butler is being sued in her individual capacity and in her official capacity as Mayor of the City of Madison, Mississippi.

13.     Defendant Gene Waldrop is an individual resident of Madison County, Mississippi who may be served at 2001 Main Street, Madison, MS 39110. Defendant Gene Waldrop is being sued

in his individual capacity and in his official capacity as Police Chief of the City of Madison, Mississippi.

14.     Defendant Chuck Harrison is an adult Mississippi resident who may be served at 2001 Main Street, Madison, MS 39110. Defendant Chuck Harrison is being sued in his individual capacity and in his official capacity as a law enforcement officer for the City of Madison, Mississippi.

15.     Defendant Vickie Currie is an adult Mississippi resident who may be served at 2001 Main Street, Madison, MS 39110. Defendant Vickie Currie is being sued in her individual capacity and in her official capacity as a law enforcement officer for the City of Madison, Mississippi.

16.     Defendant Richard Wilbourn, III is an adult resident of Madison County, Mississippi. Mr. Wilbourn may be served with process at 206 Jefferson Ridge, Ridgeland, Mississippi 39157.

17.     Defendants John and Jane Does 1-10 are unknown individuals and/or entities liable to Plaintiffs for the acts and omissions as alleged herein. The names and capacities of Defendants John and Jane Does 1-10 inclusive, whether individual, corporate or otherwise, are presently unknown to Plaintiffs, who therefore sue said Defendants by fictitious names and will further seek leave of Court to amend this Complaint to show their true names and capacities when the same are ascertained. Plaintiffs allege upon information and belief each of the Defendants designated herein as a Doe is responsible in some manner and liable herein to Plaintiffs in some manner whether alleged herein in this Complaint or not, and by such wrongful conduct, said Defendants, each of them, proximately caused the injury and damage occasioned herein.

## BACKGROUND OF THE PARTIES

## MARK MAYFIELD AND HIS FAMILY

18.     Mark Stevens Mayfield ("Mark") passed away on June 27, 2014, three years ago today.

Mark was 57 years old at the time of his death.

19.     Mark Mayfield was a loving father and husband, and a gentle human being.

20.     Mark was born in 1956 in Laurel, Mississippi; he was the first of his parents' three

children.

21.     Mark spent his very early years growing up in Bay Springs, Mississippi, and in 1962 his

family moved to Jackson, Mississippi.

22.     Mark graduated from Jackson Preparatory School and later attended the University of

Mississippi and the University of Mississippi School of Law where he earned his Juris Doctorate

degree.

23.     Mark Mayfield was a well-respected, Mississippi-licensed attorney.

24.     Upon receiving his law degree in 1981, Mark returned to Jackson and practiced real

estate law for 33 years, including 19 years with his father until his father's death in 2002. He was

a member of the Mississippi and American Bar Associations.

25.     Mark met the love of his life, Robin Reeves ("Robin" or "Robin Mayfield"), at the

Mississippi Bar Convention, and they were married on August 21, 1982.

26.     Mark was an active and respected member of First Baptist Church Jackson.

27.     Mark Mayfield was an influential figure in Jackson business and many social and

political organizations.

28.     Mark Mayfield put the interests of others first and had a pure, authentic interest in others he met.  Mark loved connecting people and bringing them together.  Always thinking of others, Mark exhibited a genuine servant's spirit in all of his relationships.

29.     Mark loved life, people, and his family.  He was a mentor, an outdoor enthusiast, very involved in his sons' upbringing, and an important role model for many in his life.

30.     Mark had a great love for the State of Mississippi and the United States of America.

31.     Robin Mayfield is the widow of Mark Mayfield.  Mark and Robin were married on August 21, 1982, and remained husband and wife for 31 years, until Mark's tragic death.

32.     Mark and Robin were blessed with two sons, Owen Mayfield ("Owen") and William Mayfield ("William").

33.     Owen is the oldest son of Mark and Robin.  William is Mark and Robin's youngest son. Both Owen and William graduated from St. Andrew's Episcopal School and the University of Mississippi.  Mark was an engaged member of the St. Andrew's Episcopal School community.

34.     Mark Mayfield greatly loved his family, Plaintiffs herein, and his family greatly loved him.

35.     Mark's text messages and emails reveal a kind and loving father and husband who communicated most often with his two sons Owen and William, and his wife Robin.  They constantly encouraged each other, checked in with each other, and shared supportive messages such as Bible verses and personally-written motivational messages.  His family was close and showed genuine caring towards each other.

36.     Mark Mayfield was involved in his church and various charities and civic activities but, until these events, was not previously materially involved in political activity.

37.     Mark Mayfield became politically involved in founding the Mississippi Tea Party.

38.    Ultimately, Mark became politically involved in the campaign of State Senator Chris McDaniel, Republican candidate for United States Senate.

39.    In addition to communication with family and friends, Mark communicated via text, email, and voice with others who worked on the campaign for State Senator Chris McDaniel.

40.    Mark showed an eagerness and willingness to help through encouraging others to attend events, analyzing items from a legal perspective, or offering his political insight as to strategy.

41.    Even when communications may have shown some negative tendencies towards Chris McDaniel's opponent, Senator Thad Cochran, or towards others who they considered to be the "Republican Establishment", Mark did not communicate blatant insults as did others.

42.    Nevertheless, his support of State Senator McDaniel put him at odds with many local and statewide elected officials in Mississippi who were supportive of incumbent United States Senator Thad Cochran.

43.    Many of Cochran's corporate supporters were powerful, and benefited directly, financially, from Cochran's position of power.  They had a lot to lose if McDaniel defeated Cochran.

44.    On or about May 22, 2014, Currie signed an arrest warrant for Mark Mayfield.

45.    On that same date, Harrison signed a search warrant for Mark's office.

46.    Based upon the actions of the Madison Police Department through Waldrop, Harrison, and Currie, Mark Mayfield was arrested at his law office shortly after the warrants were issued.

47.    Mark was charged by the City of Madison with conspiracy to exploit a vulnerable adult, a felony.[1]

---

[1] Clayton Kelly had previously been arrested by the Madison Police Department for exploitation of a vulnerable adult in connection with his taking of video and/or photographs of Senator Thad Cochran's bedridden wife in the St. Catherine's Village nursing home. John Mary and Richard Sager were also arrested and charged with conspiracy.

48.     Mark was well-established and well-respected, had no prior criminal history, and posed no threat of flight. Nevertheless, Mark was given excessive bail by the City of Madison.

49.     Mark became the subject of intense national media scrutiny, news stories, and internet blog posts.

50.     The day following his arrest, Mark's largest client, Trustmark National Bank, moved all of its business away from Mark, resulting in a complete collapse of his law practice.

51.     Mark began to lose sleep, and became depressed. After his arrest, Mark's doctor prescribed a number of medications for sleep, depression, and anti-anxiety assistance.

52.     Robin experienced similar symptoms, and was also prescribed medication for her anxiety.

53.     Mark expressed concern and help for his wife, Robin, throughout the stressful ordeal of his arrest.

54.     During the days following his arrest, Mark had a group of supportive male friends who often met for breakfast, lunch or for leisure activities such as riding bicycles. Mark and his friends communicated often, and the range of supportive friends who were communicating via text messages and emails with him grew throughout the time frame of his arrest. Despite his dire situation, Mark continued with his positive and uplifting communication to others despite his current personal challenges, even up until and on the date of his sudden death.

55.     Mark communicated via text with his son on the date of his death, showing enthusiasm and interest in his son's pictures of his visit to Washington, D.C.

56.     On June 27, 2014, Robin awoke and could not find Mark in the house.

57.     Robin continued searching and then found her husband of 31 years dead in a storage room, with a bullet hole through his head.

58.     Robin had to call her sons Owen and William to inform them that their father was dead.

59.     Mark Mayfield's death was ruled a suicide.

## THE 2014 U.S. SENATE RACE

60.     In 2014, Mississippi State Senator Chris McDaniel decided to challenge United States Senator Thad Cochran in the Republican primary. Senator Cochran had held that office since 1978.

61.     McDaniel, a younger upstart, quickly gained some notoriety in social and other media.

62.     The Republican establishment lined up behind Cochran, including Butler Snow LLP, Clark, and Haley Barbour, as well as his nephews Austin Barbour and Henry Barbour.

63.     In contrast to the Republican establishment and powerhouse money behind the Cochran campaign, McDaniel's base was the Mississippi Tea Party and other anti-establishment Republicans.

64.     McDaniel was leading in the polls against Cochran.

65.     McDaniel quickly found himself attacked by a barrage of ads from the Thad Cochran Campaign and the Barbour-run Thad Cochran Super PAC.

66.     Beginning in January or February 2014, some Tea Party activists and McDaniel supporters, including John Mary, decided to hatch a plan to do some digging and make an anti-Cochran attack ad on their own.

67.     Knowing of rumors that, while his wife lay in bed in the Sienna nursing home building of St. Catherine's Village, Senator Cochran traveled about with a female companion on his staff, Mary decided to further investigate and look for proof.

68.     Mary was introduced to Richard Sager, another Mississippi Tea Party conservative, and

the two decided that, if they could get into Mrs. Cochran's nursing home room and get a

photograph of her, they could expose Senator Cochran.

69.     Mary and Sager enlisted conservative blogger Clayton Kelly, who also saw the

opportunity to build the audience for his "Constitutional Clayton" blog and YouTube channel, in

the plan to post the information they found.

## RICHARD WILBOURN, AND THE ARREST OF MARK MAYFIELD

70.     Richard Wilbourn, III ("Wilbourn") is a wealthy attorney who has both deep pockets and

deep political connections.

71.     Wilbourn was involved with the Tea Party and befriended Mark Mayfield after they

became acquainted through Tea Party activities. Mark, always kind and generous, invited

Wilbourn and his girls to join Mark and his family for dinners, tailgating at Ole Miss ball games,

and spending time at the Mayfields' Oxford condo.

72.     Wilbourn knew that Senator Cochran's wife lived at St. Catherine's Village, where Mark

Mayfield's mother also resided.

73.     Wilbourn, like others, thought that exposing Senator Cochran's rumored affair would

help McDaniel in his campaign.

74.     On information and belief, in early spring 2014, Wilbourn approached Roy Nicholson,

chairman of the Mississippi Tea Party, with the idea that someone should try to obtain a

photograph of Rose Cochran at St. Catherine's, but Nicholson responded that McDaniel would

not approve.

75.    Upon information and belief, Wilbourn told John Mary that he should contact Mark Mayfield in order to help Clayton Kelly obtain photographs of Rose Cochran. John Mary contacted Mark via Facebook message.

76.    Wilbourn asked Mark to help Wilbourn learn where Mrs. Cochran's room was.

77.    After Mark's mother passed away on March 16, 2014, Wilbourn capitalized on the opportunity, asking Mark to meet him at St. Catherine's Village when Mark went to clean out his mother's room.[2]

78.    On information and belief, Mark and Wilbourn were at St. Catherine's on a Sunday afternoon in April 2014, and Mark pointed Wilbourn down the hall on the second floor to where Rose Cochran's room was.

79.    Mark, having done all he agreed to (show where the room was), said he would do nothing further; Wilbourn assured Mark he would take everything from there.

80.    Wilbourn said that he had a guy (later discovered to be Clayton Kelly) who Wilbourn would then talk through gaining access past security to take photographs of Mrs. Cochran in her bed.

81.    On or about March 27, John Mary told Clayton Kelly that he should be getting a call. Kelly contacted Mary to tell him he was receiving calls from a blocked number and that caller, who was not Mark, left a voicemail claiming to have information on Mrs. Cochran. Kelly, however, said he was expecting a call from Mark and would not answer the blocked number.

82.    Mary let Kelly know that he did not know who the caller with information is, but instructed Kelly to answer all calls, including those from blocked numbers.

---

[2] Despite Plaintiffs' best efforts to obtain them, the St. Catherine's videos from this date have gone missing.

83.     Using a blocked phone number, and pretending to be "Mark," Wilbourn gave the information on the layout of the nursing home to Clayton Kelly.

84.     After two failed attempts, Kelly was able to gain access to Mrs. Cochran's room on Easter Sunday and take cell phone video of her in her bed.

85.     Shortly thereafter, Kelly posted a video on YouTube that included a still photo from that video. It quickly gained attention, but was just as quickly taken down.

86.     On May 14, 2014, Wilbourn sent Mark an email message referencing Senator Cochran having a mistress and referring to Rose Cochran's room number at St. Catherine's.

87.     On May 16, 2014, Kelly was arrested and charged with felony exploitation of a vulnerable adult.

88.     That same day, Wilbourn and Mark had planned to do some campaigning for McDaniel during skull races at the Ross Barnett Reservoir.

89.     After they finished, Mark got a call from Wilbourn. Wilbourn said Mark had left something at his house and needed to come pick it up.

90.     Once there, Wilbourn told Mark that they could no longer have contact with each other and cut ties. Seeing arrests being made and the players start to be revealed, Wilbourn clearly wanted to avoid any implication in the Rose Cochran Incident and started hiding his tracks.

91.     On May 22, 2014, John Mary, Richard Sager, and Mark Mayfield were also arrested for conspiracy to commit felony exploitation of a vulnerable adult.

92.     Having abandoned Mark in his time of need, after Mark's arrest, Wilbourn left a handwritten note on the Mayfields' front door saying he was sorry this had happened. Mark asked Robin to shred it.

93.     Richard Wilbourn was listed as a potential witness for the prosecution in Clayton Kelly's

trial. When the Clarion-Ledger newspaper attempted to speak to him for a story it ran on June 4,

2015, he could not be reached for comment. Nor has he ever made one.

94.     Nonetheless, both at Kelly's arraignment and when he pled guilty and received his

sentence, Wilbourn was observed in the courtroom.

95.     Despite their knowledge of Wilbourn and his involvement in spearheading the attempts to

obtain Rose Cochran photographs, on June 18, 2015, the Madison County District Attorney's

Office made published statements to the Clarion-Ledger that there were no other persons

involved.

96.     The Clarion-Ledger was told by the Madison County District Attorney's Office that

prosecutors were confident they prosecuted all conspirators in the Cochran nursing home photo

case "based on all available evidence."

97.     Instead of identifying Richard Wilbourn as the person who instructed Kelly on where

Rose Cochran's room was and how to get into the facility, authorities expressly said it was

Mayfield.  These were false and reckless statements.

98.     Instead, an Assistant District Attorney went even further and told the press, "We have no

evidence that Mark Mayfield came into St. Catherine's with anyone else from the time of his

mother's death until the video was taken on April 20th (2014). We have thoroughly been through

all the surveillance videos." Quite simply, both statements are untrue.

### FEDERAL ACTORS:

### BUTLER SNOW, CLARK AND THAD COCHRAN

99.     Butler Snow LLP ("Butler Snow") is a 330-lawyer international firm with offices in 24

locations, including Washington, D.C. Butler Snow is Mississippi's largest law firm.

100.    Donald Clark ("Clark") has served as the Chairman of Butler Snow since 2006.

101.    At all times relevant to this lawsuit, Clark was the Managing Member of Butler Snow.

Clark is the primary policy-maker for the firm.

102.    Clark also serves as the Managing Member of Butler Snow Holdings, LLC.

103.    Butler Snow's public clients consist of numerous state governments, state and federal

agencies, county governments, municipal governments, and other federal, state, and local

governmental bodies.

104.    Butler Snow has a strong government, lobbying and government relations practice.

105.    Butler Snow has several subsidiaries and/or related companies, including VisionFirst

Advisors, led by former Mississippi Governor Haley Barbour; Butler Snow Advisory Services,

LLC; MRC X, LLC; and Butler Global, LLC.

106.    Butler Snow attorney Haley Barbour served as Governor of Mississippi from 2004 to

2012, and as Chairman of the Republican National Committee from 1993 to 1997.  Barbour also

worked for years as a lobbyist and co-founded the Washington lobbying firm BGR Group.

107.    Many of Butler Snow's employees and 330 attorneys have previously served as elected

officials, such as Barbour, former Republican United States Senator David Vitter, former

Republican United States Congressman John Tanner, and former Speaker of the Colorado House

of Representatives Terrance Carroll.

108.    Many others belong to Butler Snow's long list of formerly and presently appointed

officials, and high ranking executive employees, particularly in Mississippi. Butler Snow is the

most politically connected and powerful law firm in the State of Mississippi.

109.    With their strong political connections to state and local governments, Butler Snow and Don Clark were natural choices for Republican United States Senator Thad Cochran to hire as his attorneys, and for that of his federal election campaign.

110.    At all times relevant hereto, Butler Snow and Clark were legal counsel for Thad Cochran, and operated under color of federal law.

111.    Thad Cochran has served in Congress since 1972.

112.    Senator Cochran serves as the ranking Republican member of the powerful Senate Committee on Appropriations ("Senate Appropriations Committee").

113.    During the 109th Congress (2005-2006), 114th Congress (2015-2016), and the current 115th Congress, Senator Cochran served, continues to serve, as Chairman of that powerful Senate Appropriations Committee.

114.    In addition to representing Thad Cochran personally, at all times relevant hereto, Butler Snow and Clark were the legal counsel for the federal election campaign of United States Senator Thad Cochran (the "Thad Cochran Campaign").

115.    The Thad Cochran Campaign was an extension of Thad Cochran, and its employees, vendors, and attorneys were authorized to act on his behalf.

116.    In addition to having a pro-active legal team with Butler Snow and Clark, the Thad Cochran Campaign was run by individuals close to Butler Snow and Clark.

117.    Though federal election law prohibits coordination between a candidate's campaign and any super PACs, Butler Snow and Clark also provided funding, and legal, governmental, and/or political advice to Mississippi Conservatives, a Barbour-run Super PAC supporting Thad Cochran (the "Thad Cochran Super PAC").

118.    Mississippi Conservatives was organized, formed and/or operated by Henry Barbour, the brother of Austin Barbour and the nephew of Butler Snow attorney Haley Barbour.

119.    Through attorney Haley Barbour and others, Butler Snow and Henry Barbour raised millions of dollars for Mississippi Conservatives.[3]

120.    Additionally, Butler Snow attorney Haley Barbour secretly, and illegally, provided the collateral to secure the Thad Cochran Super PAC's $250,150 bank loan from Trustmark National Bank.[4]

121.    Butler Snow and Clark directly and indirectly contributed to and raised millions of dollars for the Thad Cochran Campaign, the Thad Cochran Super PAC, and other political action committees supporting Thad Cochran's reelection campaign to the United States Senate.

122.    Specifically, Butler Snow and Clark directly and indirectly raised funds for and made extraordinary financial contributions:

a.      to the Thad Cochran Campaign;

b.      to Cochran's Political Action Committees, including Citizens for Cochran[5];

c.      to Cochran-related Super PACs, including Mississippi Conservatives (directly and indirectly through fundraising efforts of former Mississippi Governor Haley Barbour, an attorney at Butler Snow, and a member of the powerful lobbying firm, BGR Group); and

d.      to the Senate Victory Fund PAC ("Senate Victory Fund").

---

[3] Upon information and belief, Butler Snow's Haley Barbour was the largest fundraiser for Mississippi Conservatives. Mississippi Conservatives was a Super PAC during the 2014 election. In 2014, the committee raised a total of $3.36M and spent a total of $3.32M, all in support of Thad Cochran's campaign.

[4] Barbour's role in securing the Trustmark National Bank loan for the Thad Cochran Super PAC, Mississippi Conservatives, was not revealed until documents were released by the Federal Election Commission on November 15, 2016. Previously, the Thad Cochran Super PAC had concealed Barbour's identity as the guarantor of the loan, although it reported a direct contribution of $25,000 from Barbour in 2014. The FEC fined the Thad Cochran Super PAC $19,000 for violating campaign finance disclosure rules by keeping secret for more than two years Barbour's involvement in securing the bank loan.

[5] Citizens for Cochran was a Senate campaign committee during the 2014 election based in Mississippi. In 2014, the committee raised a total of $7.09M and spent a total of $7.55M, all in support of Thad Cochran's campaign.

123.    At all times relevant hereto, Butler Snow and Clark acted on behalf of United States Senator Thad Cochran.

124.    At all times relevant hereto, Butler Snow and Clark had the full power of the office of United States Senator Thad Cochran.

### STATE ACTORS:

### BUTLER SNOW, CLARK, CITY OF MADISON, HAWKINS-BUTLER, WALDROP HARRISON, AND CURRIE

125.    The City of Madison is a municipality incorporated under the laws of the State of Mississippi. The City operates under a Mayor and Board of Aldermen form of government, with a Governing Body comprised of the Mayor and a seven-member Board of Aldermen.

126.    Mary Hawkins-Butler ("Hawkins-Butler") is the Mayor of the City of Madison.

127.    Hawkins-Butler is a member of the Republican Party and has served as Mayor since 1981.

128.    The Madison Police Department is a division of the City of Madison. It includes several divisions, including a Criminal Investigations Section, which handles the investigation of criminal activity. The Criminal Investigations Section employs full-time Investigators who work on cases along with the District Attorney's office in prosecuting crimes.

129.    Vickie Currie ("Currie") is a law enforcement officer for the City of Madison. Currie enjoys a close relationship with Mayor Hawkins-Butler.

130.    Defendants Butler Snow, Clark, City of Madison, Hawkins-Butler, Waldrop, Harrison, and Currie directly and indirectly prosecuted Clayton Kelly for felony exploitation of a vulnerable adult, and Mark Mayfield and others for conspiracy.

131.    Mark Mayfield's only "crime" was not a crime at all—telling Richard Wilbourn where Rose Cochran's room was located in relation to Mark's mom's room at St. Catherine's Village.

132.    Nevertheless, due to Butler Snow and Clark's joint efforts with the City of Madison, Madison Mayor Mary Hawkins-Butler, Waldrop, Harrison, and Currie, a wholly unsupportable charge was made against Mark Mayfield for felony conspiracy to commit exploitation.

133.    Butler Snow and Clark were well-aware of the campaign contributions made and favors owed to them. In addition to serving as counsel for the City of Madison and Madison County, Mississippi, Butler Snow and Clark had previously raised funds for and made significant financial contributions to election campaigns for many local officials in City of Madison and Madison County, Mississippi, including but not limited to:

a.    City of Madison Mayor Mary Hawkins-Butler;

b.    Members of the Board of Aldermen for the City of Madison;

c.    Madison County District Attorney Michael Guest;

d.    Members of the Madison County Board of Supervisors; and

e.    Madison County judicial officers, and candidates for judicial office.

134.    Thad Cochran and Hawkins-Butler have been friends since at least 1981, when Hawkins-Butler was elected Mayor.

135.    Hawkins-Butler was friends with Rose Cochran, the wife of Thad Cochran.

136.    Hawkins-Butler was friends with Thad Cochran's parents, when they were living.

137.    Whenever Hawkins-Butler has approached Thad Cochran requesting that the City of Madison receive federal funding, Cochran has helped, including but not limited to funding for City of Madison water and sewer systems, and for Madison schools.

138.    Hawkins-Butler and Thad Cochran are political allies.

139.    Hawkins-Butler has been a strong supporter of Thad Cochran for decades, and was a strong supporter during the 2014 U.S. Senate Campaign.

140.   Likewise, Don Clark and Hawkins-Butler have been friends for decades.

141.   Hawkins-Butler and Clark are also political allies.

142.   Butler Snow and Clark regularly send campaign contributions to Hawkins-Butler during her campaigns, including during her unsuccessful statewide race for State Auditor.

143.   When Clark brought these "crimes" to Madison Mayor Mary Hawkins-Butler, Butler Snow and Clark knew that Hawkins-Butler was a longtime friend of Thad Cochran.

144.   Butler Snow and Clark knew that Madison Mayor Mary Hawkins-Butler would be more than willing to do anything that they asked to help Thad Cochran and the Thad Cochran Campaign, including directly involving her Chief of Police and law enforcement, including Waldrop, Harrison, and Currie.

145.   Butler Snow and Clark worked both independently and jointly with the City of Madison, Madison Mayor Mary Hawkins-Butler, Waldrop, Harrison, and Currie to develop their criminal legal theories to go after Clayton Kelly, and to cause harm to the McDaniel Campaign.

146.   Butler Snow and Clark knew that City of Madison governmental officials and actors would assist them in their plans to prosecute Clayton Kelly and any co-conspirators.

147.   For at least for several decades, Butler Snow and Clark have served as outside legal counsel for the City of Madison.

148.   For example, upon information and belief, Butler Snow and Clark have been the City of Madison's legal counsel on each and every City of Madison bond issuance for at least 20 years, and for bond issues totaling well into tens of millions of dollars.[6]

---

[6] In addition to serving as legal counsel for the City of Madison, Butler Snow and Clark have served as outside legal counsel for Madison County, Mississippi, at least for several decades. Butler Snow is the lobbying firm for Madison County, Mississippi.  For at least the last fifteen years, Butler Snow and Clark have served as bond counsel for Madison County on over 36.8 million dollars in bond-related financing. Upon information and belief, Butler Snow and Clark have been Madison County's legal counsel on each and every Madison County bond issuance for at least 20 years, and for bond issues totaling well into tens of millions of dollars.

149.    Currie is a supporter of Thad Cochran, and was during the 2014 U.S. Senate Campaign.

150.    At all times relevant to this case, Currie was an Investigator with the Madison Police Department.

151.    Bryan Buckley ("Buckley") is a Madison County Assistant District Attorney. Buckley was hired after Michael Guest was elected as Madison County District Attorney.

152.    Buckley is a supporter of Thad Cochran, and was during the 2014 U.S. Senate Campaign.

153.    Buckley worked closely with Butler Snow, Clark, Harrison and Currie on the investigation of the Rose Cochran Incident, including planning the resulting arrests and prosecutions.

154.    Upon information and belief, prior to the Rose Cochran Incident, Buckley had never been assigned to prosecute any vulnerable adult abuse or exploitation cases in the Madison County District Attorney's office.

155.    However, Buckley was assigned to the case because he was a known supporter of Thad Cochran, rather than the case being assigned to a prosecutor who was a supporter of Mississippi State Senator Chris McDaniel, Cochran's primary opponent in the Republican Primary.

156.    In 2014, the Frontier Strategies, LLC worked on advertising strategy for Republican U.S. Senator Thad Cochran's campaign. Frontier Strategies[7] is a politically-connected and powerful lobbying and advertising agency for government, political, nonprofit and corporate clients.

157.    Following Mark's arrest, Frontier Strategies produced a negative campaign ad featuring Mark and his arrest.

---

[7] In 2014, Quinton Dickerson III was a key campaign strategist for the Cochran campaign. Dickerson is closely affiliated with Butler Snow and its attorney Haley Barbour. Dickerson served as campaign spokesman during Haley Barbour's successful 2003 Mississippi gubernatorial bid. Following Governor Barbour's campaign, Dickerson and fellow political staffer Josh Gregory formed Frontier Strategies, LLC.

158.    Trustmark Bank was Mark Mayfield's longest-standing and largest client, prior to Mark's arrest. Mark and his father had performed legal services for Trustmark Bank for over 30 years.

159.    Unbeknownst to Mark at the time, Trustmark Bank was solidly in the Cochran camp. Trustmark Bank was the single largest contributor to a Cochran-related Super PAC, having contributed in excess of $250,000.00 to Mississippi Conservatives, among other contributions.

160.    Mayfield also could not have known that Trustmark National Bank had financed the million dollar home D.C. home of Kay Webber[8], where Thad Cochran also lived.

161.    John Mary a/k/a John Bert is an adult resident of Hattiesburg, Mississippi. He is a former radio talk show host and conservative who supported the Chris McDaniel campaign. Mr. Mary was arrested in connection with the Rose Cochran Incident and pled guilty to conspiracy to photograph Mrs. Cochran in exchange for no jail time. John Mary also cooperated with law enforcement and the District Attorney's office in the prosecution of others, including Mark Mayfield, for the Rose Cochran Incident.

## HOW MARK MAYFIELD CAME TO BE CHARGED

162.    The prosecution of Mark Mayfield was a political prosecution, plain and simple.

163.    Prior to the Republican Primary election runoff, Thad Cochran and the Thad Cochran campaign became aware of the video produced by Clayton Kelly which contained an image of Mrs. Rose Cochran.

164.    They seized the opportunity to make a political issue against Chris McDaniel due to Clayton Kelly's poor decisions.

---

[8] Webber is now Thad Cochran's wife. Upon information and belief, when Webber purchased the house, she had a co-signor on the home who was a donor to Cochran and rumored to be the wife of a Member of the Board of Directors for Trustmark National Bank.

165.    Few people actually saw the video before Kelly took it down at the request of persons affiliated with the Chris McDaniel campaign.

166.    However, the Thad Cochran Campaign had downloaded or obtained a copy of the video before it was taken down the same day.  Quinton Dickerson of Frontier Strategies maintained a copy of the video.

167.    Clark and Butler Snow were made aware of the video by Thad Cochran and the Thad Cochran Campaign.

168.    One of the ideas suggested within the Thad Cochran Campaign and their attorneys at Butler Snow was to press criminal charges, which would politically be advantageous for the Thad Cochran Campaign.

169.    Rather than immediately reporting any alleged "crime" to authorities, Clark and Butler Snow waited until almost three weeks later to contact authorities at the City of Madison—just weeks prior to the Republican Primary Runoff Election.

170.    Though they had the information the entire time, Butler Snow and Clark presumably spent roughly three weeks researching and formulating criminal causes of action that could possibly be pursued by prosecutors.

171.    Among the criminal legal theories floated by Butler Snow and Clark were (1) disturbing the peace under Miss. Code Ann. § 97-5-15; (2) stalking; (3) voyeurism under Miss. Code Ann. § 97-29-61; (4) photographing with lewd, licentious or indecent intent under Miss. Code Ann. § 97-29-63; (5) vulnerable person abuse or exploitation under 43-47-19; and/or (6) trespass.

172.    Clark's first phone call to the City of Madison was not to law enforcement, or a criminal investigator.

173.    Rather, Clark first called his friend Madison Mayor Mary Hawkins-Butler to discuss Butler Snow's legal theories and proposed criminal charges.

174.    Clark told Hawkins-Butler that there was there was a crime that was committed in the City of Madison.  Clark invited Hawkins-Butler and the Chief of Police to come to Butler Snow's office to look at the video.

175.    Thad Cochran's Campaign also contacted Hawkins-Butler and wanted to run the investigation.

176.    Hawkins-Butler directed Clark to her Police Chief in order to begin the criminal prosecution.

177.    After speaking with Hawkins-Butler, Clark then spoke with the City of Madison Police Chief.

178.    Clark then met with City of Madison law enforcement officers.

179.    Clark presented the City of Madison law enforcement officers with the various legal theories advanced by Butler Snow.

180.    Mr. Brian Buckley was a supporter of Senator Cochran and, upon information and belief, was in contact with members of Senator Cochran's staff prior to the arrests in the Rose Cochran Matter. Mr. Buckley's support of Senator Cochran led to Currie being directed to work with him, rather than other employees of the District Attorney's office, in investigating and prosecuting the Rose Cochran Investigation.

181.    The City of Madison, Hawkins-Butler, Waldrop, Harrison, Currie, Brian Buckley, Butler Snow and Clark worked together to target certain individuals for arrest and prosecution based on those individuals' support of Chris McDaniel, Senator Cochran's opponent.

182.    Clark and the City of Madison ultimately settled on filing a criminal complaint for felony exploitation of a vulnerable adult under Miss. Code Ann. § 43-47-19.

183.    Clark filed a criminal complaint with the felony exploitation of a vulnerable adult theory that Butler Snow and Clark had developed.

184.    Specifically, on May 16, 2014, Don Clark filed an Incident Report against Clayton Thomas Kelly. The offense alleged in the report was exploitation of a vulnerable adult.

185.    Butler Snow, Clark, the City of Madison, Hawkins-Butler, Waldrop, Harrison, and Currie knew or should have known that they lacked sufficient evidence to prove beyond a reasonable doubt that Mark Mayfield was guilty of the crime with which he was charged. They nonetheless decided to target him with trumped-up charges, for political expediency[9].

186.    Despite the investigation, and despite his involvement in scouting and mapping St. Catherine's Village and conveying the information on location and access to Kelly, Richard Wilbourn was never arrested or charged with any crime.

187.    On May 22, 2014, Mark Mayfield was arrested at his office, and charged with felony conspiracy to commit exploitation of a vulnerable adult. His bond was set at an inexplicably and unjustifiably high $250,000[10].

188.    For a well-known figure in the community, an attorney, and a family man who posed no flight risk, the felony criminal charge and disproportionately high bond relieved any doubt that his prosecution was for show and that Mark was a pawn in a political game. This was not about justice, but, rather, about the Cochran political machine and its Madison branches exacting revenge for supporting Cochran's opponent.

---

[9] At least one other individual was investigated, but not charged.
[10] Richard Sager, who also lacked a prior criminal record, had bond set at $500,000 on charges of conspiracy and tampering with evidence—based on his assisting John Mary conduct research on Cochran's alleged affair.

189.    The Cochran campaign's agents, including Butler Snow and City of Madison, continued to flex their muscle in punishing Mark by going after his business. On or about May 23, the day after his arrest, Trustmark Bank—a large contributor to the Cochran campaign—informed Mark that it was pulling business away from him because of the arrest.

190.    The Thad Cochran Campaign released a video featuring Mark and referring to him as a "criminal."

191.    Cochran's communication director, Jordan Russell, who was long-time friend of Mark and grew up with his son, Owen, referred to him in public as a "criminal" and a "felon" before Mark was even indicted.

192.    Mark, Robin, Owen, and William saw Mark's face over and over on local, regional, national, and international news stories about the Rose Cochran incident.

193.    The toll this public humiliation and persecution began to take on Mark, Robin, Owen, and William was hard and swift.

194.    The arrest, loss of his long-term largest client, and continued public shaming caused Mark to grow anxious and depressed. Though he had never before been prescribed antidepressant or anxiety medications, the week after his arrest, his family physician wrote him prescriptions to help him sleep, ease his anxiety, and help with the sudden onset of depression.

195.    The day after his arrest, Trustmark Bank informed Mark that he could no longer have his name or letterhead on any Trustmark Bank documents.

196.    Mark transferred all active Trustmark Bank files to another lawyer.

197.    Mark would call Robin to come sit with him at his office because he was sitting at his office by himself—the law practice that his father started in the mid-1950s.  Over 60 years of the Mayfield law practice vanished overnight.

198.    Mark reached out to his friend Richard Wilbourn, who he thought would provide support, particularly since he had been the one who found Clayton Kelly and fed him the information on accessing St. Catherine's. Wilbourn and Mark met up a few times at a community swimming pool in Bridgewater to talk. To Mark's obviously distressed state, Wilbourn proffered reassurance and platitudes, all the while was covering his own tracks, leaving Mark to take the fall.

199.    On June 24, 2014, after a runoff campaign that turned ugly, Senator Cochran won a runoff.

200.    On June 27, 2014, three days later, Robin Mayfield woke up to find Mark's side of the bed empty. She found him on the floor of the garage, a gun in his hand and a bullet hole in his head. She then had to call her two sons and tell them that their father was dead. Though Mark and Robin had planned to retire in the house that they lived in for nine years, Robin was not able to relive that horror on a daily basis. Robin sold their home. Robin suffers from post-traumatic stress disorder and has to take prescriptions for anxiety, and to prevent the panic attacks that she began suffering after the death.

201.    John Mary pled guilty on August 6, 2014, to Conspiracy to Commit the Crime of Posting Electronic Media for the purpose of harming another. He was sentenced to five years of supervised probation and agreed to cooperate in the investigation and prosecution of his alleged co-conspirators.

202.    Clayton Kelly initially pled guilty to a charge of conspiracy to commit burglary, but the burglary charges were later dropped, and Kelly—whose initial burglary charges could have sentenced him to 50 years—was sentenced to two and a half years in prison, with another two and a half years' probation that are still being served.

203.   In short, those who were deemed the most easily expendable—by the Cochran campaign

and Richard Wilbourn—took the fall; Wilbourn was able to use his money and connections to

avoid being charged. Investigator Vickie Currie, having served her purpose in the political game,

was transferred to the animal control division of the Madison Police Department.

## CAUSES OF ACTION

### COUNT I:  VIOLATION OF STATUTE 42 U.S.C. § 1983
### (BUTLER SNOW, CLARK, CITY OF MADISON, HAWKINS-BUTLER, WALDROP, HARRISON, CURRIE, AND JOHN DOES AND JANE DOES 1-10)

204.   Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth

herein.

205.   The Butler Snow, Clark, City of Madison, Hawkins-Butler, Waldrop, Harrison, and

Currie ("State Actor Defendants") violated 42 U.S.C. § 1983.

206.   These State Actor Defendants' conduct operated to deprive Plaintiffs of their rights

guaranteed by the United States Constitution and federal statutes.

207.   The above-described actions by Defendants Butler Snow and Don Clark in conspiring

with the other State Actor Defendants, and other local and state officials, to formulate the

charges brought against Mark Mayfield and others are sufficient to deem them to be acting under

color of state law for purposes of 42 U.S.C. § 1983 inasmuch as the officials Butler Snow and

Don Clark represented and/or took part in the conspiracy in a manner stemming from their state

functions.

208.   Moreover, Defendants Butler Snow and Clark's representation of these local and state

officials and entities constitutes a close nexus such that the actions of Butler Snow and Clark

could be reasonably interpreted to be attributed to its client, the City of Madison.

209.    That is, when Butler Snow and Clark provided the other State Actor Defendants and the

District Attorney's office with their legal theories and potential charges, it was with the authority

of the City of Madison and Mayor Hawkins-Butler.

210.    The legal theories and charges were further provided with the intent (a) that they be

pursued and (b) be pursued to benefit Thad Cochran and the Thad Cochran Campaign.

211.    Further, the legal theories and charges were further provided with the knowledge that one

or more of them would, in fact, (a) be pursued and (b) be pursued to benefit of Thad Cochran and

the Thad Cochran Campaign.

212.    At all times relevant here, Butler Snow was acting in joint activity with the City of

Madison and other State Actor Defendants to such a degree that the actions of Butler Snow and

Clark can be attributed to the City of Madison, and vice-versa.

213.    Butler Snow's joint activity included but was not limited to actions with the City of

Madison Office of Mayor, City of Madison Police Department, and City of Madison

Prosecutor's Office in their filing of charges, investigation, and prosecution against Mark

Mayfield and others.

214.    As such, Defendant Butler Snow and Clark can be considered a state actor for purposes

of 42 U.S.C. § 1983.

215.    The above-described actions were taken by the State Actor Defendants while acting

under the color of state law, and caused Mark Mayfield to be deprived of his clearly-established

rights secured by the United States Constitution under the Fourth, Fifth, and Eighth

Amendments, which resulted in injuries to Mark Mayfield and, ultimately, his death.

216.    The deprivations complained of herein were a direct and proximate result of the custom,

policy and practice of the State Actor Defendants, and their officers and agents named herein,

and/or as enacted by final policy-making authorities.

217.    The State Actor Defendants were aware of the deprivations complained of herein, and condoned or were deliberately indifferent to such conduct.

218.    As a direct and proximate result of the foregoing, the State Actor Defendants deprived Plaintiffs of their rights and privileges as citizens of the United States, and Defendants caused Plaintiffs to suffer financial injury, significant indignities, and to be hurt and injured in their health, strength, and activity, and which have caused, and will continue to cause, Plaintiffs physical, mental, and emotional pain and suffering, all to their general damage in a sum which will be proven at trial.

219.    Pursuant to 42 U.S.C. § 1983, Plaintiffs pray for judgment against Defendants and each of them, jointly and severally, for damages in such amount as the court or finder of fact deems proper, in a sum which will be proven at trial, plus costs and attorney fees.

## COUNT II:  VIOLATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF FEDERAL LAW (BIVENS ACTION) (BUTLER SNOW, CLARK, AND JOHN DOES AND JANE DOES 1-10)

220.    Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

221.    Thad Cochran is a United States Senator and, therefore, a federal actor.

222.    Senator Cochran authorized Don Clark to act on his behalf, thus delegating authority to him. As such, Don Clark and his firm Butler Snow are considered to be federal actors when acting on their client Thad Cochran's behalf.

223.    Defendants Butler Snow and Clark conspired with Senator Cochran and/or his agents and representatives, and/or acted with their delegated authority, in formulating the charges brought against Mark Mayfield.

224.    Defendants Butler Snow and Clark are, therefore, deemed to be acting under color of federal law for purposes of a *Bivens* action.

225.    Moreover, Defendants Butler Snow and Clark's representation of Senator Cochran and his campaign constitutes a close nexus such that the actions of Butler Snow and Clark could be reasonably interpreted to be attributed to its client, a federal actor.

226.    As such, Defendants Butler Snow and Clark can be considered federal actors for purposes of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971).

227.    The above-described actions were taken by Butler Snow and Clark while acting under the color of federal law, and caused Mark Mayfield to be deprived of his clearly-established rights secured by the United States Constitution under the Fourth, Fifth, and Eighth Amendments, which resulted in injuries to Mark and, ultimately, his death.

228.    Butler Snow and Clark were aware of the deprivations complained of herein, and condoned or were deliberately indifferent to such conduct.

229.    As a result, Plaintiffs have been damaged and in an amount to be fully proven at the trial of this matter.

## COUNT III:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (ALL DEFENDANTS)

Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

230.    The Defendants could reasonably foresee that their intentional and/or negligent acts would result in emotional harm and distress to any "co-conspirators," including Mark Mayfield and his family.

231.    Mark Mayfield did, in fact, suffer mental and emotional distress as the result of the Defendants' acts. Mark Mayfield's mental and emotional distress manifested itself via demonstrable harm during the period preceding his death.

232.    Robin Mayfield also suffered mental and emotional distress as the result of the Defendants' acts, both after Mark's arrest and after his death continuing to the present day.

233.    As a result, Plaintiffs have been damaged and in an amount to be fully proven at the trial of this matter.

## COUNT IV:  WRONGFUL DEATH (ALL DEFENDANTS)

234.    Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

235.    The wrongful and negligent acts and omissions of Defendants were a direct, substantial, and proximate cause of the emotional distress and death of Mark Mayfield.

236.    Alternatively and/or additionally, Richard Wilbourn's intentional actions caused Mark Mayfield to experience an irresistible impulse to commit suicide.

237.    As federal actors, Defendants Butler Snow and Don Clark are also subject to liability.

238.    As state actors, Defendants Butler Snow and Don Clark are also subject to liability.

239.    Plaintiffs are entitled to damages under Mississippi Code Annotated § 11-7-13, and for non-economic damages for loss of consortium.

## COUNT V: CIVIL CONSPIRACY
## (ALL DEFENDANTS)

240.    Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

241.     Defendants conspired and colluded together to wrongfully arrest and prosecute Mark Mayfield for a crime he did not commit, thereby depriving him of his state and federal constitutionally protected rights.

242.     As a result, Plaintiffs were damaged in an amount to be fully proven at the trial of this matter.

## COUNT VI: KIDNAPPING AND FALSE IMPRISONMENT

243.     Plaintiffs incorporate and reallege each of the foregoing paragraphs as if fully set forth herein.

244.     The State Actor Defendants unreasonably and unlawfully seized Mark's person without probable cause to believe a crime occurred.

245.     The State Actor Defendants throughout Mark's false imprisonment, remained deliberately indifferent.

246.     The State Actor Defendants held Mark Mayfield in confinement, and required Mark to pay tens of thousands of dollars to obtain his release.

247.     The State Actor Defendants lacked lawful authority to seize, detain, confine, imprison, and deprive Mark Mayfield of his liberty.  The State Actor Defendants were grossly negligent in unreasonably and unlawfully seizing and confining Mark Mayfield.

248.     As a direct and legal result of the foregoing, Plaintiffs were hurt and injured in their health, strength, and activity, which have caused, and will continue to cause, Plaintiffs physical, mental, and emotional pain and suffering, all to their general damage in a sum which will be proven at trial.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray:

a. That process issue to the Defendants and that they be required to answer in the time allowed by law,

b. That compensatory damages of, from and against the Defendants, each and severally, be awarded to the Plaintiffs,

c. That Plaintiffs be awarded punitive damages against the Defendants,

d. That Plaintiffs be awarded reasonable expenses incurred in this litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. §1988 (b) and (c),

e. For actual, compensatory, economic, and non-economic damages; and

f. That the Plaintiffs receive any other further and general relief to which it may appear they are entitled.

Dorsey R. Carson, Jr., Esq. (MSB #10493)
Julie C. Skipper, Esq. (MSB #101591)
Steve C. Thornton, Esq. (MSB #9216)
Attorneys for Plaintiffs
*Estate of Mark Stevens Mayfield and Robin*
*Mayfield, Owen Mayfield and William*
*Mayfield*

**OF COUNSEL:**

CARSON LAW GROUP, PLLC
Capital Towers, Suite 1336
Jackson, MS 39201
Telephone: 601.351.9831
Facsimile: 601.510.9056
Email: dcarson@thecarsonlawgroup.com
        jskipper@thecarsonlawgroup.com
-and-

THORNTON LAW FIRM
P.O. Box 16465
Jackson, MS 39236
Telephone: 601.982.0313
Facsimile: 601.957.6554
Email: mail@lawlives.com