IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ROBIN MAYFIELD, ET AL.**                                                   **PLAINTIFFS**

**VS.**                       **CAUSE NO. 3:17-CV-00514-CWR-FKB**

**BUTLER SNOW, LLP, ET AL.**                                              **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF DEFENDANTS' THE CITY OF MADISON, MISSISSIPPI'S AND MARY HAWKINS-BUTLER'S
RULE 12(b)(6) MOTION TO DISMISS**

The City of Madison, Mississippi and Mary Hawkins Butler, in her capacity as the Mayor of the City of Madison, Mississippi, file this memorandum in support of their motion to dismiss. All claims against these Defendants in the *Amended Complaint* [Dkt. NO. 6] filed by the Plaintiffs should be dismissed with prejudice for failure to state a claim.

**FACTUAL AND PROCEDURAL BACKGROUND**

This Plaintiffs' claims arise out of a conspiracy that was carried out by certain individuals for the purpose of making an anti-Cochran attack ad using a picture of Thad Cochran's wife lying in bed in a nursing home juxtaposed with a picture of Senator Cochran while traveling about with a female companion. *Amended Complaint* [Dkt. No. 6] ¶69-70. As part of this conspiracy had to secretly enter Rose Cochran's living quarters at St. Catherine's Village assisted living facility in Madison, Mississippi and take an unauthorized picture of her.

According to the Amended Complaint, Mark Mayfield was unwilling to actually take the photograph of Mrs. Cochran in her bed at St. Catherine's Village.[1] However; he did agree and

---

[1] For purposes of this Rule 12(b)(6) motion to dismiss, these Defendants recite the factual allegations of the Amended Complaint without agreeing to the truth of the same.

1

participate in the conspiracy by showing another conspirator the location of Mrs. Cochran's room at St. Catherine's. Furthermore, Mark Mayfield understood that the purpose of the scheme was to obtain a photograph of the Mrs. Cochran in her bed. ¶ 78-83. Mayfield ultimately fulfilled his role in the conspiracy when he met Wilbourn at St. Catherine's and showed Wilbourn the location of Mrs. Cochran's room. ¶ 81-82, 201. Wilbourn passed this information along to Clayton Kelly. *Id.*, ¶ 86. Kelly later entered Mrs. Cochran's room and took cell phone video of her lying in her bed. He then published a still photograph of Mrs. Cochran as part of a video he posted to YouTube. ¶ 87-88. After the incident, Wilbourn and Mayfield continued to communicate about the conspiracy. ¶ 89, 96-98.

On May 16, 2014, Don Clark filed an Incident Report with the Madison Police Department. ¶ 194; Ex. A. On May 22, 2014, Officer Currie with the Madison Police Department signed an affidavit in support of an arrest warrant for Mark Mayfield on a charge of criminal conspiracy to commit a violation of Mississippi Code Ann. § 97-29-63 (photographing another without permission in a place of expected privacy). ¶ 203, 218, Ex. F. On the same day, Officer Harrison with the Madison Police Department signed affidavits in support of warrants to search Mayfield's residence in Ridgeland and his office in Jackson for computers and all forms of digital media, including cell phones, and all information or electronic data and "items associated with the exploitation of Rose Cochran." ¶ 216; Ex. G. Mark Mayfield was then arrested at his law office later that day.

After the arrest, Mark Mayfield was the subject of intense national media scrutiny, news stories and blog posts. ¶ 52. The day after his arrest, Mark Mayfield's largest client, Trustmark National Bank moved its business causing the complete collapse of his law practice. ¶ 53. Mark was prescribed medications for sleep, depression and anti-anxiety. ¶ 54. Thereafter on June 27,

2

2014, Mark Mayfield committed suicide. ¶ 234. While Mark Mayfield died before his case was presented to the grand jury, three coconspirators — Clayton Kelly, John Mary, and Richard Sager — ultimately pled guilty to various crimes arising out of the subject incident.[7]

*<u>Allegations against City of Madison and Mayor Hawkins-Butler</u>*

The Amended Complaint alleges the following wrongful actions by the City of Madison and/or Mayor Hawkins-Butler:

1. Clark and Butler Snow, as legal counsel for Thad Cochran and the Thad Cochran campaign, called Mayor Hawkins-Butler and told her that a crime had been committed in the City of Madison. During this conversation, they discussed legal theories and Clark invited Mayor Hawkins-Butler to come to Butler Snow's office to look at a video of the crime. ¶182-84, 122-25.

2. Mayor Hawkins-Butler directed her Police Chief to begin the criminal prosecution. ¶186.

3. On May 22, 2014, Officer Currie signed an affidavit and Officer Harrison signed two affidavits in support of arrest warrants for Mark Mayfield. ¶ 44-47.

4. On the basis the affidavits, Madison Municipal Court Judge Dale Danks signed a warrant for Mark Mayfield's arrest and search warrants for his home. ¶48.

5. Mark Mayfield was arrested, his home was searched, and certain items were seized ¶49-50.

6. City of Madison Municipal Court Judge Dale Danks imposed excessive bail in the amount of $250,000.00. ¶ 51.

7. The warrants issued on the basis of the affidavits of Officer Currie and Officer Harrison lacked probable cause. ¶203.

*<u>Civil Proceedings and the Amended Complaint</u>*

On June 27, 2017, Plaintiffs filed the instant lawsuit. Plaintiffs later filed an Amended Complaint. *See* Doc. [6]. The Amended Complaint specifically alleges the following causes of

---

[7] Though Sager participated in a "pre-trial diversion program," such programs involve a guilty plea, the acceptance of which the trial judge withholds while the accused completes the program.

3

action against the City of Madison and Mayor Hawkins-Butler:

1. Violation of 42 U.S.C §1983 (Count I);

2. Negligent infliction of emotional distress (Count III);

3. Wrongful death under Mississippi Code Annotated §11-7-13 (Count IV);

4. Civil conspiracy (Count V); and,

5. kidnapping and false imprisonment (Count VI).

## LAW AND ARGUMENT

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

For a complaint to be legally sufficient, it must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly,* 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. If there are insufficient factual allegations to raise a right to relief above the speculative level or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly,* 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007).

**B.  The Plaintiffs' State Law Claims against the City of Madison are Time Barred**

The Mississippi Tort Claims Act provides the exclusive remedy for the filing state law claims against a governmental entity and its employees. *Elkins v. McKenzie*, 865 So.2d 1065, 1078 (Miss. 2003); *Jackson v. Powell*, 917 So.2d 59, 69 (Miss. 2005). According to Section 11-46-11(3)(a), all MTCA actions "shall be brought within one year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based…." Accordingly, each of the Plaintiffs' state law claims accrued when Mark Mayfield was allegedly arrested without probable cause on May 22, 2014. Under the MCTA, any claims against these Defendants had to be filed on or before May 22, 2015. However, the Plaintiffs' did not file their complaint in this matter until June 27, 2017 – more than two years after the time for filing had expired. Accordingly, the Plaintiffs' claims against for negligent infliction of emotional distress (Count III), wrongful death under Mississippi Code Annotated §11-7-13 (Count IV), civil conspiracy (Count V), and kidnapping and false imprisonment (Count VI) are time barred and must be dismissed with prejudice.

**C.  The Plaintiffs' State Law Claims are Barred by MCTA**

To the extent the Mayor and the other employee defendants were acting pursuant to and within the scope of their employment with the City of Madison, Mississippi, these Defendants are immune from individual liability, as provided by the MTCA:

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, **but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties**. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

5

Miss. Code Ann. § 11-46-7(2)(emphasis added). There is a rebuttal presumption that "any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment." Miss. Code Ann. § 11-46-5. No facts were alleged in the Amended Complaint which would support any conclusion except that Mayor Hawkins-Butler was acting in the scope of her employment as the Mayor of the City of Madison at all relevant times.

The MCTA provides a number of exceptions to the liability of a governmental entity based upon specified circumstances. Chief among these is the "discretionary" function exemption set forth in Section 11-46-9. The discretionary function exemption provides that a governmental entity and its employees acting within the scope of their employment shall not be liable for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." In determining whether governmental conduct is discretionary the Court must answer two questions: (1) whether the activity involved an element of choice or judgment; and if so, (2) whether the choice or judgment in supervision involves social, economic or political policy alternatives. *Bridges v. Pearl River Valley Water Supply Dist.*, 793 So. 2d 584, 588 (Miss. 2001).

A review of the Plaintiffs' Amended Complaint against the City of Madison and Mayor Hawkins-Butler shows that the state law claims are based on their discretionary acts. Each act allegedly attributable to Mayor Hawkins-Butler in this case involved an element of choice or judgment in supervision involving social or political policy alternatives. *See Estate of Carr ex rel. Macfield v. City of Ruleville*, 5 So. 3d 455, 458 (Miss. Ct. App. 2008) (affirming that the manner in which the police chief elected to execute the arrest warrant involved the exercise of

discretionary function); *Dancy v. E. Mississippi State Hosp.*, 944 So. 2d 10, 17 (Miss. 2006) (finding that East Mississippi State Hospital was immune from liability under discretionary social function exemption for patient who was injured after escaping supervision and attempting to commit suicide); *City of Jackson v. Doe ex rel. J.J.*, 68 So. 3d 1285, 1288 (Miss. 2011) (holding that a city's operation of a city park is a discretionary function); *Hankins v. City of Cleveland*, 90 So. 3d 88, 95 (Miss. Ct. App. 2011)(holding that a city's decision to maintain a crosswalk is a discretionary function).

The MCTA also preserves sovereign immunity with regard to any claim arising out of law enforcement activities so long as the employees are not deemed to have acted "in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." *See* §11-46-9(1)(c). In the instant case, the criminal allegations against Mark Mayfield and others were referred to the City of Madison's Police Chief for investigation. The subsequent investigation resulted in the charges that were filed against Mark Mayfield and others. To the extent that the City of Madison, its Mayor and other City employees were involved in the institution of criminal proceedings against Mark Mayfield, these activities fall within the "law enforcement" exemption which presumptively accords immunity to these Defendants. *Phillips v. Mississippi Department of Public Safety*, 978 So.2d 656, 661 (Miss. 2008); *Turner v. City of Ruleville*, 735 So.2d 226, 230 (Miss. 1999); *Maye v. Pearl River County*, 758 So.2d 391, 394 (Miss. 1999). The Amended Complaint contains no allegations that these Defendants acted with reckless disregard for the safety of Mark Mayfield.

For all of the foregoing reasons, these Defendants have immunity from Plaintiffs' claims against them in their official capacities, and Plaintiffs' claims should be dismissed as a matter of law.

### D. Plaintiffs failed to comply with the MTCA's mandatory notice requirements

The Mississippi Supreme Court has unequivocally held that §11-46-11(1) provides a "mandatory notice requirement...." *S. Cent. Reg'l Med. Ctr. v. Guffy*, 930 So.2d 1252, 1259 (Miss. 2006) (quoting *Black v. City of Tupelo*, 853 So.2d 1221, 1226 (Miss. 2003); *see Arceo v. Tolliver*, 19 So.3d 67, 72 (Miss. 2009) ("The MTCA requires written notice of a claim in advance of the filing of a lawsuit, a requirement which ... is strictly applied"; *Price v. Clark*, 21 So.3d 509, 518 (Miss. 2009) ("strict compliance with statutory notice is required ..."; *Univ. of Mississippi Med. Ctr. v. Easterling*, 928 So.2d 815, 820 (Miss. 2006) (quoting *Ivy v. GMAC*, 612 So.2d 1108, 1116 (Miss. 1992)) ("The ninety day notice requirement ... is a 'hard edged, mandatory rule which the Court strictly enforces'").

The Amended Complaint fails to set forth any facts demonstrating that Plaintiffs complied with the MTCA's mandatory pre-suit notice requirements. Upon information and belief, Plaintiffs never served the City of Madison with proper pre-suit notice of their claim. Accordingly, Plaintiffs' state law claims are improperly before the Court and should be dismissed as a matter of law.

### E. The Plaintiffs Intentional Tort Claims against Mayor Hawkins-Butler are Time Barred

To the extent that the Amended Complaint asserts intentional tort claims against Mayor Hawkins-Butler, individually, the same are time barred by Mississippi's one-year statute of limitations for intentional torts. This would include the Plaintiffs' claims state law claims for civil conspiracy, kidnapping, and false imprisonment. *See* MISS. CODE ANN. § 15-1-35[8];

---

[8] § 15-1-35 provides, in relevant part, as follows: "All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, . . . shall be commenced within one year next after the cause of such action accrued, and not thereafter." The Mississippi Supreme Court has held that this statute applies to all intentional torts which are "substantially like" those

*McGuffie v. Herrington*, 966 So. 2d 1274, 1278 (Miss. Ct. App. 2007) (civil conspiracy claim subject to one-year statute of limitations); *City of Mound Bayou v. Johnson*, 562 So. 2d 1212, 1218 (Miss. 1990) (false arrest and false imprisonment claims both subject to a one-year statute of limitations under Mississippi law).

      **F.    The Plaintiffs' 1983 Claims are Barred by Qualified Immunity**

Qualified immunity protects a defendant acting under color of state law "insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). The court is to apply a two-step analysis, now discretionary, to determine whether a government official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "First, the plaintiff must show that he suffered a constitutional violation, and then [the court] must determine whether the action causing the violation was objectively unreasonable in light of clearly established law at the time of the conduct." *Lacy v. Shaw*, 357 Fed.Appx. 607, 609 (5th Cir. 2009) (citing *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007)). As stated by the U.S. Supreme Court:

> Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)(quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978), for the proposition qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

---

enumerated in the statute and not otherwise provided for. *Mound Bayou*, 562 So. 2d at 1217-18 (Miss. 1990).

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity protects the City of Madison, Mayor Hawkins-Butler and the employees of the City of Madison to the extent that the alleged wrongful conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. To overcome the claim of qualified immunity by these Defendants, Plaintiffs are required to show (1) that Mayor Hawkins-Butler and/or some other employee of the City of Madison violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. at 800, 818 (1982)). As to the second prong, courts consider:

> [W]hether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.

*Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citations omitted). Whether an official acted with objective reasonableness is an issue of law reserved for the court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

First, the Plaintiffs in the instant case have not alleged sufficient facts establishing that that Mark Mayfield actually suffered any violation of a clearly established constitutional right. Second, the Plaintiffs have alleged only conclusions, rather than facts, explaining how these Defendants actually caused the violation of any specific constitutional right. As the United State's Supreme Court has explained, [a] defendant cannot be said to have violated a clearly

established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating same. *Ashcroft v. al–Kidd*, 563 U.S. [731] 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011). it. *Id.*, at 2083–2084. As a practical matter, and to the extent that Mayor Hawkins-Butler and the other employees of the City of Madison allegedly participated in the investigation of Mark Mayfield, it would be unreasonable to assume that they should have known that they were violating Mark Mayfield's free speech rights while doing so. Third, looking at all the allegations in the Amended Complaint as well as the exhibits, Mayor Hawkins-Butler and the other employees of the City of Madison could have reasonably believed under the circumstances that a crime had been committed by Mark Mayfield while in the City of Madison. Under these circumstances, these Defendants are entitled to qualified immunity.

"Part of the power of the qualified immunity doctrine arises from the fact that it must simply be raised as a defense by a defendant, and the plaintiff has the burden of establishing the proof and arguments necessary to overcome it." *Ellis v. Vance*, 227 F. Supp. 3d 627, 633 (N.D. Miss. 2017). "Negating qualified immunity 'demands more than bald allegations and conclusionary statements.'" *Fleming v. Tunica County*, 497 F. App'x 381, 388 (5th Cir. 2012). Plaintiff "must allege facts specifically focusing on the conduct of [the individual defendants] which caused his injury." *Id*. A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

The Plaintiffs' §1983 claims against the City of Madison and Mayor Hawkins-Butler arise from the allegation that Mayfield was wrongfully arrested. In order to prevail on a §1983

claim for wrongful or false arrest in violation of the Fourth Amendment, a plaintiff must show that he was arrested without probable cause. *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir.2013) (emphasis omitted) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004)).

To defeat qualified immunity on their claim of false arrest, the Plaintiffs must prove that a reasonable person looking at the totality of the facts and circumstances within the police officer's knowledge at the time of the arrest would not have concluded that the suspect had committed an offense. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). If reasonable law enforcement officers could debate whether probable cause existed under all the facts alleged, then the City of Madison, Mayor Hawkins-Butler and the City's employees are entitled to qualified immunity.

Mayfield was arrested pursuant to a validly supported and issued warrant. The affidavit Officer Currie submitted in support of the warrant charged Mayfield with criminal conspiracy in violation of Mississippi Code § 97-1-1, stating that Mayfield "did willfully, unlawfully, and feloniously conspire with John Mary and Clayton Kelly to commit the crime of photographing[,] taping, or filming a person in violation of expectation of privacy (§ 97-29-63) by communicating, planning, and assisting Clayton Kelly with information and resources which aided and assisted Kelly in photographing and filming Rose Cochran inside her residence, her room at St. Catherine's Village, without her knowledge or permission." Criminal conduct under Section 97-29-63(1)(a) is defined as follows:

> It is a felony for any person with lewd, licentious or indecent intent to photograph, film, videotape, record or otherwise reproduce the image of another person without the permission of the other person when the other person is located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including, but not limited to, private dwellings or any facility, public or private, used as a ... bedroom shall be guilty of a felony."

The allegations in the Amended Complaint show that a reasonable officer under the same circumstances could have objectively and reasonably concluded that there was probable cause to arrest Mark Mayfield's. First, the Amended Complaint admits that the photograph of Mrs. Cochran was taken in her private room at St. Catherine's and was thereafter published by Kelly. *See* Doc. [6], ¶¶ 86-88. The Amended Complaint admits that Kelly was arrested and ultimately pled guilty. *Id.*, ¶¶ 94, 241. The Amended Complaint admits that Mayfield knowingly furnished information to a criminal conspiracy. ¶¶ 75-89. Additionally, investigators had gathered sufficient evidence of Mayfield's conduct to establish probable cause for his role in the conspiracy based on communications and voluntary statements they had obtained from the other individuals involved. *See* Exhibits "C," "D," "E," "F," and "G." Moreover, where an arrest is made under authority of a properly issued warrant, the arrest is not a false arrest unless there were intentional misrepresentations or material omissions in the warrant application. *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982); *see also Freeman v. County of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000) (a plaintiff must prove that the defendant knowingly or recklessly provided false information to secure the arrest warrant). There is no such allegation in this case.

For all of these reasons, the Plaintiffs' Section 1983 claims against the City of Madison and Mayor Hawkins-Butler must be dismissed with prejudice for the failure to state a claim upon which relief can be granted.

### G. The Federal Claims are also Time Barred

There is no federal statute of limitations for civil rights actions. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (holding that a federal court must borrow the forum state's general personal injury limitations period since there is no federal statute of limitations for civil rights actions brought pursuant to 42 U.S.C. § 1983). The Court, therefore, must borrow the general personal injury limitations period for Mississippi and apply it to the allegations of the instant civil action. *Id*. The applicable Mississippi statute of limitations period is three years. *See James v. Sadler*, 909 F.2d 834, 836 (5th Cir. 1990) (holding Mississippi's three-year general personal injury limitations period applicable to § 1983 cases); *see also* MISS. CODE ANN. § 15-1-49. While Mississippi law governs the applicable limitations period, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). As such, an action accrues when a plaintiff has "a complete and present cause of action." *Id*. "Under federal law, the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).

From the allegations contained in the Amended Complaint [Dkt. No.6], Mayfield's arrest and the search of his residence and office by police all occurred on May 22, 2014. Therefore, the three-year limitation period applicable to his claims asserted under 42 U.S.C. § 1983 expired on May 22, 2017. However, Plaintiffs did not file the instant action until June 27, 2017 – the third anniversary of Mayfield's death. Because Plaintiffs' federal claims accrued more than three years prior to filing the present action, they are time barred and should be dismissed for failure to state a claim.

Dated:  September 13, 2017

                                                  Respectfully Submitted,

                                                  /s/   *Michael V. Cory, Jr.*
                                                  Michael V. Cory, Jr. (MSB#6869)
                                                  Kenneth C. Miller (MSB#10043)
                                                  Danks, Miller & Cory
                                                  213 S. Lamar Street
                                                  P.O. Box 1759
                                                  Jackson, MS  39215-1759
                                                  Telephone:  (601) 957-3101
                                                  Facsimile:   (601) 957-3160
                                                  E-mail: mc@dmclaw.net

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served via the Court's ECF system on the following counsel of record on September 13, 2017:

CARSON LAW GROUP, PLLC
Dorsey R. Carson, Jr., Esq.
dcarson@thecarsonlawgroup.com
Julie C. Skipper, Esq.
jskipper@thecarsonlawgroup.com

THORNTON LAW FIRM
Steve C. Thornton, Esq.
mail@lawlives.com

BRADLEY ARANT BOULT CUMMINGS, LLP
Simon T. Bailey, Esq.
sbailey@babc.com
Stephen Lee Thomas, Esq.
sthomas@babc.com

DANIEL, COKER, HORTON & BELL
Steven James Griffin, Esq.
sgriffin@damielcoker.com
Alan Walter Perry, Esq.
aperry@babc.com
Roy A. Smith, Jr., Esq.
rsmith@danielcoker.com

/s/ *Michael V. Cory, Jr.*