**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ROBIN MAYFIELD, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.: 3:17-CV-514-CWR-** |
| **v.** | ) | **FKB** |
| | ) | |
| **BUTLER SNOW LLP, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR RESPONSE IN
OPPOSITION TO BUTLER SNOW DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Robin Mayfield, Owen Mayfield, William Mayfield, and the Estate of Mark Stevens Mayfield (collectively, the "Plaintiffs"), by and through counsel, respectfully submit this Memorandum in support of their Response in Opposition to Butler Snow LLP and Donald Clark, Jr. ("Don Clark") (collectively, the "Butler Snow Defendants")'s Motion to Dismiss the Amended Complaint (the "Motion to Dismiss") [Doc. 15], and would state as follows:

## **INTRODUCTION**

As set forth in the Plaintiffs' Amended Complaint, the Butler Snow Defendants were involved in the criminal prosecution of Clayton Kelly, John Mary, Richard Sager, and Mark Mayfield from the outset. As alleged, the Butler Snow Defendants acted in concert with and/or on behalf of their clients, including Senator Thad Cochran and his campaign, the City of Madison, and other state actors, to charge individuals without probable cause in order to criminally (and politically) prosecute them for actions that they knew were (a) not criminal and (b) constituted constitutionally-protected political speech.

In their Memorandum in Support of their Motion to Dismiss [Doc. 16], the Butler Snow Defendants argue that it is not wrongful to report an incident that may constitute or relate to

1

possible criminal conduct if the party has probable cause for such a report. As Plaintiffs' Amended Complaint makes clear, that is not what happened in the case at bar. Rather, as alleged in the Amended Complaint, the Butler Snow Defendants lacked probable cause to believe that a crime had been committed and, moreover, they knew that essential elements of the criminal charges brought were missing. Further, the facts as pled support the claims in the Amended Complaint that the Butler Snow Defendants worked with their clients Thad Cochran and/or his campaign, and state actors, to come up with and execute on the bringing of criminal charges without probable cause, and that they participated in a conspiracy with state actors to deprive Mark Mayfield of his constitutionally protected rights.

The Amended Complaint does not, as the Butler Snow Defendants' Memorandum claims, describe events related to the Rose Cochran Incident (as it is defined in the Amended Complaint) and "unrelated events" merely to bring up the tragic loss of Mark Mayfield publicly on the anniversary of his death. Rather, the facts alleged, when taken as true and in the light most favorable to the Plaintiffs, as they must for purposes of a Rule 12(b)(6) motion, set forth a detailed basis for the claims alleged against the Butler Snow Defendants. The events and facts detailed in the complaint are necessary to show the whole picture. Rather than suggest, as the Butler Snow Defendants do, that Mark Mayfield's actions took place "in a vacuum" (Defendants' Memorandum, Doc. 16, p. 9), the Amended Complaint makes clear that nothing in this case took place in a vacuum. Mark Mayfield was caught in a web, the spinning of which was crafted by the Butler Snow Defendants. The Butler Snow Defendants' Motion to Dismiss should be denied.

## ARGUMENT

## I.     The Well-Pleaded Complaint Rule Provides the Standard of Review.

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Federal Rules of Civil Procedure. "Detailed factual allegations are not required, but a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint will not be dismissed merely because it contains an "imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, – U.S. –, 135 S.Ct. 346, 346 (2014).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the trial court is to accept all well-pleaded facts as true, view those facts in the light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *Balle v. Nueces County*, No. 16-40789 (5th Cir., June 15, 2017); *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016); *Toy v. Holder*, 714 F.3d 881, 883 (5th Cir. 2013). "Well-pleaded factual allegations may perfectly shield a complaint from dismissal under Rule 12(b)(6), and [the Fifth Circuit] inquiry's 'emphasis on the plausibility of a complaint's allegations does not give district courts license to look behind those allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial.'" *Breton Energy, L.L.C. v. Mariner Energy Res., Inc.*, 764 F.3d 394

(5th Cir. 2014)(quoting *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011).

In the instant case, Plaintiffs' Amended Complaint pleads sufficient factual content. That content, when taken as true and viewed in a light favorable to the Plaintiffs, provides adequate factual bases for this Court to draw the reasonable inference that the Butler Snow Defendants lacked probable cause to suggest that criminal charges be brought against the individuals charged in connection with the Rose Cochran Incident, did not have probable cause to support the Incident Report filed by Don Clark against Clayton Kelly, and did not have probable cause to act in conjunction with state actor Defendants to charge and prosecute the individuals arrested in connection with the Rose Cochran Incident[1]. For these reasons, the Amended Complaint states a claim for which relief may be granted.

## II.    The Amended Complaint Satisfies the Well-Pleaded Complaint Rule.

The Amended Complaint plainly satisfies the well-pleaded complaint rule articulated above. Specifically, the following excerpts (with emphasis added) from Plaintiffs' Amended Complaint demonstrate that the Amended Complaint states a claim plausible on its face that the Butler Snow Defendants lacked probable cause to believe that anyone involved in photographing Rose Cochran had committed a crime under Mississippi law:

> ¶ 151.  Butler Snow and Clark knew that Madison Mayor Hawkins-Butler would be more than willing to **do anything they asked** to help Thad Cochran and the Thad Cochran Campaign, including directly enlisting the assistance of her Chief of Police and law enforcement, including Waldrop, Harrison, and Currie.
>
> ¶ 152.  Butler Snow and Clark knew that City of Madison government officials and actors would assist them in **their plans to prosecute** Clayton Kelly and any co-conspirators.
>
> ¶ 161.  Butler Snow and Clark worked both independently and jointly with the City of Madison, Mayor Mary Hawkins-Butler, Waldrop, Harrison, and Currie to

---

[1] Because Mark Mayfield's arrest for conspiracy naturally and by definition had to rely on alleged commission of an underlying "crime," the details of and basis for Clayton Kelly's arrest are relevant.

**develop their criminal legal theories** to pursue Clayton Kelly and others, including Mark Mayfield, and to cause harm to the McDaniel Campaign.

¶ 172.  **The prosecution of Mark Mayfield was a political prosecution**, plain and simple.  **The prosecution was a use of the color of state law as a tool to exact political retaliation and intentional injury** upon Mark Mayfield for his exercise of his rights of free speech and free association under the First Amendment. A primary purpose of this prosecution was to hurt Thad Cochran's political opponent.

¶ 178.  One of the ideas suggested within the Thad Cochran Campaign and their attorneys at **Butler Snow was to press criminal charges**, which would politically be advantageous for the Thad Cochran Campaign by associating the McDaniel Campaign with "criminals.

¶ 179.  Rather than immediately reporting any alleged "crime" to authorities as required by the Mississippi Vulnerable Persons Act, Clark and **Butler Snow waited until May 15, 2014—three weeks later—to contact authorities** at the City of Madison (instead of the statutorily-mandated authorities).  Their contact was made just weeks before the Republican Primary Runoff Election.

¶ 180.  Though they had the information the entire time since the video's posting on April 26, Butler Snow and Clark apparently spent these roughly three weeks **concocting a plan and formulating criminal causes of action** that could possibly be pursued by prosecutors.

¶ 189.  **Clark presented City of Madison law enforcement officers with the various legal theories advanced by Butler Snow**.

¶ 191.  The City of Madison, Hawkins-Butler, Waldrop, Harrison, Currie, Brian Buckley, Butler Snow, and Clark worked together to **target certain individuals, including Mark Mayfield, for arrest and prosecution based on those individuals' support of Chris McDaniel, Senator Cochran's opponent**.

¶ 194.  On May 16, 2014, Don Clark filed an **Incident Report, Incident Number 2014050539**, against Clayton Thomas Kelly.  The offense alleged in the report was violation of Miss. Code Ann. § 43-47-19(3), and Vickie Currie was the assigned detective.  This same Incident Report Number is the one used for the arrests and prosecutions of all of the individuals arrested in connection with the Rose Cochran Incident, including Mark Mayfield.

¶ 195.  **Currie signed an affidavit** in support of the arrest warrant for Kelly on May 16, 2014, for exploitation of a vulnerable person. Her affidavit states that "information was received from the Butler Snow Law Firm, whom (sic) provides legal assistance to the Thad Cochran U.S. Senate..." That same day, **Harrison signed an affidavit** in support of a search warrant for Kelly's home. Both warrants issued on May 16.

¶ 198.  **At the time Mark Mayfield was charged, the State Actor Defendants knew they lacked evidence to show that Mark had conspired with anyone to commit a crime.**

¶ 203.   The **Currie affidavit**'s statement that Mark's conduct amounted to "communicating" shows the Defendants knew that Mark's actions were the exercise of his right to free speech and, therefore, amounted to **a pretense for charging him with a crime**.  Accordingly, **the arrest warrant issued on the basis of the Currie affidavit lacked probable cause**.

¶ 204.   Similarly, the **Harrison affidavit**s' statements that Mark Mayfield provided "detailed information" show Defendants knew that Mark's actions constituted exercise of his right to free speech. The search warrants issued on the basis of the Harrison affidavits **lacked probable cause**.

¶ 205.  Notwithstanding the **absence of evidence of criminal conduct**, and the ample evidence that Mark Mayfield's conduct was the exercise of his Constitutionally-protected rights, the Defendants nonetheless decided to target Mark with trumped-up charge, for political expediency. (Footnote omitted.)

¶ 206.  **The above-named State Actor Defendants, acting jointly, knew or should have known that none of the individuals charged with committing or conspiring to commit violation of Miss. Code Ann. § 43-47-19, and arrested on May 22, 2014--including Mark Mayfield--could be proven to have committed that crime because . . . . The essential element that makes an exploitation a felony . . . was missing**.

¶ 209.  Additionally, **there was no evidence** or assertion that Clayton Kelly or Mark Mayfield willfully inflicted pain or injury upon Rose Cochran. As such, **there was no basis** for the Harrison affidavit's assertion that anything contained in Mark Mayfield's home or office contained evidence of violation of § 43-47-19(3).

¶ 210.  Nevertheless, due to Butler Snow and Clark's joint efforts with the City of Madison, Madison Mayor Mary Hawkins-Butler, Waldrop, Harrison, and Currie, **a wholly unsupportable charge** was made against Mark Mayfield for felony conspiracy to commit exploitation.

¶ 219. . . . **This was not about justice,** but, rather, **about** the Cochran political machine and its Madison branches **exacting revenge** for supporting Cochran's opponent.

COUNT  I  VIOLATION OF STATUTE 42 U.S.C. § 1983
(BUTLER SNOW, CLARK, . . . .)

¶ 244.  Butler Snow, Clark, City of Madison, Hawkins-Butler, Waldrop, Harrison, and Currie ("State Actor Defendants") violated 42 U.S.C. § 1983.

¶ 245.  These State Actor Defendants' conduct, made under color of state law, operated to deprive Plaintiffs of their clearly-established rights guaranteed by the United States Constitution and federal statutes, specifically including:
. . .
> (c)The right to be free from **unreasonable searches and seizures** protected by the Fourth Amendment of the United States Constitution

On its face, these factual allegations, taken as true and viewed in the light most favorable to the Plaintiffs, support the causes of action alleged against the Butler Snow Defendants.

## III.   The Incident Report and Affidavits Referenced in the Amended Complaint Provide Additional Factual Support.

The Butler Snow Defendants attempt to characterize the Amended Complaint as seeking to put Mark Mayfield's conduct "in a vacuum" or to "justify" his (or the other people arrested for the Rose Cochran Incident's) conduct in connection with the Rose Cochran Incident. Without commenting on whether Clayton Kelly's conduct was in bad taste or whether it constituted a civil wrong, what he and the others who were prosecuted did <u>was not criminal, and the Butler Snow Defendants knew it</u>. The documents referenced in the Amended Complaint—specifically the Incident Report and the affidavits supporting the arrest and search warrants, further demonstrate that the Amended Complaint clearly alleges facts that state a claim against the Butler Snow Defendants.

### A.   *The Court may consider the Incident Report and affidavits in deciding the instant Motion to Dismiss.*

The Incident Report and the affidavits referenced in Amended Complaint paragraphs 194, 195, 203, and 204 are properly considered by the Court under the well-pleaded complaint rule, because when considering a motion to dismiss, the court limits its consideration to the factual allegations in the complaint, documents central to or referenced in the complaint, and matters judicially noticed. *Breton Energy, L.L.C. v. Mariner Energy Res., Inc.*, 764 F.3d 394, 402, n.23

(5th Cir. 2014); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The Incident Report and affidavits referenced in the Amended Complaint provide additional support for the Amended Complaint's claims against the Butler Snow Defendants and further demonstrate the Plaintiffs' contention that the Butler Snow Defendants knew the search and arrest warrants issued for the Rose Cochran Incident lacked probable cause. The Incident Report shows Don Clark as the Complainant and lists his Butler Snow address. As detailed below, the Incident Report and all of the affidavits that stemmed from and relied upon it advance the legal theories and plan devised by the Butler Snow Defendants and ultimately resulted in the arrest of Mark Mayfield and search of his home and office without probable cause. As such, the Amended Complaint states a claim against the Butler Snow Defendants.

      B.        <u>The Butler Snow Defendants knew there was no probable cause to file a criminal complaint.</u>

The Incident Report indicates that, on or about May 15, 2014, Don Clark provided to the Madison Police Department a copy of a video posted to a Clayton Kelly YouTube account.[2]  The video includes a photograph of Rose Cochran asleep in her bed. With the video as his <u>only</u> evidence, Don Clark complained that Clayton Kelly had committed the crime of exploiting a vulnerable adult as set forth in Mississippi Code § 43-47-19(3).[3]  The crime defined by Section 43-47-19(3) is:

> Any person who <u>willfully inflicts physical pain or injury</u> upon a vulnerable person shall be guilty of <u>felonious abuse or battery</u>, or both, of a vulnerable person and, upon conviction thereof, may be punished by imprisonment in the State Penitentiary for not more than twenty (20) years.

---

[2] A copy of City of Madison Police Department Incident Report 2014050539 is attached to the Response as Exhibit "A."

[3] Incident Report at page 1.  See also Amended Complaint ¶¶ 90, 176, 179, 187-189.

(Emphasis added). The central elements of this crime are (1) willful infliction of physical pain or injury (2) upon a vulnerable person. Without evidence of willful infliction of physical pain, there is no probable cause that this crime has been committed.

Strikingly, the Incident Report is devoid of any evidence or suggestion that Clayton Kelly or anyone else had inflicted (willfully or otherwise) any physical pain or injury upon Rose Cochran.  The subject video actually provided evidence to the contrary, indicating that Rose Cochran had not suffered any physical pain or injury. The Incident Report acknowledged that in the photograph in the video, Rose Cochran "appears to be asleep" - apparently resting peacefully in her bed at St. Catherine's Village. Ex. A. It does not even indicate that she knew her photo was taken. There was no evidence at the time of the report (or afterwards) that Mrs. Cochran suffered any physical impact from the photo being taken. Furthermore, as to intent, the Incident Report narrative acknowledged that the photograph of Rose Cochran was taken for purposes of political speech, not with an intent to injure or harm Rose Cochran—it was used in "a YouTube video critical of Senator Thad Cochran." Ex. A.

Because there was no evidence of willful infliction of physical pain or injury there could be no reasonable basis for Don Clark to believe that Clayton Kelly, or anyone associated with the photograph, committed the crime defined by § 43-47-19(3). As such, he had no probable cause for making the complaint, or for pressuring the Madison Police to take any action relying on his complaint. The Butler Snow Defendants never had any evidence that Clayton Kelly or anyone connected to the photographing of Rose Cochran had willfully inflicted physical pain or injury upon her.  All they had was a video showing a photograph of Rose Cochran sleeping in her bed. As experts in Mississippi law, the Butler Snow Defendants well knew that they lacked probable cause to author the Incident Report or to counsel, assist, or act in concert with other state actor

defendants in issuing search warrants, arrest warrants, or otherwise seeking to criminally prosecute individuals on the basis of the statute. They knew that no crime had been committed.

### C.  *The affidavits and warrants also lacked probable cause.*

On May 16, 2014--the day after Don Clark laid out his plan with the Madison police-- Madison police officer Vicki Currie incorporated the information she received from Don Clark into two sworn statements: a "General Affidavit" and an "Underlying Facts And Circumstances" affidavit.[4]  Using these affidavits, Officer Currie obtained a felony arrest warrant issued the same date by City of Madison municipal court judge Dale Danks. The General Affidavit and the felony arrest warrant charged Clayton Kelly with violation of Mississippi Code § 43-47-19(3), but nowhere in either sworn statement is there an allegation that Clayton Kelly inflicted physical pain or injury upon Rose Cochran.

Moreover, nowhere in either affidavit is there even an allegation of any fact tending to show an infliction of physical pain or injury upon Rose Cochran, or even of any intent to inflict physical pain or injury upon her. A critical element of the criminal statute on which the affidavits (and subsequent warrants) were based is not even hinted at.  As such, the affidavits and warrants issued based upon them were all glaringly and fatally defective. The warrant issued that was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012)(quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).

The same day (May 16, 2014), Madison police officer Chuck Harrison also executed and used an Underlying Facts And Circumstances affidavit--this one to obtain a search warrant for

---

[4] Officer Vicki Currie's 5/16/2014 affidavits along with the 5/16/2014 felony arrest warrant for Clayton Thomas Kelly (Madison Municipal Court Warrant No. 10411) are attached to the Response as Exhibit "B."

Clayton Kelly's property.[5] The search warrant states that the things to be searched for were "IN VIOLATION OF MS CODE OF 1972, ANNOTATED SECTION 43-47-19(3). . . ." This affidavit and warrant therefore cite back to the very same statute that requires willful infliction of physical pain or injury. Officer Harrison's 5/16/2014 Underlying Facts and Circumstances affidavit contains a verbatim copy of the factual allegations part of Officer Vicki Currie's 5/16/2014 Underlying Facts and Circumstances affidavit. And like Currie's affidavits, Officer Harrison's 5/16/2014 affidavit contains no allegation of any facts tending to show that Clayton Kelly inflicted or intended to inflict any physical pain or injury upon Rose Cochran. Thus, the May 16, 2014 search warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. And, like everything else thus far, it traces back to the Butler Snow Defendants' legal theories.

Later on May 16, 2014, Officers Currie and Harrison, acting on the defective arrest and search warrants, effected the arrest of Clayton Kelly and searched Kelly's property. Both the arrest and the search were without probable cause.

### D.   The Butler Snow Defendants knew that probable cause was lacking for charging anyone with violation of Mississippi Code § 97-29-63.

After a police station interview and a search of Kelly's computer, Officer Currie charged Clayton Kelly with the crime of violating Mississippi Code § 97-29-63. Although this was not the statute cited in the earlier Incident Report, affidavits, or warrants, it **was** one of the "crimes" that Don Clark had discussed with Madison officials as available to use in charging their political targets with criminal wrongdoing. *See* Amended Complaint ¶ 181. The documentation for the new charge was prepared on Monday, May 19, 2014, when Officer Currie executed another Underlying Facts and Circumstances affidavit and a General Affidavit to obtain <u>felony</u> arrest

---

[5] Officer Chuck Harrison's 5/16/2014 affidavit along with the 5/16/2014 Search Warrant signed by Madison municipal court judge Dale Danks are attached to the Response as Exhibit "C."

warrant against Clayton Kelly charging him with a violation of Mississippi Code § 97-29-63.

Madison municipal court judge Dale Danks issued the warrant that same date.[6]

Miss. Code § 97-29-63 defines as crimes the following:

> (1) (a) It is a felony for any person <u>with lewd, licentious or indecent intent</u> to photograph, film, videotape, record or otherwise reproduces the image of another person without the permission of the other person when the other person is located in a place where a person would intend to be <u>in a state of undress</u> and have a reasonable expectation of privacy, including, but not limited to, private dwellings or any facility, public or private, used as a restroom, bathroom, shower room, tanning booth, locker room, fitting room, dressing room or bedroom shall be guilty of a felony.
>
> (b) It is a felony for any person to invade the privacy of another person and <u>with lewd, licentious or indecent intent</u> to photograph, film, videotape, record or otherwise reproduce the image of another, identifiable person <u>under or through the clothing being worn by that other person for the purpose of viewing the body of, or the undergarments worn by, the other person</u> without the consent or knowledge of the other person and under circumstances in which the other person has a reasonable expectation that the other person's body or undergarments would not be viewed or would not be the subject of a reproduced image.

(Emphasis added.)  Lewd, licentious or indecent intent to take a photograph of a person in a state of undress is a central element of the crime defined by § 97-29-63(1)(a)[7]. Similarly, central elements of the crime defined by § 97-29-63(1)(b) are lewd, licentious or indecent intent to take a photograph under or through clothing being worn by a person for purposes of viewing the body of or the undergarments worn by such person. Nowhere do Officer Currie's 5/19/2014 affidavits

---

[6] A copy of Officer Currie's 5/19/2014 affidavits and the 5/19/2014 felony warrant for the arrest of Clayton Thomas Kelly (Madison Municipal Court Warrant No. 10435) are attached to the Response as Exhibit "D."

[7] The Oxford English Dictionary defines "lewd" as: "crude and offensive in a sexual way." It defines "licentious" as "promiscuous and unprincipled in sexual matters." It defines "indecent" as "not conforming with generally accepted standards of behavior, especially in relation to sexual matters." https://en.oxforddictionaries.com (last visited Sept. 13, 2017). The statute, then, is concerned with photographs of a sexual nature, as is made more certainly clear when coupled with its inclusion of the additional requirements of the subject being in a state of undress or the photograph being taken under or through clothing for the purpose of viewing the body or undergarments.

allege any fact that would tend to indicate either intent or conduct of the sort contemplated by the statute. Rather tellingly, Officer Currie's Underlying Facts and Circumstances affidavit states: "John Bert was positively corresponding with Clayton Kelly and conspiring with Clayton Kelly related to plans and intentions of <u>posting a photo or video of Rose Cochran in order to enhance a Political Video</u>." (Emphasis added.)

When Officer Currie executed these affidavits, she had seen the "Political Video" prepared by Clayton Kelly. She knew--<u>from Don Clark</u>--that Kelly's intent was to make a video "critical of Senator Thad Cochran" and to show that Rose Cochran was not Kay Webber. The photograph of Rose Cochran was intended to be contrasted with one of Kay Webber to show that they were not the same woman, thus exposing Thad Cochran in an extra-marital affair. It certainly was not taken for any purpose related to the sort of sexual gratification contemplated by the Mississippi statute cited. The Defendants well-knew the intent and purpose that Clayton Kelly (and the others involved and ultimately charged) had in obtaining and taking a photograph of Rose Cochran--it was pure political speech. There was never any indication that Clayton Kelly or anyone else wanted a photograph of Rose Cochran in a state of undress. Indeed, the photograph that was taken by Clayton Kelly did not show Rose Cochran in a state of undress[8]. These facts, all of which are referenced in the Amended Complaint, support the Plaintiffs' claim that Officer Currie's 5/19/2014 affidavits charging Clayton Kelly with a crime as defined by § 97-29-63 are so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. These affidavits were based on her conversation with Don Clark and the Butler Snow Defendants' theories. As such, they provide a basis for Plaintiffs' claims against the Butler Snow Defendants.

---

[8] The video that the Defendants had seen included photographs of Rose Cochran's room number and nameplate; these photographs do not include any part of her person and therefore could not even conceivably fall within the statute's purview.

**_E. The arrests of alleged co-conspirators, including Mark Mayfield, were based on the underlying Incident Report, affidavits and arrest warrants for Clayton Kelly, and legal theories advanced by the Butler Snow Defendants that lacked probable cause._**

That same day (May 19, 2014), Officer Currie executed an Underlying Facts And Circumstances affidavit and a General Affidavit to charge John Mary with the crime of conspiring (under Mississippi Code § 97-1-1) with Clayton Kelly to commit the crime defined by § 97-29-63. The factual allegation section of this Underlying Facts and Circumstances affidavit was a underlined verbatim copy of her 5/19/2014 affidavit charging Clayton Kelly. It, therefore, lacked probable cause. On the basis of these affidavits, Officer Currie obtained a felony arrest warrant for John Mary from City of Madison municipal court judge Dale Danks.[9]  The affidavits and the arrest warrant for John Mary have all the same defects as Officer Currie's 5/19/2014 affidavits and the arrest warrant for Clayton Kelly based thereon. And for the same reasons, they lack probable cause.

In tandem with Officer Currie's work on the arrest warrant for John Mary, Officer Chuck Harrison executed affidavits in support of a search warrant for John Mary's property.  A search warrant based thereon was issued the same date by municipal court judge Dale Danks.[10]  Officer Harrison's Underlying Facts And Circumstances affidavit presented a verbatim copy of the factual allegations from Officer Currie's 5/19/2014 affidavits. Accordingly, Officer Harrison's affidavits failed to allege any factual support for reasonably believing that a crime defined by § 97-29-63 had been committed. The affidavit and search warrant state that the search sought evidence of a violation of § 43-47-19(3). As discussed above, there was no evidence that anyone inflicted physical pain or injury upon Rose Cochran, and Officer Harrison's 5/19/2014 affidavits

---

[9] A copy of Officer Currie's 5/19/2014 affidavits and the 5/19/2014 felony warrant for the arrest of John Mary (Madison Municipal Court Warrant No. 10433) are attached to the Response as Exhibit "E."

[10] A copy of Officer Harrison's 5/19/2014 affidavits and the 5/19/2014 search warrant for John Mary's property are attached to the Response as Exhibit "F."

provide no allegation or evidence that anyone willfully inflicted physical pain or injury upon Rose Cochran, or that they intended to.

According to the Incident Report, the Madison police effectuated the arrest of John Mary, searched his property, and interviewed him at the Hattiesburg police station on Tuesday, May 20, 2014. Thus was John Mary arrested and his property searched in violation of his Constitutional rights. These warrants, like all the others based on the Don Clark Incident Report and the Butler Snow Defendants' legal theories, were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

On Wednesday, May 21, 2014, the Madison police officers replicated the process, this time with their aim on Richard Sager. Officer Currie executed affidavits for two arrest warrants for Richard Sager. These affidavits display all the same defects as Officer Currie's earlier affidavits, as described above. The affidavits and the warrants therefore lacked probable cause. Yet, Madison municipal court judge Dale Danks again issued the requested warrants.[11]   The same day, Madison police officer Mike Brown executed affidavits in support of a search warrant for Richard Sager's property. As in all the earlier requests, Madison municipal court judge Dale Danks issued the requested search warrant, notwithstanding the fact that the affidavits obviously lacked any allegations supporting crucial elements of the crime charged.[12]

The factual recitation in both Officer Brown's Underlying Facts and Circumstances affidavit and Officer Currie's Underlying Facts and Circumstances affidavit (they are verbatim identical in all respects material here) presented evidence that had been obtained from the Madison police interview of John Mary. Interestingly, that evidence, even the officers' rendition,

---

[11] A copy of Officer Currie's 5/21/2014 affidavits and the 5/21/2014 felony warrants for the arrest of Richard Sager (Madison Municipal Court Warrants Nos. 10438 and 10439) are attached to the Response as Exhibit "G."

[12] A copy of Officer Brown's 5/21/2014 affidavits and the 5/21/2014 search warrant for Richard Sager's property are attached to the Response as Exhibit "H."

provides more evidentiary basis showing that (1) there was no infliction of physical pain upon Rose Cochran, (2) there was no lewd, licentious, or indecent intent to photograph Rose Cochran in a state of undress, and (3) that the intent communicated among John Mary and those working with him was to engage in protected political speech—to obtain a photograph of Rose Cochran that could be used to compare her to Kay Webber, with the goal of publicly exposing "evidence of an alleged ongoing affair between Sen. Cochran and his Asst. Kay Weber (sic) . . . ."  See Mike Brown's 5/21/2014 Underlying Facts and Circumstance affidavit.

On Thursday of that same week, May 22, 2014, the Madison police turned their sights to Mark Mayfield, their high-profile political target. Even though other individuals, specifically including Richard Wilbourn, had been identified as having talked with Clayton Kelly about getting into St. Catherine's Village to obtain a photograph of Rose Cochran, they were not arrested.  <u>In her pursuit of Mark Mayfield, Officer Vicki Currie did not execute an Underlying Facts and Circumstances affidavit.</u>[13]  She executed only a "bare-bones" General Affidavit.[14]  Her General Affidavit alleged in conclusory terms that Mark Mayfield violated Mississippi Code § 97-1-1 by conspiring with John Mary and Clayton Kelly to commit the crime set forth in Mississippi Code § 97-29-63. Despite it being well-settled law that the Butler Snow Defendants and Officer Currie knew or should have known that in order for there to be a conspiracy, there has to be an underlying crime, here again, there were <u>no</u> facts alleged to indicate that anyone, with lewd, licentious or indecent intent, photographed (or even tried to photograph) Rose Cochran in a state of undress. There were no facts alleged that any person, with lewd, licentious or indecent intent photographed (or even tried to photograph) Rose Cochran "under or through the clothing being worn by" Rose Cochran "for the purpose of viewing the body of, or the

---

[13] None was produced to Plaintiffs by the City of Madison Police Department.

undergarments worn by" Rose Cochran. Therefore, the General Affidavit for Mark Mayfield, like all the others, is so lacking in indicia of probable cause that it renders any purported belief in the existence of probable cause entirely unreasonable. Nevertheless, the City of Madison's municipal court judge Dale Danks signed the arrest warrant.

As with the earlier arrests, Officer Chuck Harrison the same date executed affidavits in support of a search warrant. For Mark Mayfield, Officer Harrison requested two search warrants: one for Mayfield's residence, and another for Mayfield's law office.  Officer Harrison executed an Underlying Facts and Circumstances affidavit for each. These affidavits both claimed to be in search of evidence of a violation of Mississippi Code § 43-47-19(3).  Yet again, neither affidavit included any allegation of facts tending to show that the central elements of the crime defined by that statute had been committed by anyone (i.e., no allegation that anyone had inflicted physical pain or injury upon Rose Cochran).  Of course, Dale Danks signed both search warrants.[15]

The arrest of Mark Mayfield was the culmination of the Defendants' string of unlawful arrests and searches intentionally foisted on the political targets identified by the Butler Snow Defendants' clients (Thad Cochran, Mayor Mary-Hawkins Butler, and/or the City of Madison) and based on the legal theories the Butler Snow Defendants advanced and assisted in pursuing. From the first arrest to the last, and from the first search to the last, they lacked probable cause, and the Amended Complaint sets forth ample factual basis that Defendants lacked probable cause that any crime under Mississippi law had been committed.

---

[14] A copy of Officer Currie's 5/22/2014 General Affidavit and the 5/22/2014 felony warrant for the arrest of Mark Mayfield (Madison Municipal Court Warrant No. 10442) are attached to the Response as Exhibit "I."

[15] A copy of Officer Harrison's 5/22/2014 affidavits and the 5/22/2014 search warrants for Mark Mayfield's properties are attached to the Response as Exhibit "J."

**IV.   The Butler Snow Defendants Lacked the Probable Cause Required to Initiate Criminal Proceedings.**

Probable cause is a Constitutional prerequisite for arrests and searches. An arrest warrant or search warrant lacking probable cause violates the Fourth Amendment's prohibition of unreasonable searches and seizures. *Kentucky v. King*, 563 U.S. 452, 459 (2011). In conformity with the Fourth Amendment, a warrant can be issued only upon probable cause supported by an affidavit alleging sufficient facts to show probable cause exists. *Steele v. United States*, 267 U.S. 498, 501 (1925).  An officer whose request for a warrant causes an unconstitutional arrest is not protected by qualified immunity, even where the warrant was issued by a neutral magistrate, if "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley v.  Briggs*, 475 U.S. 335, 341 (1986).  Under this rule, the "shield of immunity" otherwise conferred by the warrant will be lost where the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012)(quoting *United States v. Leon*, 468 U.S. 897, 923 (1984))(internal quotation marks omitted).  See *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988)(this type of affidavit is a "bare bones" affidavit).  "Bare bones" affidavits lack the facts and circumstances from which a magistrate can independently determine probable cause.  *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)(citing *Nathanson v. United States*, 290 U.S. 41(1933)).

Probable cause is likewise required by Mississippi Constitution's Article 3, Section 23. When a government official initiates a criminal proceeding without probable cause, constitutional rights are violated. *See, e.g.*, *Jones v. State*, 798 So.2d 1241 (Miss. 2001); *Pollard v. State*, 233 So.2d 792 (Miss. 1970); *Terry v. State*, 173 So.2d 889 (Miss. 1965). When a private

person initiates a criminal proceeding without probable cause, in addition to the constitutional violations perpetrated by the government official who carries forward the criminal proceeding, the private person who initiated the proceeding may be held liable for malicious prosecution. See, e.g., *Strong v. Nicholson*, 580 So.2d 1288 (Miss. 1991); *Lochridge v. Pioneer Health Services of Monroe County, Inc.*, 86 So.3d 942 (Miss. App. 2012). At the federal level, when a private person conspires or colludes with a government official to arrest or search a person without probable cause, and thereby violate Fourth Amendment rights, the private person so colluding will be liable for damages under 42 U.S.C. § 1983.

> "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents . . . ."

*Sparks v. Duval County Ranch Co.*, 601 F.2d 976, 982 (5th Cir. 1979)(quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)(quoting *U.S. v. Price*, 383 U.S. 787, 794 (1966)(citation omitted)).

In evaluating whether probable cause existed in a particular case, Mississippi courts look to the facts reasonably available to the accuser when the prosecution was initiated.  *Strong v. Nicholson*, 580 So.2d at 1294; *Lochridge*, 86 So.3d at 948.  Probable cause requires proof of (1) a subjective element— an honest belief in the guilt of the person accused, and (2) an objective element— reasonable grounds for such belief."  *McClinton v. Delta Pride Catfish, Inc.*, 792 So.2d 968, 973 (Miss. 2001); *Lochridge*, 86 So.3d at 948.   In both elements, there is a fact component and a law component. The law defines what constitutes a crime; and the facts of a specific case determine whether statutorily defined prohibited conduct has been committed. "[L]ack of probable cause on any one element of the crime charged and which forms the basis of the criminal proceeding is sufficient to prove that the private person who initiated the proceeding

lacked probable cause." *C & C Trucking Co. v. Smith*, 612 So.2d 1092, 1100 (Miss.1992); *Lochridge*, 86 So.3d at 948.  Accord *George v. W.W.D. Automobiles, Inc.*, 937 So.2d 958 (Miss. App. 2006). Where a reasonable person would have investigated further before instituting a criminal proceeding, the failure to do so is an absence of probable cause. *Van v. Grand Casinos of Mississippi, Inc.*, 767 So.2d 1014, 1020 (Miss. 2000); *Junior Food Stores, Inc. v. Rice*, 671 So.2d 67, 74 (Miss. 1996)(citing *Benjamin v. Hooper Electric Supply Co., Inc.*, 568 So.2d 1182, 1191 (Miss. 1990)). To determine whether a reasonable person would have investigated further before instituting criminal proceedings against an accused, the court need only look at the facts available to the accuser at the time he initiated the criminal proceeding. *Grand Casinos*, 767 So.2d at 1020.

Several Mississippi cases address the type of practice engaged in by the Butler Snow Defendants in the instant case.  For example, in *Benjamin v. Hooper Electric Supply Co., Inc.*, 568 So.2d 1182 (Miss. 1990), a private person (Cash - who worked for Hooper Electric) carried a complaint to the police accusing Benjamin of stealing an amplifier. Based on Cash's complaint, Gulfport police arrested and charged Benjamin with the crime of receiving stolen property. Cash had no evidence that the amplifier was stolen, but jumped to that accusation from the fact that Hooper Electric was the only dealer in Gulfport authorized to sell that brand of amplifier, and knowing that Benjamin did not purchase the amplifier from Hooper Electric. The Supreme Court, after observing the multiple other cities in the vicinity where Benjamin could have purchased the amplifier, held that "where a reasonable person would investigate further before instigating a proceeding, the failure to do so is an absence of probable cause. *Id*. at 1191.

In *Strong v. Nicholson*, 580 So.2d 1288 (Miss. 1991), Strong purchased a shrimp boat from Nicholson on an installment basis. The purchase and security agreement authorized Nicholson to repossess if Strong failed to make the agreed payments. When Strong did not make

payments, Nicholson repossessed the boat. Strong, claiming that some of his personal property was still on the boat, went to the Hancock County sheriff's department and made out charges against Nicholson for grand larceny. Sheriff's deputies arrested Nicholson, took her to jail, booked her, and placed her in a jail cell until she was able to post bond. Upon review of these facts, the Supreme Court stated: "Probable cause . . . is a function of the offense charged." *Id*. at 1294.  "Proof of lack of probable cause <u>on any one element</u> of grand larceny is sufficient" to prove the lack of probable cause requirement. *Id*. at 1295 (emphasis added). The Court <u>looked to the statutory definition</u> of grand larceny <u>as the starting point to compare the elements of the crime to the facts possessed by Strong whenever he initiated criminal proceedings</u> against Nicholson.  *Id*. at 1295. The result was that, "in this light, a lack of probable cause is apparent." *Id.*

In *C & C Trucking Co. v. Smith*, 612 So.2d 1092 (Miss. 1992), Smith was a tractor-trailer owner under contract to and in the process of driving a load of meat to its contracted destination when his rig broke down. Smith contacted C & C informing them that he was not going to be able to deliver the load. A representative of C & C demanded that Smith get the load delivered. Smith insisted that he could not. So, another C & C representative went to the sheriff and lodged a criminal complaint, charging Smith with embezzlement. The Supreme Court observed that neither C & C representative had facts from which it could be reasonably inferred that Smith had converted the load to his own use. These facts, the Court noted, were "essential to the charge of embezzlement." *Id*. at 1101.  The Court held that lack of probable cause on this <u>one element</u> of embezzlement was sufficient to establish the lack of probable cause for the prosecution.  *Id*.

*Lochridge v. Pioneer Health Services of Monroe County, Inc.*, 86 So.3d 942 (Miss. App. 2012), is a more recent example. Linda Lochridge worked as a registered nurse at one of Pioneer's facilities. When a Pioneer director informed her that her position had been eliminated

in a company restructuring, she surrendered her keys. After going out to eat with some of her coworkers, Lochridge returned to the facility, where she was permitted by on-duty nurses to enter the building and the office to retrieve her personal belongings. Upon learning that Lochridge had returned to the facility and taken things, the Pioneer director, without any other evidence, contacted both the Aberdeen Police Department and the Monroe County Sheriff's Department, stating that Lochridge had entered the facility without permission and stolen items that belonged to Pioneer. Based on the complaint lodged by the Pioneer director, a city police officer signed an affidavit and obtained a warrant charging Lochridge with burglary. A grand jury indictment flowed therefrom, which was eventually dismissed with prejudice.  The Court of Appeals reversed the trial court's grant of summary judgment in Pioneer's favor, because:

> Considering the evidence in the light most favorable to Lochridge, jurors could reasonably find Pioneer lacked an honest belief or reasonable grounds to believe Lochridge committed any element of burglary.

*Id*. at 949 (emphasis added).

The Butler Snow Defendants argue, relying on *Downtown Grill, Inc. v. Connell*, 721 So. 2d 1113 (Miss. 1998), that a citizen has a privilege under Mississippi law to start the criminal law into action by complaints to the proper officials so long as the citizen acts in good faith.  The legal principle is sound, but it does not apply to Butler Snow, because Butler Snow does not meet the requirements of good faith.  The "good faith" required by Mississippi law is (a) an honest belief in the guilt of the person accused, and (2) reasonable grounds for such belief.  Butler Snow had neither when they pressured Madison's Mayor and Madison's police chief to initiate criminal proceedings against their political enemies.  The Butler Snow Defendants are legal experts knowledgeable of Mississippi law.  They knew that they had no evidence that Clayton Kelly's conduct (or anyone working with him) had engaged in conduct prohibited by

Mississippi's criminal statutes . . . In contrast, the Downtown Grill employee who talked to the police was merely a witness who provided an identification from a line-up at the request of the investigating (and later charging) police officer.  Neither the Downtown Grill nor its employee initiated charges, filed a criminal complaint or did anything to urge, encourage, or pressure the police to prosecute anyone.  Given these facts, the Supreme Court held that the good faith of the Downtown Grill shielded it from malicious prosecution.  Butler Snow's conduct is far removed from the fact pattern ruled upon in the Downtown Grill case.  The shield described in the *Downtown Grill* case does not apply to nor help the Butler Snow Defendants.

Rather, the Mississippi caselaw cited *supra* and the facts alleged in the Amended Complaint, viewed in the light most favorable to the Plaintiffs, would support, as in *Lochridge*, a jury reasonably finding that the Butler Snow Defendants lacked an honest belief or reasonable grounds to believe that Clayton Kelly's taking of the Rose Cochran photographs constituted commission of the elements of Miss. Code § 97-29-63, Miss. Code § 43-47-19(3), or Miss Code § 97-1-1. *Lochridge,* 86 So.3d at 949. At a minimum, under *Strong v. Nicholson*, the facts alleged give rise to supporting a claim that they lacked at least one element of the statutory definition of the alleged "crimes" underlying the conspiracy charge for which Mark Mayfield was arrested. As such, they lacked the required probable cause, and the Butler Snow Defendants' Motion to Dismiss should be denied. 580 So.2d at 1295.

## CONCLUSION

The Amended Complaint, when the facts alleged therein are accepted as true and viewed in the light most favorable to Plaintiffs, states a claim against Butler Snow LLP and Donald Clark, Jr. The Butler Snow Defendants knew that the Rose Cochran Incident and subsequent video did not constitute a crime. They lacked probable cause to file an Incident Report. They lacked probable cause to suggest criminal prosecution of Clayton Kelly, John Mary, Richard

Sager, and, ultimately, Mark Mayfield. The statutes cited in the Incident Report and every affidavit and warrant that relied upon it lacked probable cause for critical elements of the criminal statutes. The Amended Complaint along with documents referenced therein that are properly considered by the Court for purposes of a 12(b)(6) motion, therefore, set forth detailed factual allegations that state a claim for relief against the Butler Snow Defendants. The Butler Snow Defendants' Motion to Dismiss should be denied.

**WHEREFORE, PREMISES CONSIDERED**, Robin Mayfield, Owen Mayfield, William Mayfield, and the Estate of Mark Stevens Mayfield, Plaintiffs herein, respectfully request that the Court DENY Defendants Butler Snow LLP and Donald Clark, Jr.'s Motion to Dismiss.

Respectfully submitted, this, the 15th day of September, 2017.

*/s/Dorsey R. Carson, Jr.*
Dorsey R. Carson, Jr., Esq. (MSB #10493)
Julie C. Skipper, Esq. (MSB #101591)
Steve C. Thornton, Esq. (MSB #9216)
Attorneys for Plaintiffs
*Robin Mayfield, Owen Mayfield, William Mayfield, and The Estate of Mark Stevens Mayfield*

**OF COUNSEL:**

CARSON LAW GROUP, PLLC
Capital Towers, Suite 1336
Jackson, MS 39201
Telephone: 601.351.9831
Facsimile: 601.510.9056
Email: dcarson@thecarsonlawgroup.com
          jskipper@thecarsonlawgroup.com

-and-

THORNTON LAW FIRM
P.O. Box 16465
Jackson, MS 39236
Telephone: 601.982.0313

Facsimile: 601.957.6554
Email: mail@lawlives.com

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that the foregoing has been electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

This the 15th day of September, 2017.

/s/ Dorsey R. Carson, Jr.
OF COUNSEL