## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

ROBIN MAYFIELD, et al.                                    **PLAINTIFFS**

**V.**                                    **CIVIL ACTION NO. 3:17cv514-CWR-FKB**

BUTLER SNOW LLP, et al.                                    **DEFENDANTS**

## RESPONSE OF BUTLER SNOW DEFENDANTS TO
## PLAINTIFFS' MOTION TO NOTICE DEPOSITION OF THAD COCHRAN

The Butler Snow Defendants submit this response to the Plaintiffs' Motion to Notice

Deposition of Thad Cochran.

### THE INTERESTS OF THE BUTLER SNOW DEFENDANTS

The interests of the Butler Snow Defendants are different from those of Senator Cochran.

The Butler Snow Defendants seek to avoid any unnecessary and burdensome deviation from the

limitations on early deposition discovery imposed by the Court through the Case Management

Order. *See* ECF Doc. 67 ¶ 6.F.5 ("In Phase I, only written discovery is permitted, and no

depositions may be noticed or taken . . . except by order of this Court."). This case may be

resolved through the pending Rule 12 motions and without the expense of dealing with a

deposition that we anticipate will raise numerous issues related to relevance, scope, and

privilege. Weighed against that reality, Plaintiffs have not shown good cause for deviating from

the Case Management Order. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only

for good cause and with the judge's consent.").

**PLAINTIFFS HAVE NOT SHOWN GOOD CAUSE FOR THIS DEPOSITION**

The Plaintiffs ostensibly seek to take this early deposition in order to "preserve" critical evidence should Senator Cochran become unavailable. Indeed, the Plaintiffs' March 1, 2018 Reply stated as follows:

> Plaintiffs seek to preserve for trial evidence that otherwise has a high likelihood of disappearing or otherwise unavailable for trial.[1]

**Thus, we assume that the Plaintiffs agree that, if Senator Cochran is to be deposed at this time, he should be deposed <u>only</u> as to that evidence that must be preserved for trial because it is critical or not readily obtainable from other sources.**

The Plaintiffs' Motion wholly fails to identify evidence that should be preserved for trial. If the information the Plaintiffs seek can be secured from other witnesses or is not in dispute, it does not require preservation and there is no reason to burden a sitting United States Senator with explaining those matters in a deposition – particularly since the Plaintiffs contend the Senator is *already* "in declining health."

Since the Plaintiffs have not identified any items of evidence that need to be preserved, there is no reason to put all of the parties in this case to the expense of deposition proceedings that will almost certainly involve conflicts over privilege and related issues. Unless the Plaintiffs can identify some particular evidence that truly requires preservation, this deposition should not be taken at this time.

In support of this argument, we provide at pages 5-11 below a listing and analysis of each of the areas identified by the Plaintiffs in their Motion that they intend to inquire about in a deposition. To summarize, the analysis below demonstrates that Plaintiffs (a) seek to take a very

---

[1]     ECF Doc. 72 at 1.

wide-ranging deposition and (b) have not articulated why any of the areas of inquiry will include essential evidence that requires preservation.

Many of the areas identified by the Plaintiffs relate to general political activities. These activities are largely irrelevant, or at best of only tangential importance in this case, and there are many sources for the information. For example, there is no reason to depose Senator Cochran on collateral security provided for bank loans by Governor Haley Barbour – since that information has no bearing on whether there was a lawful basis to report the invasion of Rose Cochran's private living quarters to the Madison authorities, and no bearing on whether the Madison authorities were then justified in conducting an investigation that resulted in multiple arrests, including the arrest of Mark Mayfield. Information about collateral security for bank loans is not only irrelevant to this case, it is also available from more direct sources, including Governor Barbour and the bank in question. Nor is it necessary to depose Senator Cochran on how much a PAC raised in contributions, since that is available from the PAC and many other sources. And of course Butler Snow and Don Clark are available to discuss their own political contributions. Senator Cochran's testimony is unnecessary to preserve evidence on all of those matters and the many others of a similar ilk.

Other matters may be relevant but they are straightforward and readily provable from other sources. For example, Butler Snow has represented in pleadings filed in this Court that it represented Senator Cochran's family in the matter related to the invasion of Rose Cochran's private living quarters. It also a matter of public record that the firm represented Senator Cochran's campaign in separate matters involving campaign issues. Butler Snow can and will testify at the appropriate time about its communications with the City of Madison authorities, and the authorities can testify also. Senator Cochran was not present during any such

communication, and there is no need to take an early deposition of Senator Cochran to preserve evidence related to the communications with the authorities.

Set out at pages 5-11 below is a detailed outline of the evidence which the Plaintiffs' Motion seeks to preserve. Suffice it to say that Plaintiffs have not identified any evidence that requires preservation. If Plaintiffs really needed anything in particular from Senator Cochran, they would have identified it – and they did not do so.

## THE DEPOSITION WOULD BE VERY BURDENSOME

In considering whether the Plaintiffs have shown a sufficiently good cause for taking this deposition, the Court should consider the burdens that would be imposed on the parties and the Court by such a deposition.

The listing of the topics identified by the Plaintiffs in the Motion shows that the Plaintiffs intend to engage in a wide-ranging inquiry of Senator Cochran about matters which were dealt with on his behalf by counsel. Thus, containing the scope of the deposition and protecting against forays into plainly irrelevant areas will be burdensome to the parties, and perhaps to the Court.

Moreover, Butler Snow represented Senator Cochran and his family in the matter relating to the invasion of Rose Cochran's private living quarters. Communications between the firm and the Senator's family related to that matter are protected by the attorney-client privilege. We anticipate that a large part of the intended deposition will inquire as to matters which involve privilege issues – and the resolution of those matters would also be burdensome to the parties and to the Court

Thus, we anticipate that, if there were a deposition, it would be extremely burdensome in terms of the resources to be expended by the parties and by the Court. Accordingly, we

respectfully suggest that in light of the inability of the Plaintiffs to identify any evidence that actually would be preserved by such a deposition, the deposition should not be taken.

## ANALYSIS OF TOPICS LISTED IN PLAINTIFFS' MOTION

The areas of inquiry set out in the Plaintiffs' Motion are general and wide-ranging. They do not identify any evidence that it is necessary to preserve. Below we quote the descriptions in the Plaintiffs' Motion which explain the areas as to which they intend to depose Senator Cochran. We italicize the Plaintiffs' quoted words (with footnotes omitted), then follow each quotation with our explanation as to why there is no need to depose Senator Cochran with respect to that subject for the purpose of preserving any evidence:

> *The Mayfields' Amended Complaint sets forth in detail allegations concerning Senator Cochran's campaign, campaign financing and fundraising, campaign staffers, political allies, the law firm and attorneys who represent him and his campaign (Defendants Butler Snow LLP and Donald Clark, Jr.), and Defendant Mary Hawkins-Butler. Thad Cochran's knowledge about this information is important discoverable information.[2]*

The foregoing is merely a boilerplate description of the thirty-plus page complaint which contains myriad allegations – and suggests that Senator Cochran should be deposed on all of those allegations. If read seriously, such a statement of scope can only be viewed as abusive.

The facts that relate to Senator Cochran's "campaign financing and fundraising, and political allies" can be obtained from numerous sources – such as his campaign staff – and thus do not require an early deposition from Senator Cochran. The identity of the attorneys who have represented him and his campaign are known, and they can be deposed if the information is relevant. The Motion identifies no information that only the Senator could provide about Mayor

---

[2]    ECF Doc. 68 at 2.

Mary Hawkins-Butler, and indeed the Mayor has already been deposed by the Plaintiffs in state court "bill of discovery" proceedings.

If there are any specific inquiries that can be addressed only by Senator Cochran himself on these matters, they have not been identified by the Plaintiffs' Motion.

> For instance, the Amended Complaint alleges, among other things, the following facts about Senator Cochran, his campaign, and individuals and organizations acting on his and his campaign's behalf. Thad Cochran has knowledge and information about these matters:
>
> That Defendant Don Clark, "representing Senator Thad Cochran, contacted the Madison Police Department on May 15, 2014, about a possible case of exploitation of a vulnerable adult." [Dkt. 6], ¶ 90 (emphasis added).[3]

Defendant Don Clark is clearly capable of describing his contacts with the Madison Police Department. Senator Cochran is not alleged to have been present or to have participated during those contacts and thus there is no need to preserve any evidence from Senator Cochran as to those issues.

> That Defendant Butler Snow LLP ("Butler Snow") and Defendant Don Clark ("Clark") represented Thad Cochran personally and also served as counsel for his federal election campaign (the "Thad Cochran Campaign"). Id., ¶ 123.[4]

Don Clark and numerous others can testify that Butler Snow represented Thad Cochran and his family in one matter and also represented the Cochran Campaign in a separate matter.

---

[3]    ECF Doc. 68 at 3.
[4]    Id. at 3.

There is no basis to support any contention that any testimony of Senator Cochran should be preserved as to this issue.

> *That the "Thad Cochran Campaign was an extension of Senator Cochran, and its "employees, vendors, and attorneys were authorized to act on his behalf." Id., ¶ 124.[5]*

This inquiry seems to be nothing more than a vague and overbroad legal conclusion. Numerous campaign officials could testify as to various employees, vendors and attorneys – and their duties and responsibilities. There is no explanation as to why the testimony of Senator Cochran is necessary to preserve any evidence for trial.

> *That the Thad Cochran Campaign "was run by individuals close to Butler Snow and Clark." Id., ¶ 125.[6]*

The names of the individuals involved in the Thad Cochran Campaign are well known. Testimony on those issues can be obtained from a number of witnesses involved in the campaign itself. The Motion identifies no issue as to which the deposition of Senator Cochran is necessary to preserve evidence on any relevant issue, and thus no reason to require a deposition from Senator Cochran on this issue.

> *That "Butler Snow and Clark provided funding and legal, governmental, and/or political advice to Mississippi Conservatives, a [Haley] Barbour-run Super PAC supporting Thad Cochran." Id., ¶ 126.[7]*

---

[5]   *Id.*
[6]   *Id.*
[7]   *Id.*

To the extent that any of this is relevant, Butler Snow, Don Clark, Governor Barbour, and others could provide testimony on this subject. There is no explanation as to why the testimony of Senator Cochran is necessary to preserve any evidence on this point.

> *That Mississippi Conservatives raised and spent $3.32M in support of Thad Cochran's campaign in 2014. Id., n. 4.*[8]

To the extent that any of this is relevant, information as to fundraising efforts of various groups can obtained from representatives of those groups. There is no explanation as to why a deposition of Senator Thad Cochran is necessary to preserve any evidence related to this issue.

> *That Butler Snow attorney Haley Barbour provided collateral to secure the Thad Cochran Super PAC's bank loan from Trustmark Bank. Id.*[9]

To the extent that any of this is relevant, Governor Barbour and the Bank can provide the information. There is no explanation as to why the testimony of Senator Cochran is necessary to preserve evidence related to this issue.

> *That Butler Snow and Clark directly and indirectly contributed and raised funds for and made extraordinary financial contributions to the Thad Cochran Campaign, Cochran's Political Action Committees, Cochran-related Super PACS, and the Senate Victory Fund. Id., ¶ 131.*[10]

To the extent any of this is relevant, Butler Snow and Don Clark could provide information as to their actions and contributions related to the Thad Cochran Campaign, Cochran's Political Action Committees, Cochran-related Super PACS, and the Senate Victory

---

[8]   *Id.*
[9]   *Id.*
[10]  *Id.*

Fund. Persons associated with those entities could provide testimony as well. There is no explanation as to why the testimony of Senator Cochran is necessary to preserve evidence related to this issue.

> *That Butler Snow and Clark acted on behalf of Senator Cochran and that they were delegated his authority, and that Clark and Butler Snow filed the Rose Cochran Incident Report in their capacity of representing Senator Cochran. Id., ¶ 133-134.*[11]

The Motion to Dismiss and related Memorandum confirm the allegations of the Complaint on this issue by stating that Butler Snow and Don Clark acted on behalf of Senator Cochran when they reported the conduct to the Madison authorities. *See, e.g.*, ECF Doc. 16 at 7 ("The conduct reported by the Butler Snow Defendants on behalf of the Cochran family accurately described the facts about Clayton Kelly's conduct to the Madison authorities."). Since that fact is undisputed, there is no reason to depose Senator Cochran on that issue. Nor is there any suggestion as to what facts need to be preserved by taking the deposition of Senator Cochran.

> *That Trustmark National Bank was the single largest contributor to a Cochran Super PAC, and that it had financed the Washington, D.C., home of Senator Cochran's now-wife, the then Kay Webber, where Senator Cochran also lived. Id., ¶¶ 170-171.*[12]

To the extent that any of this information is relevant, Trustmark, the PAC, and many others, could provide that information. There is no explanation as to why the testimony of Senator Cochran is necessary to preserve evidence related to this issue.

---

[11]     *Id.*
[12]     *Id.*

> *The Amended Complaint also alleges that Thad Cochran and his campaign learned of the video produced by Clayton Kelly that showed Mrs. Rose Cochran. Id., ¶ 173.[13]*

It is undisputed that the Thad Cochran campaign learned of the video shortly after it was published on the Internet by Clayton Kelly. Kirk Sims, a campaign manager, brought the video to the Senator's attention. Kirk Sims can be deposed. There is no explanation as to why the testimony of Senator Cochran is necessary to preserve evidence related to this issue.

> *In an unveiled effort to deflect from its own culpability, Butler Snow repeatedly claims that the filing of the report and all the related actions taken by them were "on behalf of the Cochran family." Dkt. 16, Butler Snow Memo in Support of Motion to Dismiss, p. 4; see also p. 7 ("The conduct reported by the Butler Snow Defendants on behalf of the Cochran family accurately described the facts about Clayton Kelly's conduct to the Madison authorities ..."), pp. 3-4 ("Butler Snow undertook the representation of the Cochran family and, on their behalf, made inquiry with the Mayor of the City of Madison (where St. Catherine's is located) as to the identity of the appropriate person in the police department to whom the incident should be reported. Butler Snow then, on behalf of the Cochran family, participated in a meeting with the Madison police to report the event and provided the police with access to the video that contained the picture of Mrs. Cochran. Id. ¶¶176, 179, 183-84, 187-89.")*
>
> *Whether Butler Snow acted "on behalf of the Cochran family" is a relevant fact. Whether Senator Cochran relied upon advice of counsel is a relevant fact. Thad Cochran's knowledge and information about a response to and use of this video is relevant and important to the factual development of the Plaintiffs' case. As such, Senator Cochran is a fact witness whose testimony is highly relevant and discoverable. Thad Cochran was disclosed as a person with knowledge about the facts of the case in Plaintiffs' Initial Disclosures.[14]*

Again, Kirk Sims informed Senator Cochran of the video after its existence had been discovered, and Senator Cochran authorized Mr. Sims to retain Butler Snow to take such action

---

[13] *Id.* at 4.
[14] *Id.*

as Butler Snow deemed appropriate. Mr. Sims contacted the Butler Snow firm, which agreed to represent Senator Cochran and the Cochran family.

Thus, there is no dispute that Butler Snow acted as counsel on behalf of the Cochran family. Accordingly, this portion of the Motion does not identify any material as to which it is necessary to preserve any testimony from Senator Cochran.

## CONCLUSION

The Court should not grant the Plaintiffs leave to take an unnecessary early deposition for for which the Plaintiffs have not made a showing of good cause.

RESPECTFULLY SUBMITTED THIS 15th day of March, 2018.

/s/ *Alan W. Perry*
Alan W. Perry (MB No. 4127)
Stephen L. Thomas (MB No. 8309)
Simon Bailey (MB No. 103925)
Bradley Arant Boult Cummings LLP
Suite 450, One Jackson Place
188 East Capitol Street
Post Office Box 1789
Jackson, MS 39215-1789
Phone: (601) 948-8000
Facsimile: (601) 948-3000
sthomas@bradley.com
aperry@bradley.com
sbailey@bradley.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Alan W. Perry*
Alan W. Perry

4/531419.1