**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **ROBIN MAYFIELD, et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION NO.: 3:17-CV-514-CWR-** |
| **v.** ) | **FKB** |
| ) | |
| **BUTLER SNOW LLP, et al.** ) | |
| ) | |
| **Defendants.** ) | |

**RESPONSE TO BUTLER SNOW DEFENDANTS' MOTION FOR PROTECTION
FROM SERVING A DETAILED PRIVILEGE LOG**

COME NOW Plaintiffs Robin Mayfield, Owen Mayfield, William Mayfield, and the Estate of Mark Stevens Mayfield, by and through counsel, and file this Response to Butler Snow LLP's and Don Clark's (collectively, the "Butler Snow Defendants") Motion for Protection from Serving a Detailed Privilege Log [Dkt. 86] (the "Motion"), and state as follows:

**INTRODUCTION**

The Butler Snow Defendants filed the instant Motion improperly under the Court's Case Management Order [Dkt. 67] (the "CMO"). For that reason alone, it should be stricken.

Further, the Butler Snow Defendants did not even attempt to comply with Local Uniform Civil Rule 37, which noncompliance itself "will result in a denial of the motion without prejudice to the party, who may refile the motion upon conformity with this rule." L.U.Civ.R. 37(c). More specifically, counsel did not confer "to determine to what extent the issue in question could be resolved without court intervention." L.U.Civ.R. 37(a). There was no conference; nor was a Good Faith Certificate even sent, much less one which obtained the signatures of all counsel. L.U.Civ.R. 37(a). Indeed, the Butler Snow Defendants did not call Plaintiffs' counsel to schedule such a

conference, or confirm that the Plaintiffs' attorneys had even seen the email that was emailed just two days earlier.

Further, having had no conference, the Butler Snow Defendants could not credibly certify that the motion was opposed (or unopposed). Not only was there no conference between counsel, but there was no conference requested or held before the Magistrate Judge as required by the CMO; nor was one requested.

The Butler Snow Defendants inexplicably show a willful disregard for the Case Management Order, the Federal Rules of Civil Procedure, and the Local Uniform Civil Rules; yet simultaneously request that this Court waive Federal Rule 26(a)(5) and Local Rule 37.

Even if the Court does entertain the Motion, it should be denied because:

1. The Motion seeks to improperly shift the burden regarding evaluation of claims of privilege with respect to privilege logs to Plaintiffs;

2. The Motion fails to offer any evidence whatsoever of any undue burden; and

3. The Butler Snow Defendants are in violation of the numerous discovery rules and come with unclean hands, having produced <u>no documents</u> with their Initial Disclosure (other than an insurance policy), and <u>no documents in discovery except eight (8) heavily redacted emails</u> <u>from journalists</u>—all after Mark Mayfield's arrest.

The Butler Snow Defendants provide no basis for their being relieved of their obligations to produce a privilege log for all responsive documents under the rules.

**ARGUMENT**

**A. The Butler Snow Defendants' Motion fails to comply with the Case Management Order.**

The CMO provides that "before a party may serve any discovery motion, counsel must first confer in good faith as required by Fed.R.Civ.P. 37(a)(1)," and that, if that "attorney conference does not resolve the dispute, counsel must contact the chambers of the magistrate judge to request a telephonic conference to discuss the issue as contemplated by Fed.R.Civ.P. 16(b)(3)(v)." "Only if the telephonic conference with the judge is unsuccessful in resolving the issue may a party file a discovery motion." [Dkt. 67], 6.F.4 (emphasis added).

On April 23, 2018, counsel for Butler Snow emailed Plaintiffs' counsel a letter enclosing their draft Motion for Protection from Serving a Detailed Privilege Log. The correspondence, a copy of which is attached as **Ex. A**, purports to be an attempt to confer in good faith about their position that they should be relieved from producing a privilege log. Plaintiffs' counsel received no phone calls to either discuss or schedule a time to discuss. Rather, two days later, minutes after filing their discovery responses, with no privilege log, *see* [Dkt. 85], and a mere **thirteen** heavily redacted pages of document production[1], and before Plaintiffs had a chance to respond and confer with a response and alternate proposal, the Butler Snow Defendants filed the Motion. *See* [Dkt. 86]. The Motion was filed without fulfilling either of the Court's prerequisites to the filing of a discovery motion: counsel for the Butler Snow Defendants neither conferred with Plaintiffs'

---

[1] These documents consist of eight (8) email inquiries from the press. Specifically, there are seven emails from a journalist at Breitbart News—five of which are to Butler Snow's Chief Marketing Officer (one of which was also sent to a Butler Snow lobbyist), one email to another Butler Snow lobbyist, and one email to Don Clark; as well as one email from a journalist at The Hill to Don Clark. Out of the eight press inquiries produced (which are the only documents that the Butler Snow Defendants have produced), one page is *completely redacted*, and another four (4) are *heavily redacted*. To say that the Butler Snow Defendants are playing "hide the ball" is a vast understatement.

counsel[2] nor conducted a telephonic conference with the magistrate judge prior to filing the Motion on April 25.[3] As such, the Butler Snow Defendants have failed to comply with the CMO, and the Court should not entertain their Motion.

Plaintiffs responded to the Butler Snow Defendants' "good faith" letter on May 4, 2018. A copy of that correspondence is attached hereto as **Ex. B.** In the letter, counsel for Plaintiffs explained their position regarding the likelihood that at least some of Butler Snow and Don Clark's communications are not privileged, giving examples as applicable to the facts of this case and that in order to evaluate and/or challenge assertion of privilege, Plaintiffs need a privilege log. *See* Ex. B, stating:

> First, we observe that the facts of this case suggest the inapplicability or waiver of the attorney-client privilege for some of Butler Snow's and Don Clark's communications, thus making the information in the privilege log all the more important. Examples classes would include communication between an attorney and client that was not intended for the purpose of obtaining legal advice. Similarly, the attorney-client privilege does not encompass communications where an attorney is simply included (like a cc) on correspondence between non-attorneys. Nor is communications privileged to/from an attorney representing one entity to/from another entity, though the latter be related to the attorney's client. The facts of this case give reason to believe some of Butler Snow's communications will not qualify for the attorney-client privilege. These would include, for example, communications between Butler Snow attorneys representing Thad Cochran personally and either the Senatorial Campaign or attorneys representing the Campaign, and vice versa, would not qualify as attorney-client privileged.

Counsel even proposed a reasonable "first installment" compromise:

---

[2] Merriam-Webster defines "confer" as "to compare views or take counsel: consult." https://www.merriam-webster.com/dictionary/confer, last accessed May 7, 2018. Without having engaged in a two-way discussion (by return letter, email, or telephonic conference) with Plaintiffs' counsel, there is no comparison of the two sides' positions. As the Court can see from the attached correspondence, Plaintiffs provided an alternative suggestion regarding a "first installment" privilege log.

[3] On May 3, 2018, counsel for the Butler Snow Defendants contacted all counsel about a CMO 6.F.4 teleconference with the Court regarding a different discovery dispute, see **Ex. C**, May 3, 2018, email from Mr. Simon Bailey. Plaintiffs are unaware of any reason the same could not have been done prior to the filing of the instant Motion.

> Rules require. However, we would not object, as a first installment, to your grouping of emails, if that could be done without any of the information required by the privilege log being lost or obscured. For example, if there were multiple emails from the same sender to the same recipient (with all the same cc's and bcc's) on the same subject, but having different dates, it would seem reasonable for you to group those emails into a category having the mentioned identifiers, and
>
> then simply list the different dates. Then, if the Plaintiffs were satisfied, after seeing your privilege log, that we could ascertain all the same data that would have been presented if each email was described individually, then we would not object.

*Id.*

However, by this time, the Butler Snow Defendants had already filed the instant Motion. Plaintiffs nonetheless suggested that if Butler Snow and Clark's counsel were amenable to the proposed first installment privilege log and would then agree to provide more detail if and when Plaintiffs identified further information needed, the parties could work through the Butler Snow Defendants' concerns. *Id.* To date, no reply has been received.

    **B. The Butler Snow Defendants' blanket assertion of privilege, and the need for a privilege log.**

The Butler Snow Defendants make a blanket assertion that they would "be extremely burdened" by producing a privilege log as to documents that they claim are protected from disclosure. However, they offer nothing that would allow their claims of privilege to be evaluated."[4] Rather, they seek to simply say the magic words "privilege" and "burden" and be relieved from participating in discovery.[5] Their Motion cites a single case from the Southern District of New York for their position that they should be relieved of the obligation to produce a

---

[4] There is also the matter of their alternative's problem with respect to relevance, as it would impose an unreasonably limited time frame on the log, limiting the date range to "the period that encompasses Clayton Kelly's publication of the [campaign] video showing Mrs. Rose Cochran. Certainly, the Complaint makes clear that dates outside of the range of dates from when Clayton Kelly obtained photographs and the time that the video was published are relevant. Their proposed time period, for instance, excludes dates on which others indicted in connection with the Rose Cochran Incident entered pleas and were sentenced, among a host of other things.

[5] The Butler Snow Defendants produced only 13 pages (one entire page was redacted) of documents comprised of 8 emails in response to Plaintiffs' First Request for Production of Documents, and did not produce a privilege log at all. Plaintiffs have produced 10,730 pages, along with 35 DVDs containing roughly 38,094 files.

privilege log. The Butler Snow Defendants fail to apply the proper standard or to cite any controlling authority that supports their position.

Rule 26 of the Federal Rules of Civil Procedure governs general discovery matters. Rule 26 provides, in pertinent part:

> (b)(1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.
>
> . . .
>
> (b)(5) Claiming Privilege or Protecting Trial-Preparation Materials. (!) Information withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.
>
> . . .
>
> (c) Protective Orders. (1) In General. A party or any person from whom discovery is sought may move for a protective order…The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…

The Butler Snow Defendants' responses to Plaintiffs' First Request for Production of Documents failed to include a privilege log; instead, on the same day responses were served, they moved (after a minimal overture at an "attempt to confer" with undersigned) for a protective order excusing them from the Rule's obligation regarding claims of privilege, on the basis of "undue burden."

Without a privilege log, Plaintiffs have no way to ascertain the nature of the withheld documents or to assess the claim of privilege. The Butler Snow Defendants are certainly capable

of identifying documents that are relevant and responsive. Indeed, in their Initial Disclosures, they identified certain handwritten notes from meetings taken by Ms. Amanda Barbour and agreed to produce them if Plaintiffs would agree that the production would not waive attorney work product protection or attorney-client privilege[6]. While claiming a blanket privilege and asserting that Plaintiffs' requests are overly broad, the Butler Snow Defendants seek to unilaterally decide what is privileged ("nearly every document") and relevant (communications from the date range April 26, 2014, to June 30, 2014—the period that encompasses Clayton Kelly's publication of the video"), and then exempt themselves from producing a privilege log that could allow Plaintiffs (and/or the Court) to determine whether the privilege actually applies.

The Fifth Circuit has made clear that simply because a communication is made to or from an attorney does not alone render it protected by privilege—which is what the Butler Snow Defendants would have be the case. For instance, in *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 2017 U.S. App. LEXIS 23067 (5th Cir. 2017), the Court held that a district court had erred when it adopted a magistrate judge's recommendation that all communications between a corporation's employees and its attorneys were privileged *per se*.

There, the defendant BDO in response to a subpoena from the EEOC had produced a privilege log of 278 documents it withheld under claims of attorney-client privilege. 876 F.3d at 693. The documents included emails, memoranda, communications between employees and in-house and outside counsel, emails between employees with counsel courtesy copied, and communications about legal advice. *Id.* at 693-694. The magistrate judge had denied the EEOC's request to enforce the subpoena and refused to perform an in camera review of the documents, and

---

[6] Plaintiffs have so agreed; now the Butler Snow Defendants insist on an agreed order (yet to be delivered), in addition to the Plaintiffs' agreement of non-waiver.

granted BDO protective relief, stating "anything that comes out of [BDO's] lawyer's mouth is legal advice." *Id.* at 694.

On appeal, the Fifth Circuit noted that determinations of whether the attorney-client privilege applies "is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof." *Id.* at 695 (quoting *Stoffels v. SBC Commmc'ns, Inc.,* 263 F.R.D. 406, 411 (W.D. Tex. 2009) (internal citation omitted). Further, "[a]mbiguities as to whether the elements of a privilege claim have been met are construed against the proponent." *BDO*, 876 F.3d at 695 (citing *Scholtisek v. Eldre Corp.*, 441 F.Supp.2d 459, 462-63 (W.D.N.Y. 2006)(listing cases). Indeed, the Fifth Circuit noted, "Because the attorney-client privilege 'has the effect of withholding relevant information from the fact-finder,' it is interpreted narrowly so as to 'appl[y] only where necessary to achieve its purpose.'" *BDO*, 876 F.3d at 695 (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)(internal citation omitted).

In *BDO,* the Fifth Circuit applied these standards in a case where a company withheld documents and produced a privilege log in response to an EEOC-issued subpoena. The Fifth Circuit determined that the lower court erred and "[t]here is no presumption that a company's [i.e., client's] communications with counsel are privileged…Indeed, more is required." 876 F.3d at 695 (internal citations omitted). To be clear, "simply describing a lawyer's advice as "legal," without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege. *Id.* (citing *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996)("Calling the lawyers advice 'legal' or 'business' advice does not help in reaching a conclusion; it *is* the conclusion.")(italics in original).

The Court went on to note that under the Advisory Committee Notes to Rule 26, "a privilege log's description of each document and its contents must provide sufficient information

to permit courts and other parties to 'test[] the merits of' the privilege claim. *Id.* (quoting *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982); *NLRB v. Interbake Foods, LLC,* 637 F.3d 492, 502 (4th Cir. 2011)("When a party relies on a privilege log to assert these privileges, the log must 'as to each document…set[ ] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.")(citation omitted). The Court ultimately concluded that the lower court "erred when inverting the burden of proof, requiring that the EEOC prove that BDO improperly asserted the attorney-client privilege as to its withheld documents, and [in] concluding that all communications between a corporation's employees and its counsel are *per se* privileged.

What the Butler Snow Defendants seek is to have this Court impose the very same "inverted standard" explicitly rejected by the Fifth Circuit. It is not Plaintiffs' burden to show that Butler Snow has withheld documents and that the privilege has improperly been asserted—nor could they even possibly do so without the benefit of a privilege log; Plaintiffs do not have any inkling of what documents the Butler Snow Defendants even have, save for the 13 pages produced. Plaintiffs certainly cannot assess the privilege under the Butler Snow Defendants' proposed alternative, where only communications with outside parties during a severely and unreasonably limited time frame would be logged.[7] Rather, it is the Butler Snow Defendants' obligation to produce a privilege log that sufficiently identifies withheld documents so that the privilege can be properly assessed.

---

[7] The thirteen pages of documents that were produced the same day the instant Motion was filed are from May 17, 19, 23, 24, and 27, 2014, which falls within the "alternative" time frame proposed. It is not unconceivable that these could very well end up being the only non-privileged documents that fit the proposed "alternative."

### C. The Butler Snow Defendants fail to offer any evidence of undue burden.

In addition to their improper broad invocation of privilege as to all communications to which they were a party without producing a log that would allow the claim to be assessed, the Butler Snow Defendants claim that producing a privilege log would prove an "extreme burden." To reiterate, the Butler Snow Defendants rely on a single, unsupported assertion—"The Butler Snow Defendants would be extremely burdened by producing a detailed privilege log"—to justify not only avoiding production of anything other than thirteen pages (8 emails), but from even having to produce a privilege log. They offer <u>nothing</u> by way of explaining what sort of "extreme burden" this would pose.

The Butler Snow website lists 130 attorneys in the firm's Jackson office; this does not include summer associates or support staff, like paralegals. Surely, they do not suggest that in an office of hundreds, there is no one who could work on a privilege log. Nor do they offer any information by way of how many documents would need to be reviewed or an estimate of how long producing a log would take. By way of contrast, Plaintiffs' representatives—three attorneys, along with one paralegal—have reviewed and produced 10,730 pages, along with 35 DVDs containing roughly 38,094 files, to the Defendants.

The Butler Snow Defendants' boilerplate objection of "extreme burden" is insufficient as a matter of law to deny the Plaintiffs a privilege log. *See Peoples Ben. Life Ins. Co. v. Dale,* 2001 U.S. Dist. LEXIS 24699*, at *18, 2001 WL 34012294 (S.D. Miss. Feb. 16, 2001)([A] general objection based upon undue burden will not suffice, but…the objecting party must show the fallacies of each objected to request.")(internal citation omitted). A blanket assertion that they will be "extremely burdened" with no explanation whatsoever hardly rises to the level of "undue burden" that would allow the Defendants to categorically avoid producing a privilege log,

particularly when they have claim that that "nearly every document" responsive to Plaintiffs' request is privileged. The Butler Snow Defendants fail to specify why they cannot comply with the options available to perform the routine task of preparing a privilege log in a cost-effective manner. They have not established evidence of undue burden.

### D. The Butler Snow Defendants are in violation of the letter and spirit of the discovery rules.

Despite having produced **no documents** with their Initial Disclosure (other than an insurance policy), and **no documents in discovery except eight (8) heavily redacted emails from journalists**—all after Mark Mayfield's arrest, the Butler Snow Defendants seek extraordinary relief from this Court from producing a standard privilege log.

Even setting aside the issue of "undue burden" under a standard privilege log, the Butler Snow Defendants have clearly not even produced the **non-privileged** documents relating to the claims and defenses in this case; yet they now brazenly seek this court's assistance to help them hide hundreds if not thousands of discoverable documents—with no listing, accountability, or identification whatsoever for what documents the Butler Snow Defendants wish to unilaterally determine to be immune from disclosure. The Butler Snow Defendants are in violation of Fed.R.Civ.P. 1[8], Fed.R.Civ.P. 26(a)(1)(A),(C) & (E)[9], Fed.R.Civ.P. 26(a)(4)(b)(1)[10], Fed.R.Civ.P. 26(a)(5), L.U.Civ.R. 26(a)(1)(A), L.U.Civ.R. 26(e)[11], and L.U.Civ.R. 37(a),(b) & (c).

---

[8] "These rules…should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

[9] No documents were produced by the Butler Snow Defendants in their Initial Disclosures under Rule 26(a)(1)(ii) and (iii). The only document produced was an insurance policy under Rule 26(a)(1)(iv).

[10] "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

[11] "**(e) Privilege Logs.** A party withholding information claimed privileged or otherwise protected must submit a privilege log that contains at least the following information: Name of the document, electronically stored

The lack of production by the Butler Snow Defendants is shocking. The Rules provide numerous protections against these very sorts of discovery games being played by the Butler Snow Defendants.

## **CONCLUSION**

The Butler Snow Defendants filed the instant Motion improperly under the Court's Case Management Order [Dkt. 67] (the "CMO"). Furthermore, they fail to justify relief from the obligation of producing a privilege log by attempting to shift the burden to Plaintiffs of demonstrating that privilege should not apply—while denying Plaintiffs the very privilege log that would allow them to challenge the assertion. Moreover, the Butler Snow Defendants fail to provide any evidence of any undue burden. Finally, the Butler Snow Defendants are in violation of discovery rules and do not come with clean hands.

The Motion should be denied, and the Butler Snow Defendants should be required to provide Plaintiffs with a privilege log for documents withheld on the basis of privilege. Additionally, inasmuch as Plaintiffs were forced to expend time and expense in responding to the improperly-filed motion, Plaintiffs should be awarded heir attorneys' fees and costs in preparing this Response.

---

information, or tangible thing; description of the document, electronically stored information, or tangible thing, which description must include each requisite element of the privilege or protection asserted; date; author(s); recipient(s); and nature of the privilege. To without materials without such notices subjects the withholding party to sanctions under Fed.R.Civ.P. 37 and may be viewed as a waiver of the privilege or protection."

Respectfully submitted this, the 9th day of May 2018.

>    */s/ Julie S. Noone*
>    Dorsey R. Carson, Jr., Esq. (MSB #10493)
>    Julie S. Noone, Esq. (MSB #101591)
>    Steve C. Thornton, Esq. (MSB #9216)
>    Attorneys for Plaintiffs
>    *Robin Mayfield, Owen Mayfield, William Mayfield, and The Estate of Mark Stevens Mayfield*

**OF COUNSEL:**

CARSON LAW GROUP, PLLC
125 S. Congress St., Ste 1336
Jackson, MS 39201
Telephone: 601.351.9831
Facsimile: 601.510.9056
Email: dcarson@thecarsonlawgroup.com
       jnoone@thecarsonlawgroup.com

-and-

THORNTON LAW FIRM
P.O. Box 16465
Jackson, MS 39236
Telephone: 601.982.0313
Facsimile: 601.957.6554
Email: mail@lawlives.com

## CERTIFICATE OF SERVICE

I, Julie S. Noone, the undersigned, do hereby certify that the foregoing has been electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

This the 9th day of May 2018.

*/s/ Julie S. Noone*
OF COUNSEL
