IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROBIN MAYFIELD; OWEN MAYFIELD;
WILLIAM MAYFIELD; THE ESTATE OF MARK
STEVENS MAYFIELD                                                               PLAINTIFFS

V.                                                                    No. 3:17-cv-00514-CWR-FKB

BUTLER SNOW LLP; DONALD CLARK, JR.;
THE CITY OF MADISON, MISSISSIPPI;
MARY HAWKINS- BUTLER, Individually
and in her Official Capacity; POLICE CHIEF
GENE WALDROP, Individually and in his Official
Capacity; CHUCK HARRISON, Individually and in
his Official Capacity; VICKIE CURRIE, Individually
and in her Official Capacity; RICHARD WILBOURN, III;
JOHN AND JANE DOES 1-10 and THAD COCHRAN                DEFENDANTS

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT CITY OF MADISON'S MOTION TO ALTER,
AMEND AND RECONSIDER ORDER OF SEPTEMBER 18, 2018**

COMES NOW, The City of Madison, Mississippi (Defendant), by and through its attorneys of record and files this its Memorandum of Authorities in Support of Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. Proc. 59(e) and/or Rule 60(b) and in support thereof would show unto the Court the following, to wit:

**I. INTRODUCTION**

Principal briefing on the dispositive motions were completed in 2017. *Lozman v. City of Rivera Beach, Florida*, 138 S.Ct. 1945 (2018) was decided in June of this year. In this Court's Order of September 18, 2018, the Court holds that, notwithstanding the difficulty in seeing "how the City of Madison or its Mayor violated "[Plaintiff] Mayfield's rights," Plaintiffs were allowed to proceed to litigate their First Amendment retaliation against the City in light of *Lozman supra*.

### A. Order of September 18, 2018

The Court's Order makes findings and rulings that bear, either directly or indirectly, on the lack of viable § 1983 municipal liability as to the City of Madison. First, the Court holds that Don Clark, Cochran campaign manager, and the Butler Snow firm–an alleged "Republican political establishment"– are dismissed in that Clark's report of a possible case of exploitation of a vulnerable adult to City officials was "supported by probable cause" [Doc 115 at 8] ("The bottom line is that Clark and Butler Snow had probable cause to believe that a crime had been committed. They are not liable for their report to the Madison Police Department." Id.) As pointed out further below, the lack of probable cause remains an essential element of a First Amendment retaliation claim under Fifth Circuit and Supreme Court precedent in cases which are dissimilar to, and not governed by, *Lozman*. If the underlying facts and circumstances as found by the Court here warranted a finding of probable cause, then there can be no complaint as to institution of normal criminal processes based on that probable cause.

Second, the Court in its Order holds that Mayfield has no First Amendment speech right to "engage in a criminal conspiracy". [Doc 115 at 9] Accordingly, there could be no initial showing of a First Amendment violation as to the City of Madison by these plaintiffs. In short, there was no protected First Amendment activity by Mayfield that has retaliatory consequences as a matter of law.

Moreover, the Court's Order does not find or make reference to any improper "policy" of the City of Madison or point to any substantive involvement by Mayor Mary Hawkins-Butler as a "maker" of any improper municipal policy under the circumstances. Instead, the single participation of Mayor Hawkins-Butler is less than minimal and manifestly proper: " The Mayor, according to the Amended Complaint, referred him to Madison Police Chief Gene

2

Waldrop. Clark then pitched various criminal charges to Chief Waldrop and his officers. The Police Department decided to pursue the matter." [Doc 115 at 3 - 4]. The Mayor's reference and report of a possible criminal violation of state law, itself supported by probable cause, to the Chief of Police for investigation is not an improper "policy" of the City, nor could Mayor Hawkins-Butler be deemed a "policymaker" upon which municipal liability could attach.

Moreover, the Chief of Police, to whom Clark was directed for investigation of his report of a possible crime by Mayor Hawkins-Butler, was dismissed by the Court in its Order. "The Amended Complaint does not explain how Chief Waldrop violated the plaintiffs' rights, so he is entitled to dismissal." [Doc 115 at 10] There is no participation by the Chief or by the Mayor in any constitutional tort and there is no "policy" by a "policymaker" that can be attributed to the City under the strict standards for § 1983 municipal liability.

Finally, the Court in its Order correctly recognizes that the elements for a viable § 1983 cause of action under the circumstances here are not readily apparent under longstanding precedents. "After reviewing the complaint, the Court is unable to see how the City of Madison or its Mayor violated Mayfield's constitutional rights..." [Doc 115 at 14]. The "possible exception" giving the Court pause is the new *Lozman* decision. As pointed out in *infra*., however, the circumstances giving rise to this matter does not fit the narrow, fact specific, and unique scenario addressed by the Court in *Lozman*. The "probable cause" requirement to state a viable retaliatory criminal process claim, as set forth in numerous Fifth Circuit decisions, still applies.

B.      **Summary of Grounds for Reconsideration**

For the reasons more fully set forth below, it is respectfully submitted that Plaintiffs' Amended Complaint fails to sufficiently allege the elements needed for *Monell* liability to attach

to the City. In permitting the matter to proceed against the City, the Order inadvertently overlooks and/or omits an evaluation of the essential elements necessary in all § 1983 claims where municipal liability is alleged to include: (A) a municipal policy or custom; (B) that is adopted or promulgated by policymakers; and, (C) that is the "moving force" and directly causative of a constitutional violation. A suit against the City cannot be based on *respondeat superior* but, as discussed below, the absence of these essential requirements permits vicarious liability under the allegations of the Amended Complaint. There was no ordinance or written policy of the Board of Aldermen at issue, and the sole act of Mayor Hawkins-Butler–referring a citizen report of violations of state criminal law, based on probable cause, to the Chief of Police for investigation--was manifestly proper. There was no improper "policy" of the City, nor was Mayor Hawkins-Butler a "policymaker" under the circumstances. Further, under the Court's Order, "speech" in the context of a conspiracy, as engaged in by Mayfield, is not protected by the First Amendment. No viable claim can exist without protected speech.

Secondly, *Lozman*–a case decided narrowly on specific facts–is not controlling under the facts alleged and is ultimately factually and legally inapposite to the § 1983 claim before the Court. Current Fifth Circuit precedent, which imposes a bar on First Amendment retaliation and other § 1983 claims where probable cause for criminal process exists, remains applicable.

Finally, it is noted that the officers' affidavits for warrants with respect to the conspirators were submitted to a municipal judge for review, and warrants were issued. There is no showing that those affidavits were knowingly false or made in reckless disregard of the truth. For this additional reason, there can be no § 1983 municipal liability for criminal process against the conspirators under those circumstances.

4

## II.  STANDARDS

This Court is familiar with the relevant case law addressing motions to reconsider its rulings.  Generally, the motion cannot consist of re-argument of the petitioners' previous positions nor be merely "an expression of a view of the law contrary to that set forth in the Court's opinion:  *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 636 (S.D. Miss. 1990). A motion under Fed. R. Civ. P. Rule 59(e)"calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (*quoting In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).  To obtain relief, the  Defendants must show the judgment challenged is manifestly in error and/or that the motion is necessary to prevent manifest injustice. *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).  *See also Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990) ("a motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence..."); 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2810.1 (2d ed. 1995).  With these standards in mind, Defendant City seeks reconsideration of the Court's analysis concerning the sufficiency of the claims against the City of Madison and relief from the September 18, 2018 Order pursuant to Fed. R. Civ. P. Rule 59(e) and/or Rule 60(b) on the ground that the Court manifestly erred as a matter of law in its evaluation of the Plaintiffs' First Amendment claims.

## III.  ARGUMENTS

**Argument 1:  Reconsideration Is Warranted on the Sufficiency of Plaintiffs' Pleading of Their *Monell* Claim.**

As the Court is aware, for the Plaintiffs to sufficiently make out their *Monell* claims against the City, they must, at a minimum, plead the "three attribution principles" . . . in support

of such a claim. *Saenz v. City of El Paso*, 2015 WL 12965290 at *4 (W.D. Tex. Feb. 23, 2015) *quoting Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001):

> A plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom.'

*Saenz*, 2015 WL 12965290, at *4 *quoting Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010). *Zarrow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010); It is now "rote" that § 1983 does not permit the liability of a municipality based on *respondeat superior*, and district courts and the Fifth Circuit itself are "[c]harged to administer a regime without *respondeat superior*..." *Pineda v. City of Houston*, 291 F.3d 325, 328, 334 (5th Cir. 2002). None of these essential elements are met with respect to the City of Madison in the instant matter.

    A.    **No Official "Municipal Policy".**

Plaintiffs have failed to identify or demonstrate by objective evidence of any official "policy" of the City of Madison in this case. In the most straightforward application of municipal "policy" for § 1983 purposes, there must be a "policy statement ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an officer to whom the lawmakers have delegated policy-making authority". *Johnson v., Moore*, 958 F.2d 92 (5th Cir. 1992); *Valle*, 613 F.3d at 542 ("The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers and others with policymaking authority").

In the instant matter, the Amended Complaint identifies no municipal ordinance promulgated and adopted by the Board of Aldermen that pertains in any way to the alleged violation, no written City-issued regulation, no Board resolution or action of any kind, no written policy statement, nor any analogous written statements of policy by any City official.

Accordingly, the most common source of municipal liability based under § 1983 is completely missing from Plaintiffs' allegations, because there are none.

Furthermore, there is no viable allegation of a custom of misconduct on the part of the City of Madison, which requires the demonstration of a "persistent, widespread practice of city employees which... is so common and well-settled as to constitute a custom that fairly represents municipal policy." *See Johnson, supra; Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002). "[O]ne act is not itself a custom. There must be a persistent and widespread practice". *Id.* quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001). There is absolutely no viable, non-conclusory allegation or showing of any such "custom" of the City of Madison in this case.

As there is no identifiable, objective municipal "policy" or "custom" of misconduct that can be fairly attributed to the City of Madison, a § 1983 claim of municipal liability against the City cannot proceed. Again, municipal liability cannot be predicated on a conclusory theory of *respondeat superior*.

### B. Moreover, There is No "Policymaker" For Purposes Of Municipal Liability Under The Circumstances Here.

In addition to the lack of any objectively identifiable municipal "policy" or custom, there are no "policymakers"--officials who themselves adopted or enforced any improper "policy" that could be attributed to the City of Madison. The Board of Aldermen did nothing. As set forth by the Court in its Order, Don Clark of Butler Snow, based on probable cause, complained to Mayor Hawkins-Butler of a possible violation of <u>state</u> law regarding the invasion of privacy of Rose Cochran. The Mayor referred Clark to Chief of Police, Gene Waldrop, for investigation, and Clark then met with the Chief. [Doc # 115 at 3 - 4] The Chief has now been dismissed by the

Court for lack of any viable allegation against him. The deminimis, single act of the Mayor in referring the matter to the Chief for investigation cannot be considered to be improper in any way,[1] nor is it the promulgation or execution of any active policy by a policymaker. Under state law,[2] Mayor Hawkins-Butler is not a policymaker for the City of Madison for purposes of a policy of enforcement of state criminal law. Moreover, her single act in referring a criminal matter to the Chief of Police cannot turn her into one under Fifth Circuit precedent.[3]

Under state law, the Chief of Police is responsible for the investigation and enforcement of the criminal law. The Mayor is not a policymaker for the City in this respect. As set forth in Official Opinions of the Mississippi Attorney General, [4]

> Residents of a municipality may meet with the mayor to discuss any matter pertaining to the operation of the municipality, including police protection and the mayor may meet with the police chief or police officers to gather information concerning operation of the police department and may also direct residents to communicate with the police chief concerning police protection generally or specific ongoing situations in law enforcement. 2003 Miss. Op. Att'y Gen. 749

> The Mayor may meet with police officers to obtain information concerning the operation of the police department, but the mayor does not have authority to become involved in the day to day operation of the police department or to make law enforcement decisions. 2003 Miss. Op. Att'y Gen. 749.

Second, a "single incident" of referring a criminal complaint by a citizen to the Chief of Police does not constitute a policy and does not turn the Mayor into a policymaker.

As set forth in *Worsham v. City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989),

---

[1] To the contrary, the Mayor's reference of Clark's complaint to the Chief was manifestly proper.

[2] State law is relevant in determining whether an official (or body) is a "policymaker". *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340 (5th Cir. 1989)

[3] It is well-settled that front-line officers like Officers Currie and Harrison are not themselves final policymakers for a municipality. Moreover, it is respectfully suggested that those officers did nothing wrong or unconstitutional in this matter.

[4] Defendant realizes Attorney General opinions are not binding on this Court.

> *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), indicates that a single incident of unconstitutional activity will not suffice to hold a municipality liable under *Monell* "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Id.* 436 U.S. at 823-24, 98 S.Ct. At 2436-37.

Furthermore, under *Tuttle*,

> "[w]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Tuttle*, 471 U.S. at 824, 105 S.Ct. at 2436 (citations omitted).

The Mayor's reference to the Chief was not in any way unconstitutional. The Fifth Circuit, charged with avoiding the imposition of *respondeat superior* liability upon a municipality, *Pineda*, 291 F.3d at 334, has rejected the "single incident exception" for policymaker status in numerous cases. *See Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 288 (5th Cir. 2002). It is "extremely narrow", *Valle*, 613 F.3d at 542, and has no application to Mayor Hawkins-Butler.

### C.     *Monell* Causation

While Defendant disputes the sufficiency of Plaintiffs' allegations regarding the existence of a policy of First Amendment retaliation and/or that Mayor Butler's actions in connection with Mayfield's prosecution constitute the actions of a final policymaker as regards law enforcement decisions, Plaintiffs' claims fail under the causation pleading requirements of this Circuit's *Monell* jurisprudence. As elaborated upon by the *Saenz* Court on Reconsideration of its February 23, 2015 order, *supra,*

> [T]he Fifth Circuit has adopted "*a heightened standard of causation* in order to hold a municipality liable under § 1983." *Valle v. City of Houston*, 613 F.3d 536, 546 (5th Cir. 2010) Pursuant to binding circuit case law, moving-force causation obligates a plaintiff to allege "a direct causal link between the municipal action

9

and the deprivation of federal rights. . . " *Id.* at 542 (*quoting Brown,* 520 U.S. at 411)

*Saenz v. City of El Paso,* 2015 WL 12976854 at *3 (W.D. Tex. April 23, 2015)(emphasis in original). In this instance, the causal link between the municipal actors, and the deprivation of Mayfield's First Amendment rights is his alleged retaliatory prosecution. (Amended Complaint at ¶¶ 251-256) Yet, Plaintiffs' allegations concerning the City's involvement in this prosecution fails to distinguish which "State Actor Defendants" (*Id.*) formulated the retaliatory policy, regulation, or decision "officially adopted and promulgated by lawmakers or others with policymaking authority," *Valle*, 613 F.3d at 542, and how said retaliatory policy in particular constituted the moving force for the First Amendment violation alleged in the Amended Complaint. For example, if Mayor Butler's decision to refer Clark's complaint to Waldrop and/or Harrison and Currie (Amended Complaint ¶¶151-52) was both City policy as well as imbued with retaliatory animus, how could that decision remain the moving force behind the prosecution from and after the decision to prosecute was made by Madison County District Attorney Bryan Buckley? (Amended Complaint at ¶¶158-66) The Amended Complaint does not suggest a causal link that survives that decision with anything other than conclusory allegations (Amended Complaint at ¶¶ 251-256) yet, under existing precedent, Plaintiffs' chronology must show something more than a succession of personal involvement from which *respondeat superior* liability is unavailable.

Assuming Plaintiffs' allegations, taken as a whole, plausibly suggest a host of motives, both personal and political, behind the individual actor's involvement with the prosecution of Mayfield and others as a result of the Rose Cochran incident, "[ ] isolated unconstitutional actions by municipal employees will almost never trigger liability." *Saenz*, 2015 WL 12965290

at *3 *quoting Piotrowski*, 237 F.3d at 578. *See also Harkless v. Brazoria County, Texas,* 2016 WL 1702595 at *3 (S.D. Tex. April 28, 2016) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.") *quoting Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). Here, Plaintiffs have lumped a host of persons into the category of *State Actor Defendants* without any identification of who, among them, possessed final policymaking authority and how, in particular, their decisions were the moving force behind the constitutional injury alleged in this case. And while state-of-mind may be pled generally, all of the overt actions pled by Plaintiffs are innocuous on their face, from Butler's referral of Clark's complaint to Chief Waldrop (Amended Complaint at ¶186) to Currie's investigative notes. *(Id* at ¶195) This Court has already determined that probable cause existed for Don Clark to report the matter to law enforcement. [Doc. 115 at 8] Neither Defendants nor this Court should have to guess the identity of both the policy-making official whose decisions became the moving force behind the First Amendment violation as well as the particulars of that policy under the facts and circumstances pled in the Amended Complaint. Because Plaintiffs' *Monell* claims fail to satisfy this Circuit's heightened pleadings requirements, Defendant City seeks reconsideration of the remaining claim against the City arising out of the alleged retaliatory prosecution of Mark Mayfield.

      Here there is also no showing of any concrete, municipal policy, no policymaker, and no "moving force" causation necessary to permit municipal liability against the City of Madison to proceed.

> The third prong requires a plaintiff to prove "moving force" causation. To succeed, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between

11

the municipal action and the deprivation of federal rights" *Bd. Of the County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)

In its Order, the Court correctly recognized that it is "[ ]unable to see how the City of Madison or its Mayor violated Mayfield's constitutional rights". Under a *Mount Healthy* analysis, there was no First Amendment protected speech on the part of Mayfield and his "co-conspirators". The conspirators' plot and invasion of the privacy of a vulnerable adult, Rose Cochran, in an assisted-care facility, for the purpose of crafting a smear political ad, is not speech protected by the First Amendment. On the contrary, these acts were violative of state law regarding the right to privacy and the protection of vulnerable adults. As the Court points out, the First Amendment does not protect speech in a "criminal conspiracy" [Doc 115 at 9] The initial showing required under *Mt. Healthy* fails. As there is no causal link between an unidentified "policy" of the City and retaliation against plaintiffs' decedent, there is no valid, non-conclusory showing of "moving force causation" and the heightened standard for § 1983 municipal liability is not met.

**Argument II:** **Reconsideration Is Warranted in Light of the Court's Findings Regarding the Actions Giving Rise to Mayfield's Prosecution.**

The freedom of association protected by the First Amendment includes partisan political organization. *Elrod v. Burns*, 427 U.S. 347, 357, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214, 107 S. Ct. 544, 548, 93 L. Ed. 2d 514 (1986). Unquestionably, Mark Mayfield had as much right to engage in and associate with those engaged in politically partisan activity in support of McDaniel's 2014 insurgent campaign as did Don Clark in support of Senator Cochran's campaign or indeed, anyone else. *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 747 (5th Cir.1993). And while Plaintiffs'

12

prolix allegations plausibly show that Mayfield and others claimed membership in an opposing political group from other individual Defendants in 2014 (Amended Complaint at ¶¶ 141-163), Plaintiffs' right of recovery for retaliatory prosecution depends on the character of Mayfield's conduct for which he was allegedly punished:

> 'Ordinary citizens may recover for retaliation in violation of the First Amendment if they can show: '(1) they were engaged in constitutionally protected activity, (2) the [defendant's] actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the [defendant's] adverse actions were substantially motivated against the [plaintiff's] exercise of constitutionally protected conduct.'

*Robinson v. Hunt Cty., Tx.*, 2018 WL 1083838, at *6 (N.D. Tex. Feb. 28, 2018) *quoting Klein v. Walker*, 2016 WL 9242015, at *3 (E.D. Tex. June 10, 2016).

The only speech directly implicated by Mark Mayfield's actual prosecution is set forth in paragraphs two hundred and two hundred and one (¶¶ 200-201) of the Amended Complaint. Defendants contend that the Plaintiffs' First Amendment claims cannot be understood without reference to the direct nexus which the Amended Complaint draws between the speech/association allegedly punished *via* Mayfield's prosecution.[5] In the opinion of this Court, that speech and those associative activities constituted predicate acts of criminal conspiracy, unprotected by the First Amendment. [Doc # 115 at Paragraph 9] Moreover, the March-April 2014 association of Kelly, Sager, Mary and Mayfield was in furtherance of that conspiracy and therefore, by implication, also constitutionally unprotected activity. *Id.* Because the causal link between Mayfield's First Amendment activities and his prosecution runs straight through St. Catherine's Village, Plaintiffs' First Amendment claim cannot exist irrespective of either the

---

[5] Amended Complaint at ¶ 203 ("the Currie affidavit's statement that Mark's conduct amounted to 'communicating' shows that the Defendants knew Mark's actions were the exercise of his right to free speech and, therefore, amounted to a pretense for charging him with a crime.")

Supreme Court's decision in *Lozman v. City of Riviera Beach, Florida*, 138 S. Ct. 1945 (2018) or the existence of probable cause. The *Lozman* decision holds out the possibility for a plaintiff to succeed on a First Amendment retaliation claim for an arrest made pursuant to a retaliatory official municipal policy, despite the existence of probable cause, where "the alleged constitutional violation was a but-for cause" of the arrest. *Lozman*, 138 S.Ct. at 1952. However, Lozman was no doubt engaging in constitutionally protected activity. *Lozman*, 138 S.Ct. at 1951 ("the causation problem in arrest cases is not of the same difficulty where, as is alleged here, the official policy is retaliation for *prior, protected speech* bearing little relation to the criminal offense for which the arrest is made.") As such, the circumstances giving rise to the decision in *Lozman* are inapplicable to the allegations made in this lawsuit, and reconsideration is sought on this alternative basis.

> **Argument III:** **Reconsideration Is Warranted in that the Supreme Court Decision in *Lozman* is Limited to Its Facts and a "Unique Class" Of Cases Inapposite Here.**

The recent Supreme Court decision in *Lozman* is limited to, and distinguishable upon, its facts. It is respectfully submitted that it is inapposite to the circumstances here. In *Lozman*, the Supreme Court held that on the specific facts presented, which were "far afield from the typical retaliatory arrest claim," *Lozman* 138 S.Ct. at 1954, the plaintiff did not have to prove lack of probable cause as an element to initially maintain a claim of First Amendment retaliatory arrest against a municipality. "The Court need not, and does not, address the elements required to prove a retaliatory arrest claim in other contexts." *Id.* at 1955.

Moreover, and significant to the instant motion, the Court in *Lozman* specifically held that the well known elements necessary to demonstrate municipal liability under § 1983 should be further considered on remand, including whether Lozman's arrest "constituted an official

14

policy of the City". 138 S.Ct. at 1955. The lack of an absolute "probable case" bar on the specific facts did not mean that Lozman could avoid dismissal or be entitled to relief on his First Amendment claim.

The specific facts and circumstances central to the Supreme Court's limited decision in *Lozman* are materially different from that before this Court.

- Lozman's arrest, directed by the City Council, came after clearly protected speech activities–his First Amendment claim was premised upon his prior "lawsuit against the City and his criticisms of public officials". 138 S.Ct. at 1955. "Lozman's speech is high in the hierarchy of First Amendment values" *Id.* By contrast, and as the Court has indicated in its Order, here there is no such First Amendment protected speech by the conspirators–including plaintiffs' decedent in this matter. The "conspirators" craven plot and invasion of privacy of a vulnerable adult, Rose Cochran, to concoct and show a smear political ad, is not in any sense speech protected by the First Amendment. As pointed out by the Court, speech to engage in a criminal conspiracy is not protected. The First Amendment does not grant unrestrained license to violate valid criminal laws. *See, e.q. Peavy v. WFAA-TV, Inc.* 221 F.3d 158, 185 (5th Cir. 2000).

- Lozman had hard "objective evidence" of a plan by the City Council to intimidate and retaliate against him because of his public criticisms and a lawsuit he had filed against the City, leading to his arrest. 138 S.Ct. at 1949, 1954. By contrast, in this matter there is no objective evidence of any similar improper municipal policy, or any "policy" at all, by the Madison Board of Aldermen or any officer with respect to the conspirators, including plaintiffs' decedent. Conclusory allegations of "political payback" do not count.

- There is no allegation that plaintiffs' decedent engaged in any protected speech similar to that put forward by Lozman.

- The alleged retaliatory arrest in *Lozman* was demonstrated by objective evidence to be for prior protected speech and pursuant to a "plan of intimidation" by the City Council, not pursuant to criminal processes of a warrant issued by a magistrate and a contemporaneous criminal investigation for possible violations of state law, as here.

- As indicated by the Supreme Court, outside of the limited fact scenario of *Lozman*, one of a 'unique class", 138 S.Ct. at 1954, the requirement to

15

demonstrate a lack of probable cause in "retaliatory" arrest cases has not been eliminated.

Reconsideration is warranted on this alternative basis.,

**Argument IV:** **The Failure To Show a Lack of Probable Cause, and the Issuance of Valid Warrants By A Municipal Judge, Also Serve As A Bar To Plaintiffs' First Amendment Retaliation Claim Against the City of Madison.**

As discussed by the Supreme Court, *Lozman* explicitly limited its holding that a probable cause bar was inept to "facts like these," 138 S.Ct. at 1955, a "unique class of retaliatory arrest claims." *Id.* That unique class was where the alleged retaliation was for prior, protected speech that had little relation to the criminal offense for which Lozman's arrest was made, and where there was hard "objective evidence" of a plan of intimidation by the city council motivated by retaliation against the exercise of "high value" protected speech. 138 S.Ct. at 1954. As pointed out in Argument III, *Lozman* does not fit the instant matter.

Accordingly, it is respectfully submitted that existing Fifth Circuit case law continues to be the applicable precedent for the Court on this issue.

**A.** **Probable Cause**.

Under Fifth Circuit precedent, a lack of probable cause serves as a bar to § 1983 retaliation arrest claims against a municipality. In the Fifth Circuit, to proceed on a First Amendment retaliation claim, there must be shown a "lack of probable cause to prosecute." *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005).

The Fifth Circuit holds that "retaliatory criminal prosecutions in violation are actionable only if a plaintiff can also prove the common law elements of malicious prosecution, including the absence of probable cause." *Keeman v. Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002).

Claims of constitutional torts for "false arrest, unreasonable seizure and false imprisonment... require a showing of no probable cause". *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001); *Cooley v. City of Waynesboro*, 2017 WL 4156193 at *10 (S.D. Miss. 9/19/17)(Freedom of speech claim failed because officers had probable cause to arrest plaintiff for resisting arrest and disorderly conduct.)

In the instant matter, the Court has ruled that under the true facts and circumstances, there was probable cause to investigate and institute criminal process for the invasion of Rose Cochran's privacy under a number of state criminal statutes. [Doc 115 at 8 - 9]. Normal criminal process was instituted through the submission of the affidavits of Officers Currie and Harrison, on the same day, to a municipal judge for warrants. According to the Order, one of the affidavits set forth all necessary facts, and the other affidavit correctly cited an invasion of privacy criminal statute. Notwithstanding that probable cause truly existed, and that the officers' affidavit taken together reflected the necessary facts and circumstances for warrants, the Court's Order finds a problem with the affidavits viewed individually, because one is considered to be "conclusory", and the other, which attests to necessary facts, cites a statute which the Court deems as possibly inapplicable. [Doc 115 at 12 - 13]

The City respectfully disagrees, and submits that probable cause is not undermined where, as here, the "totality of facts and circumstances" reflected in the officers' affidavits would lead a reasonable person to believe that probable cause of a crime existed, and the Court has in fact ruled that probable cause did exist. *Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *United States v. Martin*, 615 f.2d 318 (5th Cir. 1980); *Dahl v. Holley*, 3122 F.3d 1228, 1233-1236 (11th Cir. 2002). A warrant can be voided <u>only</u> if it is established that an affidavit supporting the warrant was the product of "deliberate falsehood or of reckless disregard

17

for the truth." *Martin*, 615 F.2d at 329 (citation omitted). *Dahl*, 312 F.2d at 1235. There is no such showing in this case. Accordingly, the existence of probable cause also bars the municipal claims against the City of Madison.

> B.  **Independent Intermediary Doctrine.**

Finally, the City would also point out that the "independent intermediary doctrine" also bars the plaintiffs claim of municipal liability. In this matter, arrest and search warrants were issued by a municipal judge. *See Buhler v. City of Austin*, 824 F.3d 548, 554 (5th Cir. 2016), *cert den.*, 137 S.ct. 1579 (2017). *See* also *Johnson v. Moore*, 958 F.2d 92 (5th Cir. 1992). Under that doctrine, which applies to First Amendment and Fourth Amendment claims that depend upon a lack of probable cause:

> "[ ] even an officer who acted with malice...will not be liable if *the facts* supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's independent" decision 'breaks the causal chain' and insulates the initiating party." *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)). Our precedents have applied this rule even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime.

*Buhler, supra.* Here there is no viable showing that Officers Currie and Harrison gave any material "false or misleading statements" to the municipal judge in the affidavits. Accordingly, the claim against the City is also barred for this additional reason.

**Argument V: Plaintiffs' § 1983 Claims Are Barred By The Statute of Limitations**.

The Court's Order holds that Plaintiffs' claims are not barred by Mississippi['s three (3) year statute of limitations because they "more closely resemble" a malicious prosecution case. [Doc # 115 at 11], citing *Winfrey v. Rogers*, _ F.3d_ (5th Cir. 2018). Therefore "the plaintiffs' § 1983 claims accrued on the date the prosecution ended, which is the date Mayfield died." It is

18

noted that, to the extent this matter amounts to a malicious prosecution case, the existence of probable cause bars all § 1983 claims pursuant to *Hartman v. Moore*, 547 U.S. 250, 126 S.Ct. 1695 (2006).

For purposes of the running of the statute of limitations, the Fifth Circuit rule for the accrual of § 1983 actions based on an improper arrest and detention is the date the arrest occurs. *Moses v. Bishop*, 541 F.3d 582 (5th Cir. 2008); *Humphreys v. City of Ganado*, 467 Fed. Appx. 252 (5th Cir. 2012) (per *curiam*); *Aly v. City of Lake Jackson*, 453 Fed. Appx. 538 (5th Cir. 2011). Moreover, under Mississippi law, the running of the statute of limitations continues for the underlying tortious conduct and is not tolled based on the later, "wrongful" death of plaintiffs' decedent. *Jenkins v. Pensacola Health Trust, Inc.*, 933 So.2d 923, 926 (Miss. 2006); *May v. Pulmosan Safety Equipment Corp.*, 948 So.2d 483 (Miss. Ct. App. 2007).

Plaintiffs' decedent was arrested and taken into custody pursuant to process on May 22, 2014, but this action was not filed within the three year limitations period. It is untimely and should be dismissed.

## IV. CONCLUSION

For the foregoing reasons Defendant City of Madison respectfully moves the Court to reconsider, and to alter or amend its Order permitting this action to proceed against the City, and to fully and finally dismiss this action as to it.

Respectfully submitted, this the 16th day of October, 2018.

                                         CITY OF MADISON and
                                         MAYOR MARY HAWKINS-BUTLER IN
                                         HER OFFICIAL CAPACITY

                                             s/Dale Danks, Jr.

Dale Danks, Jr., MSB # 5789
DANKS, MILLER & CORY
213 S. Lamar Street
Post Office Box 1759
Jackson, Mississippi  39215
Telephone:	601-957-3101
Facsimile:	601-957-3160
E-mail:	ddanks@dmclaw.net


Of Counsel:

Alan M. Purdie, MSB # 4533
Dion J. Shanley, MSB # 9025
PURDIE & METZ, PLLC
Post Office Box 2659
Ridgeland, Mississippi  39157
Telephone:	601-957-1596
Facsimile:	601-957-2449
E-mail:	apurdie@purdieandmetz.com
	dshanley@purdieandmetz.com



## CERTIFICATE OF SERVICE

I, Dale Danks, Jr., do hereby certify that I have this date electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all attorneys of record.

This the 16th day of October, 2018.


	  /s/ Dale Danks, Jr.