REVISED 9/23/2020

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 22, 2020

Lyle W. Cayce
Clerk

No. 19-60331

Robin Mayfield; Owen Mayfield; William Mayfield; The Estate of Mark Stevens Mayfield,

*Plaintiffs—Appellees,*

*versus*

Vickie Currie, *Individually and in her Official Capacity,*

*Defendant—Appellant.*

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:17-CV-514

Before Dennis, Graves, and Willett, *Circuit Judges.*
James E. Graves, Jr., *Circuit Judge*:

This is a qualified immunity suit in which Defendant-Appellant challenges the district court's denial of her motion to dismiss. We REVERSE and REMAND.

I

Mark Mayfield ("Mr. Mayfield"), a lawyer, was a founder of the Mississippi Tea Party. In 2014, he supported State Senator Chris McDaniel's primary challenge to then-sitting U.S. Senator Thad Cochran.

No. 19-60331

The facts underlying this case involve four other supporters of Mr. McDaniel: John Mary; Rick Sager; Clayton Kelly; and Richard Wilbourn III (collectively, "the conspirators").

As the district court describes it, the conspirators "thought [Senator] Cochran was a hypocrite and an adulterer who lived with his longtime aide in Washington, D.C.[,] while his aging wife, Rose, was left alone in a Madison, Mississippi assisted living facility called St. Catherine's Village." They therefore planned to take a photo of Mrs. Cochran in her room at St. Catherine's and use it in an attack ad against her husband. The conspirators sought the assistance of Mr. Mayfield, whose mother lived in the same facility. Mr. Mayfield refused to photograph Mrs. Cochran himself but agreed to show the conspirators the location of her room. In late March or early April of 2014, Mr. Mayfield met one of the conspirators at St. Catherine's and pointed "down the hall" to the location of Mrs. Cochran's room. On April 20, 2014, one of the conspirators went to Mrs. Cochran's room and took a video of her lying in bed. He posted an attack ad on YouTube six days later. The ad, which contained a still photo of Mrs. Cochran in her bed, went viral before being taken down in a matter of hours.

About one month later, the Madison Police Department arrested Mr. Mayfield and two of the conspirators. The basis for Mr. Mayfield's arrest warrant was the affidavit of Officer Vickie Currie, who stated that Mr. Mayfield had communicated with the conspirators and assisted them in their effort to photograph Mrs. Cochran. The police, based on an affidavit from Officer Chuck Harrison ("Mr. Harrison"), also executed search warrants at Mr. Mayfield's home and office. Mr. Mayfield's largest client left him the next day, causing the "complete collapse of his law practice." Mr. Mayfield became depressed and was prescribed medication for sleep, depression, and anxiety. On June 27, 2014, Robin Mayfield ("Mrs. Mayfield") found her

No. 19-60331

husband dead of a gunshot wound to the head. The coroner ruled the death a suicide.

Mrs. Mayfield, her sons, and Mr. Mayfield's estate (together, "Plaintiff-Appellees") filed suit against several parties, including Officer Currie, based on 42 U.S.C. § 1983 and § 1988. Officer Currie and Officer Harrison filed a motion to dismiss. The district court found that Plaintiff-Appellees' claims were timely, but "require[d] additional briefing to determine whether the plaintiffs have stated a claim sufficient to overcome Officer Currie and Harrison's qualified immunity defense." It therefore granted the officers' motion in part and denied the motion in part, without prejudice to refiling. Shortly thereafter, Officer Currie filed a renewed motion to dismiss. The district court denied that motion, finding only that "[i]t was not objectively reasonable for her to present to the judge such a bare-bones warrant application lacking any underlying facts and circumstances showing [Mr. Mayfield's] unlawful conduct." This appeal followed.

## II

"On interlocutory appeal, we review a district court's denial of a qualified-immunity-based motion to dismiss de novo." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). "We accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Id.* "We do not, however, accept as true legal conclusions, conclusory statements, or '"naked assertion[s]" devoid of "further factual enhancement."'" *Id.* at 336–37 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead factual allegations that, if true, "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "That is, the well-pleaded facts must

No. 19-60331

make relief plausible, not merely possible." *Benfield*, 945 F.3d at 337 (citing *Iqbal*, 556 U.S. at 678).

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). "To defeat a claim of qualified-immunity, the plaintiff has the burden to demonstrate the inapplicability of the defense." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (citing *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)). The plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). We "have discretion to decide which prong of the qualified-immunity analysis to address first." *Morgan*, 659 F.3d at 371 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

## III

Plaintiff-Appellees' Section 1983 claim against Officer Currie is rooted in the Fourth Amendment.[1] They allege that Officer Currie violated

---

[1] Plaintiff-Appellees' Amended Complaint invokes the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. But Plaintiff-Appellees' claims against Officer Currie, whether characterized as claims for false arrest or for malicious prosecution, fall under the Fourth Amendment. *See, e.g.*, *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723 (2019) (holding that, in order to bring a First Amendment claim for retaliatory arrest, a plaintiff generally must first show the absence of probable cause for the arrest, *i.e.*, a Fourth Amendment violation); *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Cir. 2003) (en banc) ("The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example."); *see also Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994) ("We hold that Blackwell's section 1983 claim against Barton for illegal arrest and detention is properly considered under the Fourth Amendment, the more specific constitutional right implicated by her allegations.").

Mr. Mayfield's constitutional rights when she "submitted to a municipal judge a warrant-application affidavit that (a) was completely devoid of facts showing the elements of any crime, much less the crime cited in the warrant, and (b) withheld known facts that would have shown no crime was committed . . . and that the intent of the accused target was political speech protected by the First Amendment." Based on that allegedly defective affidavit, the municipal court judge issued a warrant for Mr. Mayfield's arrest. Officer Currie responds that there was no constitutional violation because the issuance of the arrest warrant broke the causal chain, immunizing her from liability.

"It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994*), overruled on other grounds by Castellano*, 352 F.3d at 949 (en banc)) (quotation marks omitted).

But that shield against liability, known in this circuit as the independent-intermediary doctrine, is not absolute. There are two ways to overcome the doctrine relevant here. First, in *Malley v. Briggs*, the Supreme Court held that an officer can be held liable for a search authorized by a warrant when the affidavit presented to the magistrate was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." 475 U.S. 335, 344–45 (1986). "The *Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc) (citing *Michalik v. Hermann*, 422 F.3d 252, 261 (5th Cir. 2005)). And second, under *Franks v. Delaware*, 438 U.S. 154 (1978), and its progeny, officers who

No. 19-60331

"deliberately or recklessly provide[ ] false, material information for use in an affidavit" or who "make[] knowing and intentional omissions that result in a warrant being issued without probable cause" may still be held liable. *Melton*, 875 F.3d at 264 (citing *Hart v. O'Brien*, 127 F.3d 424, 448 (5th Cir. 1997), and *Michalik*, 422 F.3d at 258 n.5). Officer Currie invoked both *Malley* and *Franks* in her motion to dismiss. The district court denied that motion but cabined its analysis to *Malley*. So that's where we begin.

"The question to be asked, under *Malley*, is whether a reasonably well-trained officer in [Officer Currie's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant." *Jennings v. Joshua Indep. Sch. Dist.*, 877 F.2d 313, 317 (5th Cir. 1989) (internal quotation marks and citation omitted). Officer Currie argues that "the information [she] and other investigators provided to [the magistrate] throughout the course of their investigation clearly was sufficient to establish probable cause to issue a warrant for Mayfield's arrest." We agree.

The affidavit submitted by Officer Currie in support of the arrest warrant application for Mr. Mayfield was indeed sparse. If it were the only document before the court, the analysis would quickly resolve in Plaintiff-Appellees' favor. But it is not. In the week preceding Mr. Mayfield's arrest, Officer Currie and her colleagues presented a series of affidavits and warrant applications in connection with the Cochran case. Those materials were all reviewed and signed by the same municipal judge. And they were significantly more in-depth than the affidavit challenged by Plaintiff-Appellees. Indeed, the affidavits submitted by Officer Currie's colleague in support of an application to search Mr. Mayfield's residence and office—which were submitted alongside the arrest warrant application—are quite detailed.

No. 19-60331

Officer Currie does not cite any cases holding that, in determining whether an officer would have known that her affidavit failed to establish probable cause, it is appropriate to consider other affidavits and applications submitted to the same judge regarding the same case. But in the context of qualified immunity, it is the plaintiff's burden to establish that an allegedly violated right was clearly established. *See, e.g., Wigginton v. Jones*, <u>964 F.3d 329, 338</u> (5th Cir. 2020). Plaintiff-Appellees have not met that burden. Indeed, their own Amended Complaint acknowledges that the municipal judge signed the arrest warrant in question "on the basis of the Currie affidavit and the Harrison affidavits," and references the other warrants submitted by Officer Currie and her colleagues. The district court's conclusion that Plaintiff-Appellees adequately alleged a *Malley* wrong was therefore error.

As noted above, however, the independent-intermediary doctrine does not begin and end with *Malley*. The parties also raised *Franks* before the district court and on appeal. But the district court did not analyze that issue, perhaps out of reliance on the principle that "a plaintiff cannot hold an officer liable under *Franks* for intentionally omitting important exculpatory information from a warrant affidavit when the officer has also committed a *Malley* violation by presenting a facially deficient warrant affidavit to the issuing judge." *See Kohler v. Englade*, <u>470 F.3d 1104, 1113</u>–14 (5th Cir. 2006).

"[I]t is the settled law of our circuit that the district court should have the first opportunity to address all of the issues contained in the appeal." *F.D.I.C. v. Lee*, <u>130 F.3d 1139, 1141</u> (5th Cir. 1997). We therefore conclude that remand for further consideration of *Franks* is appropriate.

No. 19-60331

## IV

The portion of the district court order denying Officer Currie's motion to dismiss pertaining to *Malley* is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

No. 19-60331

D͏ON R. W͏ILLETT, *Circuit Judge*, concurring:

Stating the correct outcome is easy in this case; untangling a knotty constitutional inquiry to arrive at that outcome, less so. Today's bottom-line disposition is certainly correct: Reversing the denial of Officer Currie's *Malley*-based motion to dismiss, and remanding the *Franks* issue. I write separately only to point out that the Mayfields have not shown *any* constitutional violation, much less a clearly established one.

\*     \*     \*

The court begins (and ends) its immunity analysis on "clearly established law" grounds, declining to address—let alone determine— whether Officer Currie violated the Fourth Amendment in the first place. True, the Supreme Court has blessed our "sound discretion" to pivot solely on prong two of the qualified-immunity analysis.[1] And "clearly established law" is often outcome-determinative. But just because we *can* jump straight to prong two without undertaking the nettlesome task of determining if anyone's rights were violated doesn't mean we *should*. Leapfrogging the constitutional merits does make for easier sledding.[2] But such skipping,

---

[1] *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). *See also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("address[ing] only the qualified immunity question, not whether there was a Fourth Amendment violation in the first place").

[2] *Zadeh v. Robinson*, 928 F.3d 457, 479–80 (5th Cir. 2019) (Willett, J., concurring in part and dissenting in part).

jurists and scholars lament, leads to "'constitutional stagnation'—fewer courts establishing law at all, much less *clearly* doing so."[3]

The modern immunity regime, as with many judge-invented doctrines, could use greater precision. And one way to advance constitutional clarity is to give courts and public officials more matter-of-fact guidance as to what the law prescribes and proscribes. Yes, scrutinizing the alleged constitutional offense requires more work. More time. More resources. Overworked federal courts already resemble Lucy and Ethel in the chocolate factory.[4]

But since we require plaintiffs to prove a violation of clearly established law, it seems only fair that we do our part in establishing what that law is. How can a plaintiff produce precedent if fewer courts are producing precedent? How can a plaintiff show a violation if fewer courts are showing what constitutes a violation? The result:

> Section 1983 meets Catch-22. . . . Important constitutional questions go unanswered precisely because no one's answered them before. Courts then rely on that judicial silence to conclude there's no equivalent case on the books. No precedent = no clearly established law = no liability. An Escherian Stairwell. Heads government wins, tails plaintiff loses.[5]

Ordinary citizens are told that ignorance of the law is no excuse. The judge-created rules of qualified immunity are, well, different. Accordingly, judges should, whenever possible, shrink the universe of uncertainty and

---

[3] *Id.* at 479 (quoting Aaron L. Nielson & Christopher J. Walker, *The New Qualified Immunity*, 89 S. Cal. L. Rev. 1, 12 (2015)).

[4] *I Love Lucy: Job Switching* (CBS television broadcast Sept. 15, 1952).

[5] *Zadeh*, 928 F.3d at 479–80.

No. 19-60331

"clearly establish" which alleged misdeeds violate the law, and which do not, thus narrowing the presumed knowledge gap between those who enforce our laws and those who live under them.

## I

Officer Currie is shielded from civil liability "insofar as [her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[6] Specifically, the Mayfields must show: "(1) that [Officer Currie] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[7]

As explained below, the Mayfields fall doubly short: There is no Fourth Amendment violation at all, clearly established or otherwise.

## A

The Mayfields argue that Officer Currie violated Mr. Mayfield's Fourth Amendment right[8] because her warrant-application affidavit for his arrest unreasonably lacked probable cause under *Malley v. Briggs*.[9] Officer

---

[6] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).

[7] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818).

[8] The Fourth Amendment protects the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. Because an arrest qualifies as a "seizure" of a "person," it "must be reasonable under the circumstances." *Ashcroft*, 563 U.S. at 735–36 (citation omitted). "Fourth Amendment reasonableness is predominantly an objective inquiry" that asks "whether the circumstances, viewed objectively, justify [the challenged] action." *Id.* at 736. (internal quotation marks and citations omitted).

[9] 475 U.S. 335 (1986). The Mayfields also argue that Officer Currie violated the Fourth Amendment on the theory that she maliciously concealed information that would have, if included, deprived the warrant of probable cause. *See Franks v. Delaware*, 438 U.S. 154 (1978). But because the district court did not address the alleged omissions or their

Currie argues there is no constitutional violation because the municipal court judge issued the warrant for Mr. Mayfield's arrest and, under the independent-intermediary doctrine, the judge's decision breaks the chain of causation and insulates her from liability.[10]

To start, the *Malley* analysis does not answer the constitutional question. In *Malley*, the Supreme Court clarified that, in the context of an arrest warrant, qualified immunity shields officers from liability unless the "warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable."[11] This merely restates the ordinary qualified-immunity standard: that officers are only liable when "every 'reasonable official would [have understood] that what he is doing violates'" the constitutional right at issue.[12]

---

impact on probable cause, if any, we properly remand the case with respect to the *Franks* analysis. Therefore, we limit our discussion to the *Malley* analysis.

However, it is worth explicitly clarifying that *Malley* and *Franks* involve distinct applications of qualified immunity to Fourth Amendment violations: *Malley* centers on the officer's lack of facts to support the probable cause for a warrant, while *Franks* focuses on the officer's malicious motive in providing—or withholding—material information for use in the affidavit. Some of our prior cases synthesized *Franks* and *Malley*, but, as we recently made clear en banc, malice has no place in the *Malley* analysis. *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc) (correctly viewing *Franks* and *Malley* as distinct applications of qualified immunity to Fourth Amendment violations).

[10] *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009). But the independent-intermediary doctrine is not impervious: *Malley* recognized that an officer is not immune, *even if* the judge issues an arrest warrant based on that officer's affidavit, where the warrant application lacks probable cause. *See Malley*, 475 U.S. at 344–45.

[11] *Malley*, 475 U.S. at 344–45 (citation omitted).

[12] *Ashcroft*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

No. 19-60331

So, setting aside the clearly established law issue, I would address head-on the constitutional merits: Did Mr. Mayfield suffer a Fourth Amendment violation on the grounds that the warrant relied on too few facts to support probable cause? "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules."[13] Our arrest-warrant affidavit cases, like *Blake v. Lambert*, instruct that probable cause exists when facts are stated in the arrest-warrant affidavit from which a judge could independently determine a crime was likely committed.[14]

On its own, Officer Currie's affidavit is rather lean, identifying Mr. Mayfield, reciting the charged offense, and citing the corresponding statutes. But her affidavit has facts (unlike the constitutionally deficient one in *Blake*, which did not). Officer Currie's affidavit states that Mr. Mayfield assisted his co-conspirators and provided them with information that enabled them to photograph and film Mrs. Cochran in her room at St. Catherine's.[15] And

---

[13] *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotation marks and citations omitted).

[14] 921 F.3d 215, 220–21 (5th Cir. 2019).

In the context of a warrantless arrest, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). This "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

In the analogous context of a search warrant, "[p]robable cause exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime." *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006) (citing *Gates*, 462 U.S. at 238–39).

[15] The warrant affidavit provides that Mr. Mayfield "did willfully, unlawfully, and feloniously conspire with John Mary and Clayton Kelly to commit the crime of Photographing taping, or filming a person in violation of expectation of privacy (97-29-63)

13

No. 19-60331

importantly, even if Officer Currie's affidavit is bare bones, an affidavit can be rehabilitated.[16] Here, Officer Currie did not submit the contested affidavit in a vacuum. There were additional supporting facts from which the municipal court judge could independently determine probable cause. Specifically, Officer Currie submitted the contested affidavit on the same day, and to the same judge, that Officer Harrison submitted his search-warrant affidavit for Mr. Mayfield's house and office. And Officer Harrison's affidavit was far meatier, stating that Mr. Mayfield agreed to assist Mr. Mary and Mr. Sager in creating their video of Mrs. Cochran and that Mr. Mayfield provided Mr. Kelly with "detailed information" on how to get into St. Catherine's and locate Mrs. Cochran's room.[17] Plus, in the days immediately prior to her submission of the contested affidavit, Officer Currie submitted

---

by communicating, planning, and assisting Clayton Kelly with information and resources which aided and assisted Kelly in photographing and filming Rose Cochran inside of her residence, her room at St. Catherine's Village, without her knowledge or permission."

[16] "Because the Fourth Amendment does not require written warrants, an otherwise invalid warrant can be rehabilitated by sworn oral testimony before a judicial officer given contemporaneously upon presentation of the warrant application." *Spencer v. Staton*, 489 F.3d 658, 662 (5th Cir.), *modified on other grounds on reh'g*, 489 F.3d 466 (5th Cir. 2017) (citing *United States v. Hill*, 500 F.2d 315, 320 (5th Cir. 1974), for the proposition that a court may consider an affiant's sworn oral testimony, extrinsic to the written affidavit, in determining whether a warrant was founded on probable cause). Here, the issuing municipal court judge had before him Officer Currie's three *sworn* arrest-warrant affidavits for Mr. Mayfield's co-conspirators as well as Officer Harrison's *sworn* search-warrant affidavit for Mr. Mayfield's home and office. Such evidence, though extrinsic to the contested affidavit, rehabilitated the contested affidavit, assuming it needed rehabilitation.

[17] Officer Harrison's search-warrant affidavit provides factual support for Officer Currie's affidavit: "John Mary stated that he and Richard Sager eventually made contact with Mark Mayfield who agreed to assist them in creating th[e] video." The affidavit later notes, "Clayton Kelly was provided with detailed information on how to get into St. Catherine's Village and also how to locate and get into the area where her room was located through the assistance of Mark Mayfield."

No. 19-60331

sworn arrest-warrant affidavits for three of Mr. Mayfield's co-conspirators, one of which explicitly refers to Mr. Mayfield's involvement in the conspiracy; all of these arrest-warrant affidavits were submitted to the very same judge who received the affidavit at issue here.[18] And finally, the Mayfields admit that the municipal court judge signed Mr. Mayfield's arrest warrant on the basis of the Currie affidavit *and* the Harrison affidavit.[19]

In sum, the record evidence establishes that the municipal court judge was presented with an arrest-warrant affidavit containing facts that were corroborated and supplemented by other arrest and search-warrant affidavits, which, considered together, establish probable cause and justify the warrant for Mr. Mayfield's arrest.[20] Because the warrant was supported by probable cause, the Mayfields have not shown a constitutional violation.

## B

Turning to the second issue—"clearly established law"—the court rightly concludes that the Mayfields fail to establish that the alleged Fourth

---

[18] Officer Currie submitted arrest-warrant affidavits for Mr. Sager, for Mr. Mary, and for Mr. Kelly. In the arrest-warrant affidavit for Mr. Mary, Officer Currie noted that Mr. Mary "stated in some of the messages that an individual named 'Mark' would be making the arrangements to have an individual . . . call Clayton Kelly with detailed instructions on where to locate Rose Cochran's room within St. Catherine's Village." "Mark" is referring to Mr. Mayfield.

The judge also had before him search-warrant affidavits for Mr. Mayfield's co-conspirators: Officer Harrison submitted search-warrant affidavits for Mr. Kelly's residence and car and for Mr. Mary's residence, and Officer Brown submitted a search-warrant affidavit for Mr. Sager's residence.

[19] The Mayfields allege this fact in their Amended Complaint.

[20] *Compare Spencer*, 489 F.3d at 662–63 (finding that the record was insufficient to demonstrate that the officer's testimony was sufficient to support probable cause and noting that the officer did not allege that his oral statements were made under oath).

Amendment violation was "clearly established" at the time of the challenged conduct.[21] To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'"[22] An officer is not eligible for qualified immunity under *Malley* when there is an "obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant."[23] Officer Currie is entitled "to qualified immunity from suit unless, 'on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'"[24]

We have held the standard in *Malley* is not satisfied when an officer proffers a facially invalid warrant affidavit—one devoid of any facts—one that "states nothing more than the charged offense, accompanied by a conclusory statement" that the individual committed the offense.[25] That was *Blake*, where the officer's arrest-warrant affidavit "simply identifie[d] [the named individual], recite[d] the charged offense, and cite[d] the corresponding . . . statutes."[26] Such a bare-bones affidavit fell short of *Malley* because "[i]t d[id] not provide any supporting facts from which a [judge] could independently determine probable cause."[27]

---

[21] *Ashcroft*, 563 U.S. at 735 (quoting *Harlow*, 457 U.S. at 818).

[22] *Id.* at 741 (quoting *Anderson*, 483 U.S. at 640).

[23] *Melton*, 875 F.3d at 264.

[24] *Spencer*, 489 F.3d at 661 (quoting *Malley*, 475 U.S. at 341).

[25] *Id.* at 662.

[26] *Blake*, 921 F.3d at 220.

[27] *Id. See also Spencer*, 489 F.3d at 662 (citations omitted) (describing a bare-bones affidavit as one that "does not supply the factual basis for probable cause necessary for issuance of an arrest warrant").

No. 19-60331

And, while we have held that an officer is not entitled to qualified immunity under *Malley* when the warrant was based solely on a skimpy affidavit, the burden is on the Mayfields to cite a case holding that the Fourth Amendment required the affidavit to establish probable cause on its own, without consideration of other supporting documents.[28] They have not done so.

## II

The Supreme Court has explicitly recognized our discretion to address the qualified-immunity prongs in whatever order we choose. In my judgment, the development of the law is best served by undertaking, wherever possible, the threshold constitutional analysis. Respectfully, courts should attempt to provide greater judicial guidance at the outset, explaining whether a right was in fact violated, not merely whether a rights violation was clearly established.

In any event, because the Mayfields have failed to show a constitutional violation, let alone a clearly established one, Officer Currie cannot be liable under *Malley*. And the court is right to remand the *Franks* issue so that the district court can tackle it in the first instance.

---

[28] *Blake*, <u>921 F.3d at 221</u>.